# EXHIBIT F

Brenda-Lee:  Held
130 Glenwood Ave
Glendive Montana
406-941-2721
Bheld1206@gmail.com
Plaintiff in propria persona

## UNITED STATES DEPARTMENT OF JUSTICE

## WASHINGTON, D.C.

| | |
|---|---|
| DAVID R. MYRLAND, KURT  R. RIGGIN, AND *We The People,* <br><br> CITIZEN COMPLAINANT(S) <br><br> vs. <br> STATE OF WASHINGTON, CHRISTINE GREGOIRE, LIZ LUCE, KING COUNTY WA., SNOHOMISH COUNTY, PIERCE COUNTY, DAVID REICHERT, SUSAN RAHR, RICHARD BART, PAUL PASTOR, MICHAEL HURTADO, TEDDY CHOW, NORMAN MALENG, T. MCALLISTER, CITY OF KIRKLAND, KENYON DORNAY MARSHALL LAW FIRM, MARGITA DORNAY, and all those similarly situated or involved, <br> Defendant(s) | CAUSE NO.:  _____ <br><br><br> **VERIFIED JOINDER OF SIMILARLY SITUATED PARTIES as Co-Complainant.** <br><br> **Joinder of Brenda Held to existing Complaint.** <br><br><br> GLENDIVE, MT Kangaroo Court – GLENDIVE CITY COURT <br> Case No. TK-350-2022-070 and <br> TK-350-2022-81 |

VERIFIED JOINDER OF PARTIES TO COMPLAINT                                      1

# I. <u>INTRODUCTION</u>.

1.1 COMES NOW, **Brenda Held**, hereinafter "Brenda" seeking herewith to JOIN the above captioned 18 U.S.C. § 4 Complaint by reporting felonious conduct in kind and to cause the U.S. Department of Justice or this court to commence appropriate action against the listed Defendants for the federal crimes alleged herein, felony and lesser violations included. The listed Defendants have engaged in a course of conduct identical to that originally complained of (original Complaint is incorporated by this reference as if fully restated herein) which has caused and is causing public vehicular travelers in Montana state the loss of Constitutional rights to freely associate, to contract, to property and privacy, and which threatens their liberty and right to inherently live.

1.2 Any federal public servant receiving this Complaint shall consider it to be their constructive notice of the acts complained of herein, be they in Congress, the U.S. Department of Justice, or any other office or position. "Ignorance of the law is no excuse, in any country. If it were, the laws would lose their effect, because it can be always pretended. . . With us, there is no power which can suspend the law for a moment." (See, Thomas Jefferson to Andrew Limozin, 1787. ME 6:401).

1.3 Exhibits hereto are incorporated by this reference as if fully restated herein and are as follows:

**EXHIBIT A**: Traffic citations falsely and fraudulently issued to Complainant on February 28, 2022, and March 9, 2022, by similarly situated parties joined hereby to the original Complaint.

**EXHIBIT B**: Complainant's AFFIDAVIT OF FACTS - FEBRUARY 28, 2022, regarding the subject incident

VERIFIED JOINDER OF PARTIES TO COMPLAINT

2

**EXHIBIT C:** Complainant's AFFIDAVIT OF FACTS - MARCH 9, 2022, regarding the subject incident

**EXHIBIT D:** Complainant's AFFIDAVIT OF FACTS - DOCUMENTATION, regarding the subject incident(s)

II. JOINDER OF SIMILARLY SITUATED DEFENDANTS.

2.1 While engaged in public vehicular travel on a public roadway of Glendive, Montana on February 28, 2022, and March 9, 2022, Complainant was pulled over and arrested for failing to comply with MCA Title 61 Motor Vehicle Code, hereinafter referenced "**MCA 61**" by Glendive's municipal police officer(s). Despite explicitly expressed knowledge that Brenda's activity or conduct is a common right, Defendants to this Joinder consciously chose to ignore the law and Brenda's rights to public vehicular travel and to rather impose requirements associated only with privileged conduct so as to falsely justify Brenda's arrest and confinement.

2.2  RCW 46 reference in original Complaint filed March 9, 2006 cross references MCA 61 and Parties to be joined include agents, successors as similarly situated defendants and assigns are as follows:

1.     STATE OF MONTANA, is a state government operating as the jurisdictional authority over the geographical area contained by the political boundaries of Montana state.   The Chief Executive Officer in the racketeering enterprise complained of herein is defendant GREG GIANFORTE.  The determination as to who is similarly situated would naturally include defendant MONTANA DEPARTMENT OF MOTOR VEHICLE which is administered by defendant LAURIE BAKRI which falls under defendant DEPARTMENT OF JUSTICE, which is under the direction of defendant ATTORNEY GENERAL AUSTIN KNUDSEN but

is better determined by federal authorities which ultimately investigate the structure of the extortion and racketeering scheme complaint of herein. STATE OF MONTANA, GREG GIANFORTE, DEPARTMENT OF JUSTICE, AUSTIN KNUDSEN, MONTANA DEPARTMENT OF MOTOR VEHICLES, and LAURIE BAKRI is similarly situated as STATE OF WASHINGTON, CHRISTINE GREGOIRE, and LIZ LUCE respectively named in the original complaint, who represent and have represented in courts actions brought with the intent of falsely imprisoning innocent public vehicular travelers while engaged in the misenforcement of Montana statutes against public vehicular travelers , and designed to extort from their respective targets huge sums in court fees, fines, and to deprive them of privacy in unconscionable amounts, and seizing automobiles to which MCA 61 and adopting statutes do not apply.  Those similarly situated include all states of the United States and respective positions who have prosecuted or are prosecuting simple or gross misdemeanor charges, or felony charges against public vehicular travelers but which arise under Motor Vehicle Codes of the respective states.  Defendant STATE OF MONTANA, GREG GIANFORTE, DEPARTMENT OF JUSTICE, AUSTIN KNUDSEN, MONTANA DEPARTMENT OF MOTOR VEHICLES, and LAURIE BAKRI is hereby joined to Counts 1 through 15 and additionally any identified Counts within this complaint.   Last know addresses is

1.  STATE OF MONTANA OFFICE OF THE GOVERNOR, GREG GIANFORTE, agents, successor and assigns, P.O. BOX 200801 HELENA, MT 59620-0801
2.  DEPARTMENT OF JUSTICE, ATTORNEY GENERAL AUSTIN KNUDSEN, agents, successor and assigns, JUSTICE BUILDING THIRD FLOOR, 215 NORTH SANDERS, PO BOX 201401, HELENA MT 59620-1401

3. MONTANA DEPARTMENT OF MOTOR VEHICLES, LAURIE BAKRI, agents, successor and assigns, PO BOX 201430 302 N ROBERTS STREET HELENA MT 59620-1430

2. Defendants DAWSON COUNTY MONTANA, DAWSON COUNTY COMMISSIONERS, DAWSON COUNTY SHERIFF OFFICE, BRAD MITCHELL, DENNIS ZANDER, JOE SHARBONO, ROSS CANEN, in Montana are similarly situated as municipal corporations in Montana state, creatures of the Montana state legislature, which benefit and continue to benefit from the racketeering activities but is better determined by federal authorities which ultimately investigate the structure of the extortion and racketeering scheme complaint of herein.   The DAWSON COUNTY COMMISSIONERS, DAWSON COUNTY SHERIFF OFFICE and respective staff in Montana state are similarly situated as current or past sheriffs of their respective counties in charge of entire squads of armed officers engaged in the misenforcement of MCA 61 against public vehicular travelers.  Similarly situated are all state counties, county commissioners, Sheriff or other law enforcement staff within the United States engaged in the misenforcement of MCA 61 or respective state motor vehicle codes against public vehicular travelers.   Defendants listed in this section and all successors, assigns, agents is hereby joined to Counts 4, 6, and Counts 8 through 15 and additionally any identified Counts within this complaint.  Last known address is

1. DAWSON COUNTY MONTANA, DAWSON COUNTY COMMISSIONERS,  BRAD MITCHELL, DENNIS ZANDER, JOE SHARBONO, 207 W BELL ST, GLENDIVE MT 59330

2. DAWSON COUNTY SHERIFF OFFICE, ROSS CANEN 440 COLORADO BLVD, GLENDIVE, MT 59330.

3.  Defendants CITY OF GLENDIVE,  referenced as "**CITY**" and Mayor TERESA OLSON is a municipal corporation in Montana, a creature of the Montana state legislature. Last known address 300 SOUTH MERRILL AVE GLENDIVE MT 59330.  Those similarly situated are each and all of Montana's city and town government which enforce Montana statutes in relation to public vehicular travelers.    Defendant CITY (Municipality) and Mayor TERESA OLSON, agents successors and assigns is similarly situated to KIRKLAND and is hereby joined to Counts 2 through 15 and additionally any identified Counts within this complaint.

4.  Defendants GLENDIVE POLICE DEPARTMENT, hereinafter referenced as "**GPD**" and unknown named CHIEF OF POLICE (Vacant), agents, successor and assigns, are similarly situated as current or past Officer's also named herein, in charge of entire squads of armed officers engaged in the misenforcement of Montana statutes against public vehicular travelers. Last known addresses are 440 Colorado BLVD GLENDIVE MT 59330. Defendant GPD and unknown named CHIEF OF POLICE is similarly situated to REICHERT as he is named in the original Complaint and is hereby joined to Counts 4,  6, and Counts 8 through 15 of the original complaint and additionally any identified Counts within this complaint.

5.  Defendants KERRY BURMAN, agents, successors and assigns, hereinafter referenced as "**BURMAN**" serves as judge and judge pro tempore in municipal courts in Montana states, and has the address of 312 SOUTH MERRILL AVE GLENDIVE MT 59330.  Those similarly situated are each and all of Montana's judges (pro tem or otherwise) and all other presiding officers who here and have hears cases where the provision of MCA 61 were brought to bear against the liberty and property of public vehicular travelers, engaged in the misenforcement of Montana statutes against public

vehicular travelers, false arrest, threatening communications, violating due process of law and Brenda believes is attempting to violate MCA. Defendant BURMAN is similarly situated to HURTADO as he is named in the original Complaint and is hereby joined to Counts 2 through 10, Counts 12 through 15 of the original complaint and additionally any identified Counts within this complaint.

6. Defendant SCOTT HERRING (CITY OF GLENDIVE Montana prosecutor currently falsely prosecuting Complainant B. Held), agents, successors and assigns, hereinafter referenced as "**HERRING**" is similarly situated as prosecutors who represent and have represented in courts actions brought with the intent of falsely imprisoning innocent public vehicular travelers while engaged in the misenforcement of Montana statutes against public vehicular travelers , and designed to extort from their respective targets huge sums in court fees, fines, and to deprive them of privacy in unconscionable amounts, and seizing automobiles to which MCA 61 and adopting ordinances do not apply.  Those similarly situated include all county and city attorneys in Montana who have prosecuted or are prosecuting simple or gross misdemeanor charges, or felony charges against public vehicular travelers but which arise under MCA 61. Last known address 215 SOUTH KENDRICK AVE GLENDIVE MT 59330. Defendant HERRING is similarly situated to MALENG and is hereby joined to Counts 3 through 15 of the original complaint and additionally any identified Counts within this complaint.

7.      Defendant STEVEN FEAGLER agents, successors and assigns, hereinafter referenced as "**FEAGLER**", unknown named Sargent on duty hereinafter "**SARGENT**", agents, successors and assigns, and two unknown named officers and other unknown GPD employees agents,

successors and assigns, is a general law enforcement officer employed by the CITY with the authority to enforce MCA 61 (as adopted into city ordinance), who has engaged in the misenforcement of Montana statutes against public vehicular travelers, falsely arrested Brenda, forced bill of attainders upon Brenda and conspired and acted in concert with others to deprive Brenda of her right to public vehicular travel, threats of towing automobile and to Brenda's inalienable rights to liberty.  Those similarly situated are all such officers exercising the lawful authority to enforce MCA 61 but who have enforced it upon and against public vehicular travelers in Montana state.  Defendants FEAGLER, SARGENT, 2 unknown named officers (officers on scene) are similarly situated to T. McALLISTER and is hereby joined to Counts 4 through 11, Counts 12 through 15 and additionally any identified Counts within this complaint.

8.     Defendant HERRING LAW FIRM, LLC law firm, herein after "**LAW FIRM**" is a private law firm hired by CITY municipalities to bring false charges under MCA 61 and malicious court cases against public vehicular travelers, falsely imprisoning them and extorting funds from the innocent.  Defendant HERRING is an employee of this LAW FIRM. Those similarly situated are all private law firms and attorneys so contracting and prosecuting in Montana state, and those individuals serving such an enterprise as attorneys or general partners.  Last known address is the same as HERRING noted above.  All persons similarly situated to named Defendant shall be deemed to have been specifically named in each appropriate allegation made below.  Defendants LAW FIRM is similarly situated to KENYON, DORNAY, and MARSHALL and is hereby joined to Counts 2 through 10, Counts 12 through 15 and additionally any identified Counts within this complaint.

1. Defendants MONTANA HIGHWAY PATROL HEREINAFTER REFERENCED AS "**MHP**" and COLONEL STEVEN LAVIN, agents, successors and assigns, in Montana are similarly situated as municipal corporations in Montana state, creatures of the Montana state legislature, which benefit and continue to benefit from the racketeering activities but is better determined by federal authorities which ultimately investigate the structure of the extortion and racketeering scheme complaint of herein. Defendants MONTANA HIGHWAY PATROL HEREINAFTER REFERENCED AS "**MHP**" and COLONEL STEVEN LAVIN, agents, successors and assigns, and respective staff in Montana state are similarly situated as current or past sheriffs of their respective counties in charge of entire squads of armed officers engaged in the misenforcement of MCA 61 against public vehicular travelers. Similarly situated are all state law enforcement agents, highway patrol, constables, or other law enforcement staff within the United States engaged in the misenforcement of MCA 61 or respective state motor vehicle codes against public vehicular travelers. Defendants listed in this section and all successors, assigns, agents is hereby joined to Counts 4, 6, and Counts 8 through 15 and additionally any identified Counts within this complaint. Last known address is: MONTANA HIGHWAY PATROL DIVISION, COLONEL STEVEN LAVIN, PO BOX 117, 18 TROOPER DRIVE, BOULDER MT 59632

2.3 Montana along with the several fifty states utilize the Uniform Motor Vehicle Code. Therefore, Montana has similar provisions securing in kind to

Washington provisions already cited in the existing Complaint and brief, including but not limited to the following provisions:

**(A)** **Commerce/Commercial purposes:**

    a. "Used for commercial purposes" means the carriage of persons or property for any fare, fee, rate, charge or other considerations, or directly or indirectly in connection with any business, or other undertaking intended for profit.

    b. "transport" or "transportation" means the movement of property and loading, unloading, or storage incidental to the movement. [1]

    c. "commerce" means trade or transportation in the jurisdiction of the United States ; [2]

    d. "commerce" means trade, traffic, and transportation; [3]

**(B)** Definitions. As used in this title, ***unless the context indicates otherwise***, the following definitions apply[4]:

    a. (8) "Certificate of title" means the paper record ***issued by the department*** or by the appropriate agency of another jurisdiction that establishes a ***verifiable record of ownership between an identified person or persons and the motor vehicle*** specifically described in the record and that provides notice of a perfected security interest in the motor vehicle.

    b. (9) "Commercial driver's license" means:

        (a) a driver's license issued ***under or granted*** by the laws of this state that authorizes a person ***to operate a class of commercial motor vehicle***; or

        (b) the ***privilege*** of a person to drive a commercial motor vehicle, whether or not the person holds a valid commercial driver's license.

    c. 10) (a) "Commercial motor vehicle" means a ***motor vehicle or combination of motor vehicles used in commerce to transport passengers or property if the vehicle***:

---

[1] 49 U.S.C. 5102 - Definitions (13)
[2] 49 U.S.C. 5102 – Definitions (1)   49 U.S.C. 31301. Definitions (2) "***commerce***" means trade, traffic, and ***transportation***;
[3] Title 18 USC 31(10) infra
[4] MCA 61-1-101

VERIFIED JOINDER OF PARTIES TO COMPLAINT          10

(i)   has a gross combination weight rating or a ***gross combination weight of 26,001 pounds or more***, whichever is greater, inclusive of a towed unit with a gross vehicle weight rating of more than 10,000 pounds;

(ii)  has a gross vehicle weight rating or a ***gross vehicle weight of 26,001 pounds or more***, whichever is greater;

(iii) is designed to ***transport at least 16 passengers***, including the driver;

(b)   The following vehicles are not commercial motor vehicles:

(ii) ***a vehicle***:(C)   ***not used to transport goods for compensation or for hire; or***

d. (22) "Driver's license" [5] means ***a license or permit <u>to operate a motor vehicle</u> issued under or granted by the laws of this state***, including:

(a)   any temporary license or learner license;

(b)   the ***privilege of any person to drive a motor vehicle***, whether or not the person holds a valid license;

(c)   any nonresident's ***driving privilege***;

(d)   a motorcycle ***endorsement***; or

(e)   a commercial driver's license.

**e.**  (28) "Highway" or "public highway" means the entire width between the boundary lines of every publicly maintained way when any part of the publicly maintained way is ***open to the use of the public for purposes of vehicular travel***.

f.  (43) (a) "Motor vehicle" means[6]:

(i)   a *<u>vehicle</u>* propelled by its own power and designed or ***<u>used to transport persons or property</u>*** on the highways of the state;

g. (24) "For hire" means an action performed for remuneration of any kind, whether paid or promised, either directly or indirectly, or received or obtained through leasing, brokering, or buy-and-sell arrangements from which a

---

[5] "Driver's license is only linked to "transport of persons or property", therefore commercial and has no association to "drawn" which would be non-commercial.

[6] The term "motor vehicle" is said to apply only to the "transportation of persons or property."

VERIFIED JOINDER OF PARTIES TO COMPLAINT                                11

remuneration is obtained or ***derived for transportation service***.

h. (86) Truck" or "motor truck" means a motor vehicle designed, used, or maintained primarily for the transportation, of property.

i. (52) "Operator" means a person who is in actual physical control of a ***motor vehicle***.[7]

j. (62) "Registration" or "register" means the act or process of creating an electronic record, maintained by the department, of the ***assignment of a license plate*** or a set of license plates to ***and the issuance of a registration*** decal for a specific vehicle, the ownership of which has been established or is presumed in department records.

k. (63) "Registration decal" means an adhesive sticker ***produced by the department and issued by the department***, its authorized agent, or a county treasurer to the owner of a ***motor vehicle***, trailer, semitrailer, pole trailer, motorboat, sailboat, personal watercraft, or snowmobile as proof of payment of all fees imposed for the registration period indicated on the sticker as recorded by the department under 61-3-101.

l. (66) "Revocation" means the termination by action of the department of a person's ***driver's license, privilege to drive a motor vehicle on the public highways***, and privilege to apply for and be issued a driver's license for a period of time designated by law, during which the license or privilege may not be renewed, restored, or exercised. An application for a new license may be presented and acted on by the department after the expiration of the period of the revocation[8]

m. (67) "Roadway" means that portion of a highway improved, designed, or ordinarily ***used for vehicular travel***, exclusive of the berm or shoulder. In the event that a highway includes two or more separate roadways, the term refers to any roadway separately but not to all roadways collectively.

---

[7] Operator controls a vehicle used for the "transport to of persons or property", therefore Commercial
[8] Revocation of a "drivers license. See Drivers License FN # 2, therefore Commercial

VERIFIED JOINDER OF PARTIES TO COMPLAINT                    12

n. (78) "Street" means the entire width between the boundary lines of every publicly maintained way when any part of the publicly maintained way is open to the ***use of the public for purposes of vehicular travel***.

o. (82) "Traffic" means pedestrians, ridden or herded animals, vehicles, streetcars, and ***other conveyances*** either singly or together while using ***any highways for purposes of travel***.

p. (86) "Truck" or "motortruck" means a motor vehicle designed, used, or maintained ***primarily for the transportation of property.***

q. (91) (a) "Vehicle"[9] means a device in, on, or ***by which any person or property may be*** <u>***transported or drawn***</u>[10] on a ***public highway***, except devices moved by animal power or used exclusively on stationary rails or tracks.

r. (32) **Light vehicle**" means a ***motor vehicle*** commonly referred to as an <u>***automobile***</u>, van, sport utility vehicle, ***or truck***[11] having a manufacturer's rated capacity of 1 ton or less. [12]

(C)   Title 49 USC 5102 Definitions

(1)"***commerce***" ***means trade or transportation*** in the jurisdiction of the United States[13]—(13)"transports" or "***transportation***" means the movement of property and loading, unloading, or storage incidental to the movement. [14]

(D)   61-2-101.   Purpose. To promote public safety, health, and welfare and to reduce traffic deaths, injuries, and property losses resulting from traffic accidents, it is in the public interest to establish a highway traffic safety program and provide for its administration. It is in the public interest to implement, modernize,

---

[9] "Vehicle" means ANY vehicle. Even motor vehicles are "vehicles" but they must be vehicles used for the transport of persons or property." Any vehicle not used for transportation is just a "vehicle."

[10] Void for vagueness. MCA does not define "drawn". Various legal dictionaries definition of drawn:  to aim a firearm.., to prepare any document…, to write a due form….to lawfully remove money… <u>www.legal-dictionarythefreedictionary.com/drawn</u> See also <u>www.cekhukum.com/draw-blacks-law-dictionary</u>

[11] MCA 61-1-101 (86)

[12] MCA 61-1-101(32)

[13] 49 U.S.C. 5102 – Definitions (1)    49 U.S.C. 31301. Definitions (2) "***commerce***" means trade, traffic, and <u>***transportation***</u>;

[14] 49 U.S.C. 5102 - Definitions (13)

VERIFIED JOINDER OF PARTIES TO COMPLAINT                                                    13

and improve the following traffic safety activities: ***driver*** performance, including but not limited to ***driver*** education, ***driver*** testing to determine ***proficiency to operate motor vehicles***; ***driver*** examinations, both physical and mental; ***driver*** licensing; pedestrian performance; establish an effective accident record system, including traffic accident investigation to determine the probable cause of accidents, injuries, and deaths; improve and establish a system of **vehicle** registration, **vehicle** operation, and **vehicle** inspection; assist in the improving of highway design and maintenance, including lighting, markings, and surface treatment to improve safety; establish an effective traffic control system; promote the ***adoption of uniform vehicle laws***; …

(E)61-3-101.   Duties of department -- records.

> (1) (a) The department shall create and maintain a central registry of electronic files that includes an electronic record of title as specified in this section for ***motor vehicles***, trailers, semitrailers, pole trailers, travel trailers, campers, motorboats, personal watercraft, sailboats, snowmobiles, and ***off-highway vehicles*** ….

> 2)   The electronic record of title for a ***motor vehicle***, trailer, semitrailer, pole trailer, travel trailer, camper, motorboat, personal watercraft, sailboat, snowmobile, or ***off-highway vehicle*** must contain the following…

> (3)   The electronic record of registration for a ***motor vehicle***, trailer, semitrailer, pole trailer, travel trailer, camper, motorboat, personal watercraft, sailboat, snowmobile, or off-highway vehicle must contain, at a minimum, the following…

(F)61-3-201.   Certificate of title required -- exclusions. (1) Except as provided in subsection (2), the owner of a ***motor vehicle***, trailer, semitrailer, pole trailer, camper, motorboat, personal watercraft, sailboat, or snowmobile that is in this state and for which a certificate of title has not been issued by or an electronic record of title has not been created by the department shall apply to the department, its authorized agent, or a county treasurer for a certificate of title for the ***motor vehicle***, trailer, semitrailer, pole trailer, camper, motorboat, personal watercraft, sailboat, or snowmobile.

(G)    61-3-301.   Registration -- license plate required -- display.

> (1) (a) A person ***may not operate a motor vehicle***, trailer, semitrailer, pole trailer, or travel trailer ***upon the public highways***

VERIFIED JOINDER OF PARTIES TO COMPLAINT

*of Montana* unless the ***motor vehicle***, trailer, semitrailer, pole trailer, or travel trailer is properly registered and has the proper license plates conspicuously displayed on the ***motor vehicle***, trailer, semitrailer, pole trailer, or travel trailer. A license plate must be securely fastened to prevent it from swinging and may not be obstructed from plain view.

(H)        61-3-302.  Residents ***operating motor vehicles*** under licenses issued by any state other than Montana forbidden -- vehicles exempt from registration -- exceptions. (1) (a) A resident of the state of Montana who ***owns a motor vehicle***, trailer, semitrailer, or pole trailer may not operate the ***motor vehicle***, trailer, semitrailer, or pole trailer with license plates issued by any other state than Montana.

(I) 61-3-303.   Original registration -- process -- fees. (1) Except as provided in 61-3-324, a Montana resident ***who is an owner of a motor vehicle***, trailer, semitrailer, or pole trailer operated or ***driven upon the public highways of this state shall register the motor vehicle***, trailer, semitrailer, or pole trailer in the county where the registering owner is domiciled. A nonresident who has an interest in real property in Montana may register in the county where the real property is located a ***motor vehicle***, trailer, semitrailer, or pole trailer operated or ***driven upon the public highways of this state***.

(J) 61-3-331.   Assignment of license plates. The county treasurer or an authorized agent shall, at the time of issuing a registration receipt under 61-3-322, ***assign the motor vehicle***, trailer, semitrailer, or pole trailer a distinctive license plate number and, unless the license plates must be specially ordered from the department, deliver to the applicant, depending on the ***type of motor vehicle*** that was registered, a set of two license plates or one license plate, each of which must bear the assigned distinctive number.

(K)        61-3-345.  ***Motor vehicle*** computer system. The department shall maintain a statewide online computer system to be used to title and ***register motor vehicles***, trailers, semitrailers, pole trailers, campers, motorboats, personal watercraft, sailboats, snowmobiles, and off-highway vehicles.[15]

---

[15] Where is the authority to maintain records of vehicles not used for the "transportation of persona or property."

(L)61-3-402.   Personalized license plates authorized. A person who is the ***registered owner of a motor vehicle***[16], truck, motor home, trailer, motorcycle, quadricycle, ***or other vehicle for the owner's personal use*** [17] may upon payment of the fee prescribed in 61-3-406 apply to the department for personalized license plates in the manner prescribed in 61-3-405. The plates must be affixed to the vehicle for ***which registration is sought in lieu*** of the license plates numbered as provided in 61-3-332.

**(M)**      MCA 61-8-101.   Application -- exceptions. (1) As used in this chapter, ***"ways of this state open to the public"*** means any highway, road, alley, lane, parking area, or other public or private place adapted and ***fitted for public travel that is in common use by the public.***

(N)      MCA 61-8-102 Uniformity of interpretation -- definitions. (1) Interpretation of this chapter in this state ***must be as consistent as possible with the interpretation of similar laws in other states***.

  ***a.*** (k)   (i) "Intersection" means the area embraced within the prolongation or connection of the lateral curb lines or if there are no curb lines then the lateral boundary lines of the roadways of two highways that join one another at or approximately at right angles or the area within which ***vehicles traveling*** on different highways joining at any other angle may come in conflict.

  ***b.*** (*m*)   "Local authorities" means every county, municipal, and other local board or body ***having <u>authority to enact laws</u>*** relating to traffic <u>under the constitution</u> and laws of ***this state***.

  ***c.*** (*s*)   "Private road" or "driveway" means a way or place in ***private ownership and used for <u>vehicular travel</u> by the owner*** and those having express or implied permission from the owner, but not by other persons.

(O)      Unauthorized use of ***motor vehicles***.[18]

      (1) A person commits the offense of ***unauthorized use of <u>motor vehicles</u>*** if the person knowingly ***operates*** the

---

[16] Registration applies only to vehicles used for the "transport to of persons or property", therefore Commercial

[17] A motor vehicle or a vehicle for personal use.  Two different things.  What are "other vehicles for owner's personal use"?

[18] MCA 45-6-308.

VERIFIED JOINDER OF PARTIES TO COMPLAINT                                    16

***automobile***, airplane, motorcycle, quadricycle, motorboat, ***or other motor-propelled vehicle***[19] of another without the other's consent.

(P) MCA 61 does not include the term "non-passenger automobile"; therefore MCA 61 does not pertain to the Aggrieved Defendant.  Further, MCA 61-1-101 are definitions pertaining to "vehicles as show below:



Montana Code Annotated 2021

TITLE 61. MOTOR VEHICLES
CHAPTER 1. DEFINITIONS
Part 1. Vehicles

**Definitions**

61-1-101.  Definitions. As used in this title, unless the context indicates otherwise, the following definitions apply:

**(Q)**      U.S.C. Title 49 32901 (17)"non-passenger automobile" means an automobile that is not a passenger automobile or a work truck.  Title 49 also explains non-passenger automobiles and explicitly states a non-passenger automobile is not a motor vehicle.

   a.  automobile (3) except as provided in section 32908 of this title , "automobile" means a 4-wheeled vehicle that is propelled by fuel, or by alternative fuel, manufactured ***primarily for use on public streets, roads, and highways*** and rated at less than 10,000 pounds gross vehicle weight, except— (A) a vehicle operated only on a rail line; (B) a vehicle manufactured in different stages by 2 or more manufacturers, if no intermediate or final-stage manufacturer of that vehicle manufactures more than 10,000 multi-stage vehicles per year; or (C) a work truck.

   b.  (18)"passenger automobile" means an automobile that the Secretary decides by regulation is manufactured primarily for transporting not more than 10 individuals, but does not include an automobile capable of off-highway operation that the Secretary decides by regulation—

        (A)has a significant feature (except 4-wheel drive) designed for off-highway operation; and

---

[19] Automobile and motor-propelled vehicle are clearly two distinctly different conveyances.

VERIFIED JOINDER OF PARTIES TO COMPLAINT                                    17

(B) is a 4-wheel drive automobile or is rated at more than 6,000 pounds gross vehicle weight.

   c. (19) "work truck" means a vehicle that—

(A) is rated at between 8,500 and 10,000 pounds gross vehicle weight; and

(B) is not a medium-duty passenger vehicle (as defined in section 86.1803–01 of title 40, Code of Federal Regulations, as in effect on the date of the enactment of the Ten-in-Ten Fuel Economy Act).

**(R)**    CFR 523.5 Non-passenger Automobile A non-passenger automobile means an automobile that is not a passenger automobile or a work truck and includes vehicles described in paragraphs (a) and (b) of this section: (a) An automobile designed to perform at least one of the following functions: (1) Transport more than 10 persons;

**(S)** City of Glendive Ordinance definitions:

**STREET:**  Includes alleys, lanes, courts, boulevards, ***public ways***, public squares, public places and sidewalks within the city. [Emphasis added]

    2.4 With full knowledge that Brenda was acting as a matter of right, engaged in the conduct of public vehicular travel to which their motor vehicle code (a privilege code) does not apply, these Defendants and each of them has made collective and individual decisions, choices, to violate the Complainant as described in the original Complaint.

## VII.  Verification

I, Brenda-Lee, Family of Held, view the language of Montana law to preserve as a common right the activity of public vehicular travel.  I do hereby declare under penalties of bearing false witness that my Yes is yes and my No is no in accordance with the Holy Scriptures that the statements and allegations made herein are true and correct to the very best of my knowledge, and that no material

falsity is believed to exist, nor has any been made or uttered in relation to any

exhibit filed in support of this Complaint.

Executed this 9th day of October 2022

Respectfully submitted,

By: _____

Brenda Held Affiant/Complainant
c/o PO BOX 1074 Glendive Mont 59330
406-941-2721   bheld1206@gmail.com

Using a notary for this document does not constitution any adhesion, nor does it
alter the status of Brenda-Lee, Family of Held.  The purpose for notary is
verification and identification only and not for entrance into a foreign jurisdiction.

STATE OF MONTANA                     )
                                     ) ss.:
COUNTY OF LEWIS AND CLARK  )

 On October 9, 2022, before me, Brenda-Lee Family of Held personally appeared

with satisfactory identification evidence to be the woman whose name is

subscribed to the within instrument and acknowledged to me that she e3xecuted

the same in her authorized capacity and that by his signature on the instrument

executed the instruments.

Sworn to me this 9th day of October 2022

_____

ANDREA NICOLE FOX
NOTARY PUBLIC for the
State of Montana
Residing at Helena, MT
My Commission Expires
December 20, 2023

Notary Public

VERIFIED JOINDER OF PARTIES TO COMPLAINT                                          19

USPS Priority Mail Express # EJ 851 629 018 US
USPS Priority Mail Express # EJ 851 629 021 US

## CERTIFICATE OF SERVICE

It is hereby certified, that on the date noted below, the undersigned Notary Public mailed to:

## Bennie Thompson
## Chairman, Homeland Security Committee
## 436 Cannon House Office Building
## Washington, D.C. 20515

hereinafter, "Recipient," the documents and sundry papers regarding BRENDA LEE HELD
Verified Joinder of Similarly Situated Parties as Co-Complainant. as follows:

1.  **VERIFIED JOINDER OF SIMILARLY SITUATED PARTIES as Co-Complaint** (19 pages);

2.  **EXHIBIT A – TRAFFIC TICKETS,** (8 pages);

3.  **EXHIBIT B – AFFIDAVIT OF FACTS FEBRUARY 28, 2022 INCIDENT,** (13 pages);

4.  **EXHIBIT C - AFFIDAVIT OF FACTS MARCH 9, 2022 INCIDENT,** (17 pages);

5.  **EXHIBIT D – AFFIDAVIT OF FACTS - DOCUMENTATION,** (12 pages);

6.  **ORIGINAL COMPLAINT 18 USC § 4 filed 3/9/06 by David R Myrland, Kurt R. Riggin, and We the People**, (72 pages);

7.  **CERTIFICATE of SERVICE** (signed original on file)

by USPS Priority Mail Express # EJ 851 629 021 US attached by placing same in a postpaid
envelope properly addressed to Recipient at the said address and depositing same at an official
depository under the exclusive face and custody of the U.S. Postal Service within the State of
Montana on September 19, 2022.

USPS Priority Mail Express # EJ 851 629 018 US
USPS Priority Mail Express # EJ 851 629 021 US

## CERTIFICATE OF SERVICE

It is hereby certified, that on the date noted below, the undersigned witness mailed to:

**U.S. Department of Justice**
**Merrick B Garland**
**957 Pennsylvania Ave. NW**
**Washington, D.C. 20530-0001**

hereinafter, "Recipient," the documents and sundry papers regarding BRENDA LEE HELD Verified Joinder of Similarly Situated Parties as Co-Complainant. as follows:

1. **VERIFIED JOINDER OF SIMILARLY SITUATED PARTIES as Co-Complaint** (19 pages);

2. **EXHIBIT A – TRAFFIC TICKETS,** (8 pages);

3. **EXHIBIT B – AFFIDAVIT OF FACTS FEBRUARY 28, 2022 INCIDENT,**  (13 pages);

4. **EXHIBIT C - AFFIDAVIT OF FACTS MARCH 9, 2022 INCIDENT,**  (17 pages);

5. **EXHIBIT D – AFFIDAVIT OF FACTS - DOCUMENTATION,**  (12 pages);

6. **ORIGINAL COMPLAINT 18 USC § 4 filed 3/9/06 by David R Myrland, Kurt R. Riggin, and We the People**, (72 pages);

7. **CERTIFICATE of SERVICE** (signed original on file)

by USPS Priority Mail Express # EJ 851 629 018 US attached by placing same in a postpaid envelope properly addressed to Recipient at the said address and depositing same at an official depository under the exclusive face and custody of the U.S. Postal Service within the State of Montana on September 19, 2022.

# EXHIBIT H



UNITED STATES
POSTAL SERVICE®

PRIORITY
MAIL
EXPRESS®

EJ 851 629 021 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( 406 ) 941-2721

Brenda Held
PO Box 1074
Glendive MT 59330

**DELIVERY OPTIONS** (Customer Use Only)

☒ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE ( )

Bennie Thompson
Homeland Security Committee
436 Cannon House Office Building
Washington DC

ZIP + 4® (U.S. ADDRESSES ONLY)

2 0 5 1 5 -

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

**PAYMENT BY ACCOUNT** (if applicable)
USPS® Corporate Acct. No.   Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day   ☒ 2-Day   ☐ Military   ☐ DPO

PO ZIP Code   59330

Scheduled Delivery Date (MM/DD/YY)   9-22-22

Date Accepted (MM/DD/YY)   9-19-22

Scheduled Delivery Time   ☐ 12 Noon   ☐ 3:00 PM

Time Accepted   353   ☐ AM   ☒ PM

Postage   $ 26.95

Insurance Fee   CCD Fee

Return Receipt Fee   $ 3.25

Live Animal Transportation Fee

Special Handling/Fragile   $

Sunday/Holiday Premium Fee   $

Total Postage & Fees   $ 30.20

☒ Flat Rate   or   Weight   lbs.   9   ozs.

Acceptance Employee Initials

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY)   Time   ☐ AM   ☐ PM   Employee Signature

Delivery Attempt (MM/DD/YY)   Time   ☐ AM   ☐ PM   Employee Signature

LABEL 11-B, MAY 2021   PSN 7690-02-000-9996

PEEL FROM THIS CORNER

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Homeland Security Commission
436 Cannon House Office Building
Washington DC
20515

9590 9402 7486 2055 5590 79

EJ 851 629 021 US

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

Tracking Number:

## EJ851629021US

 Copy   ⚹ Add to Informed Delivery

### Latest Update

Your item was delivered to an individual at the address at 11:14 am on September 22, 2022 in WASHINGTON, DC 20515 to HOUSE 20515. The item was signed for by E GREEN.

**Delivered**
**Delivered, Left with Individual**
WASHINGTON, DC 20515
September 22, 2022, 11:14 am

**Arrived at Post Office**
WASHINGTON, DC 20018
September 22, 2022, 10:17 am

**Arrived at USPS Regional Destination Facility**
WASHINGTON DC V STREET DISTRIBUTION CENTER
September 22, 2022, 8:45 am

**Arrived at USPS Regional Origin Facility**
BILLINGS MT DISTRIBUTION CENTER
September 20, 2022, 9:12 pm

**Arrived at USPS Origin Facility**
GLENDIVE, MT 59330
September 19, 2022, 5:27 pm

**USPS in possession of item**
GLENDIVE, MT 59330
September 19, 2022, 3:53 pm

**Hide Tracking History**





Tracking Number:

## EJ851629018US

 Copy      Add to Informed Delivery

**● Delivered**

**Delivered, Individual Picked Up at Postal Facility**

WASHINGTON, DC 20530
September 23, 2022, 5:02 am

### Latest Update

Your item was picked up at a postal facility at 5:02 am on
September 23, 2022 in WASHINGTON, DC 20530 by JUSTICE
20530. The item was signed for by E ANDERSON.

**Available for Pickup**

WASHINGTON, DC 20530
September 22, 2022, 10:33 am

**Arrived at Post Office**

WASHINGTON, DC 20018
September 22, 2022, 10:19 am

**Arrived at USPS Regional Destination Facility**

WASHINGTON DC V STREET DISTRIBUTION CENTER
September 22, 2022, 8:47 am

**Arrived at USPS Regional Origin Facility**

BILLINGS MT DISTRIBUTION CENTER
September 20, 2022, 9:12 pm

**Arrived at USPS Origin Facility**

GLENDIVE, MT 59330
September 19, 2022, 5:27 pm

**USPS in possession of item**

GLENDIVE, MT 59330
September 19, 2022, 3:55 pm

**Hide Tracking History**



**USPS Tracking**®

Tracking | FAQs >

Track Packages Anytime, Anywhere — Get the free Informed Delivery® feature to receive automated notifications on your packages — Learn More

Tracking Number:

**70192970000176735295**

Copy   Add to Informed Delivery

Remove ✕

**Latest Update**

Your item was picked up at a postal facility at 4:50 am on October 6, 2022 in WASHINGTON, DC 20530.

Get More Out of USPS Tracking:

USPS Tracking Plus®

● **Delivered**
**Delivered, Individual Picked Up at Postal Facility**
WASHINGTON, DC 20530
October 6, 2022, 4:50 am

● **In Transit to Next Facility**
October 5, 2022

● **Available for Pickup**
WASHINGTON, DC 20530
October 5, 2022, 11:06 am

● **Arrived at Post Office**
WASHINGTON, DC 20018
October 5, 2022, 9:45 am

● **Arrived at USPS Regional Destination Facility**
WASHINGTON DC DISTRIBUTION CENTER
October 5, 2022, 2:30 am

● **Departed USPS Regional Origin Facility**
BILLINGS MT DISTRIBUTION CENTER
October 1, 2022, 10:02 pm

● **Arrived at USPS Regional Origin Facility**
BILLINGS MT DISTRIBUTION CENTER
October 1, 2022, 9:08 pm

● **Departed Post Office**
GLENDIVE, MT 59330
October 1, 2022, 3:46 pm

● **USPS in possession of item**
GLENDIVE, MT 59330
October 1, 2022, 11:40 am

● Hide Tracking History

**Tracking Number:**

## 70203160000069348353

 Copy    ⚡ Add to Informed Delivery

### Latest Update

Your item was delivered to an individual at the address at 11:35 am on October 5, 2022 in WASHINGTON, DC 20515.

**Get More Out of USPS Tracking:**
📇 USPS Tracking Plus®

● **Delivered**
**Delivered, Left with Individual**
WASHINGTON, DC 20515
October 5, 2022, 11:35 am

**Arrived at Post Office**
WASHINGTON, DC 20018
October 5, 2022, 8:42 am

**Arrived at USPS Regional Destination Facility**
WASHINGTON DC DISTRIBUTION CENTER
October 5, 2022, 2:30 am

**In Transit to Next Facility**
October 4, 2022

**Departed USPS Regional Origin Facility**
BILLINGS MT DISTRIBUTION CENTER
October 1, 2022, 10:12 pm

**Arrived at USPS Regional Origin Facility**
BILLINGS MT DISTRIBUTION CENTER
October 1, 2022, 9:07 pm

**Departed Post Office**
GLENDIVE, MT 59330
October 1, 2022, 3:46 pm

**USPS in possession of item**
GLENDIVE, MT 59330
October 1, 2022, 11:41 am

**Hide Tracking History**

CERTIFICATE OF SERVICE

STATE OF MONTANA OFFICE OF THE GOVERNOR,
GREG GIANFORTE, agents, successor and assigns,
P.O. BOX 200801
HELENA, MT 59620-0801
USPS CM 7022 0410 0001 6975 3223 RRR 9590 9402 7486 2055 5593 14


DEPARTMENT OF JUSTICE,
ATTORNEY GENERAL AUSTIN KNUDSEN, agents, successor and assigns,
JUSTICE BUILDING
THIRD FLOOR,
215 NORTH SANDERS,
PO BOX 201401,
HELENA MT 59620-1401
USPS CM7022 0410 0001 6975 3216 RRR 9590 9402 7486 2055 5593 21

MONTANA DEPARTMENT OF MOTOR VEHICLES,
LAURIE BAKRI, agents, successor and assigns,
PO BOX 201430
302 N ROBERTS STREET
HELENA MT 59620-1430
USPS CM7022 0410 0001 6975 3209 RRR 9590 9402 7486 2055 5593 38

hereinafter, "Recipient," the documents and sundry papers regarding BRENDA LEE HELD  Verified Joinder of Similarly Situated Parties as Co-Complainant. as follows:

1. **COVER LETTER** (1 pages);

2. **VERIFIED JOINDER OF SIMILARLY SITUATED PARTIES as Co-Complaint** (19 pages);

3. **EXHIBIT A – TRAFFIC TICKETS,** (8 pages);

4. **EXHIBIT B – AFFIDAVIT OF FACTS FEBRUARY 28, 2022 INCIDENT,**  (13 pages);

5. **EXHIBIT C - AFFIDAVIT OF FACTS MARCH 9, 2022 INCIDENT,**  (17 pages);

6. **EXHIBIT D – AFFIDAVIT OF FACTS - DOCUMENTATION,**  (12 pages);

7. **ORIGINAL COMPLAINT 18 USC § 4 filed 3/9/06 by David R Myrland, Kurt R. Riggin, and We the People,** (72 pages);

8. **CERTIFICATE of SERVICE** (signed original on file)

by USPS Priority Certified Mail attached by placing same in a postpaid envelope properly addressed to Recipient at the said address and depositing same at an official depository under the exclusive face and custody of the U.S. Postal Service within the State of Montana on October 24, 2022.

**Tracking Number:**

# 70220410000169753216

 Copy   ✗ Add to Informed Delivery

**Latest Update**

Your item was picked up at a postal facility at 10:39 am on October 27, 2022 in HELENA, MT 59620.

Get More Out of USPS Tracking:

🔲 USPS Tracking Plus®

● **Delivered**
**Delivered, Individual Picked Up at Postal Facility**
HELENA, MT 59620
October 27, 2022, 10:39 am

● **Arrived at Post Office**
HELENA, MT 59601
October 27, 2022, 7:35 am

● **In Transit to Next Facility**
October 26, 2022

● **Departed USPS Regional Facility**
BILLINGS MT DISTRIBUTION CENTER
October 25, 2022, 10:47 pm

● **Arrived at USPS Regional Facility**
BILLINGS MT DISTRIBUTION CENTER
October 25, 2022, 9:42 pm

● **Arrived at USPS Facility**
GLENDIVE, MT 59330
October 25, 2022, 9:11 am

● **USPS in possession of item**
GLENDIVE, MT 59330
October 24, 2022, 4:06 pm

● **Hide Tracking History**

**USPS Tracking**®



Tracking  /  FAQs >

Track Packages Anytime, Anywhere — Get the free Informed Delivery® feature to receive automated notifications on your packages   **Learn More**

Tracking Number:

**70220410000169753209**

📋 Copy    ⚡ Add to Informed Delivery

Remove ✕

**Latest Update**

Your item was picked up at a postal facility at 10:39 am on October 27, 2022 in HELENA, MT 59620.

Get More Out of USPS Tracking:

📱 USPS Tracking Plus®

● **Delivered**
Delivered, Individual Picked Up at Postal Facility
HELENA, MT 59620
October 27, 2022, 10:39 am

**Arrived at Post Office**
HELENA, MT 59601
October 27, 2022, 7:34 am

**In Transit to Next Facility**
October 26, 2022

**Departed USPS Regional Facility**
BILLINGS MT DISTRIBUTION CENTER
October 25, 2022, 10:47 pm

**Arrived at USPS Regional Facility**
BILLINGS MT DISTRIBUTION CENTER
October 25, 2022, 9:42 pm

**Arrived at USPS Facility**
GLENDIVE, MT 59330
October 25, 2022, 9:11 am

**USPS in possession of item**
GLENDIVE, MT 59330
October 24, 2022, 4:08 pm

Hide Tracking History

# USPS Tracking®

Tracking   /   FAQs >

**Track Packages Anytime, Anywhere**  Get the free Informed Delivery® feature to receive automated notifications on your packages   Learn More

Tracking Number:                                                                              Remove ✕
## 70220410000169753223

⧉ Copy   ⚡ Add to Informed Delivery

| **Latest Update** | ● **Delivered** |
|---|---|
| Your item was picked up at a postal facility at 10:39 am on October 27, 2022 in HELENA, MT 59620. | **Delivered, Individual Picked Up at Postal Facility**<br>HELENA, MT 59620<br>October 27, 2022, 10:39 am |
| **Get More Out of USPS Tracking:** | **Arrived at Post Office**<br>HELENA, MT 59601<br>October 27, 2022, 7:34 am |
| ⧉ USPS Tracking Plus® | **In Transit to Next Facility**<br>October 26, 2022 |

**Departed USPS Regional Facility**
BILLINGS MT DISTRIBUTION CENTER
October 25, 2022, 10:49 pm

**Arrived at USPS Regional Facility**
BILLINGS MT DISTRIBUTION CENTER
October 25, 2022, 9:42 pm

**Arrived at USPS Facility**
GLENDIVE, MT 59330
October 25, 2022, 9:11 am

**USPS in possession of item**
GLENDIVE, MT 59330
October 24, 2022, 4:07 pm

**Hide Tracking History**

DEFENDANT COPY

**NOTICE TO APPEAR AND COMPLAINT** — **GLENDIVE POLICE DEPARTMENT** — **050A** 55265

☐ STATE OF MONTANA )
☐ COUNTY OF Dawson ) vs.
☐ CITY OF GLENDIVE )

DEFENDANT (F/M/L)   FIRST   M.   LAST
Brenda   Lee   HFD

STREET
130 Glenwood Ave. (Highland D)

**YOU ARE HEREBY GIVEN NOTICE TO APPEAR IN**

CITY Glendive   ST MT   ZIP 59330

☐ JUSTICE  ☑ CITY  ☐ YOUTH  ☐

SEX F   WT. 165   HT. 5'7"   HAIR BRo   EYES BRo   DOB 08/15/1969

COURT OF Bozeman   DEPT #
D/L # 0805019694115   D/L STATE MT   D/L EXP. YEAR 2028

COUNTY OF DAWSON

LOCATED AT 312 S MERRILL
HOME PHONE (406) 939 )06   BUSINESS NAME   BUS. PHONE

GLENDIVE,   , MONTANA

AT 2:00   ☐ AM ☑ PM ON

THE 07 DAY OF MAR   2022
TO ANSWER THIS CHARGE. FAILURE TO APPEAR IN COURT OR PAY ASSESSED FINES, COSTS OR RESTITUTION MAY RESULT IN THE SUSPENSION OF YOUR DRIVER'S LICENSE OR PRIVILEGE TO DRIVE.

VEHICLE LICENSE NO. N/A
LICENSE STATE N/A
VEHICLE MAKE Dodge
VEH. COLOR RED   VEH. YEAR 2018
VEH. MODEL RAM

**THE ABOVE NAMED DEFENDANT IS CHARGED WITH VIOLATING**

☑ MONTANA CODE   ☐ CITY CODE
☐ _____ SECTION NO. 61-3-301   SUB. 3B

ON THE 22 DAY OF FEB , 2022 AT 1540 (MILITARY TIME)

**IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE:**

Altered/Ficticous plates to wit susp operated a MV bearing ficticous plates on a public roadway

VEHICLE TYPE
☐ CAR   ☐ TRK
☐ M/C   ☐ TRK/TRL
☐ PICKUP  ☐ BUS
☐ _____
☐ CMV   ☐ CMV-H
☐ CDL HOLDER

**UNIFORM VIOLATION CODE** V8/22

**PERSONAL APPEARANCE IN COURT REQUIRED IF BOX IS CHECKED.** ▲

☐ Felony
SEARCH:
☐ Consent
☐ Denied
☐ Warrant

☐ Crash
☐ Aircraft
☐ Arrested

Badge # GP9
Dist. # 050
Radar Unit # _____

$85.00

LOCATION Towne / Merrill   GLENDIVE, DAWSON COUNTY, MT

I hereby swear that all information contained on this document is true and correct to the best of my knowledge.   OFFICER SIGNATURE

**TOTAL APPEARANCE** $
**BOND RECEIVED**

DOCKET NUMBER

# EXHIBIT A

**DEFENDANT COPY**

# NOTICE TO APPEAR AND COMPLAINT   GLENDIVE POLICE DEPARTMENT   050A   55266

☐ STATE OF MONTANA )
☐ COUNTY OF Dawson ) vs.
☐ CITY OF GLENDIVE )

**YOU ARE HEREBY GIVEN NOTICE TO APPEAR IN**

☐ JUSTICE  ☑ CITY  ☐ YOUTH  ☐ _____

COURT OF Burman          DEPT # _____

COUNTY OF DAWSON

LOCATED AT 312 S MERRILL

GLENDIVE, _____ , MONTANA

AT 2:00   ☐ AM ☑ PM  ON

THE 07 DAY OF MAR , 2022

TO ANSWER THIS CHARGE. FAILURE TO APPEAR IN COURT OR PAY ASSESSED FINES, COSTS OR RESTITUTION MAY RESULT IN THE SUSPENSION OF YOUR DRIVER'S LICENSE OR PRIVILEGE TO DRIVE.

**PERSONAL APPEARANCE IN COURT REQUIRED IF BOX IS CHECKED.** ☐ ▲

☐ Felony          Badge # GP9
SEARCH:          Dist. # 050
☐ Consent   Radar Unit # _____
☐ Denied
☐ Warrant
☐ Crash            $85.00
☐ Aircraft
☐ Arrested
☐ B/A Test Given
☐ B/A Test Refused   Supr. Review

DEFENDANT (F/M/L)   FIRST   M.   LAST
Brenda   Lee   Herd

STREET
130 Glenwood Ave (HP)   VEHICLE LICENSE NO. N/A

CITY Glendive   ST MT   ZIP 59330   LICENSE STATE N/A

SEX F   WT. 165   HT. 5'7"   HAIR BRO   EYES BRO   DOB 08/16/1964   VEHICLE MAKE DODG

D/L # 0805019694115   D/L STATE MT   D/L EXP. YEAR 2028   VEH. COLOR RED   VEH. YEAR 2019

HOME PHONE 406 989 1206   BUSINESS NAME   BUS. PHONE   VEH. MODEL RAM

VEHICLE TYPE
☐ CAR   ☐ TRK
☐ M/C   ☐ TRK/TRL
☐ PICKUP   ☐ BUS

**THE ABOVE NAMED DEFENDANT IS CHARGED WITH VIOLATING**

☑ MONTANA CODE          ☐ CITY CODE

☐ _____ SECTION NO. 61-3-301 SUB. 1 A

☐ CMV   ☐ CMV-H
☐ CDL HOLDER

ON THE 28 DAY OF FEB , 2022 AT 1540 (MILITARY TIME)

**IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE:**

**UNIFORM VIOLATION CODE**
V2121

operating a vehicle which has not been registered to wit susp operated an unregistered veh on a public roadway

LOCATION towne / Merr GLENDIVE, DAWSON COUNTY, MT

I hereby swear that all information contained on this document is true and correct to the best of my knowledge.   OFFICER SIGNATURE

**TOTAL APPEARANCE** $

**BOND RECEIVED**

DOCKET NUMBER

**DEFENDANT COPY**

## NOTICE TO APPEAR AND COMPLAINT — GLENDIVE POLICE DEPARTMENT  050A  55267

- ☐ STATE OF MONTANA )
- ☐ COUNTY OF _Dawson_ ) vs.
- ☐ CITY OF _GLENDIVE_ )

**YOU ARE HEREBY GIVEN NOTICE TO APPEAR IN**

- ☐ JUSTICE  ☑ CITY  ☐ YOUTH  ☐ _____

COURT OF _Burman_  DEPT # _____

COUNTY OF _DAWSON_

LOCATED AT _312 S MERRILL_

_GLENDIVE,_ _____, MONTANA

AT _2:00_  ☐ AM ☑ PM  ON

THE _07_ DAY OF _MAR_ , _2022_
TO ANSWER THIS CHARGE. FAILURE TO APPEAR IN COURT OR PAY ASSESSED FINES, COSTS OR RESTITUTION MAY RESULT IN THE SUSPENSION OF YOUR DRIVER'S LICENSE OR PRIVILEGE TO DRIVE.

**PERSONAL APPEARANCE IN COURT REQUIRED IF BOX IS CHECKED.** ☐ ▲

- ☐ Felony
- SEARCH:
  - ☐ Consent
  - ☐ Denied
  - ☐ Warrant
- ☐ Crash
- ☐ Aircraft
- ☐ Arrested
- ☐ B/A Test Given
- ☐ B/A Test Refused

Badge # _050_ _069_
Dist. # _050_
Radar Unit # _____

_$60_

Supr. Review

---

DEFENDANT (F/M/L)  FIRST  M.  LAST
_Brenda_  _Lee_  _HELD_

STREET
_30 Glenwood Ave (HP)_

CITY _Glendive_  ST _MT_  ZIP _59330_

SEX _F_  WT. _165_  HT. _5'7"_  HAIR _BRO_  EYES _BRO_  DOB _08/15/1969_

D/L # _0805096594115_  D/L STATE _MT_  D/L EXP. YEAR _2023_

HOME PHONE _(406) 989-2205_  BUSINESS NAME  BUS. PHONE

VEHICLE LICENSE NO. _N/A_
LICENSE STATE _N/A_
VEHICLE MAKE _DODG_
VEH. COLOR _RED_  VEH. YEAR _2019_
VEH. MODEL _RAM_
VEHICLE TYPE
- ☐ CAR  ☐ TRK
- ☐ M/C  ☐ TRK/TRL
- ☐ PICKUP  ☐ BUS
- ☐ _____
- ☐ CMV  ☐ CMV-H
- ☐ CDL HOLDER

**THE ABOVE NAMED DEFENDANT IS CHARGED WITH VIOLATING**

☑ MONTANA CODE  ☐ CITY CODE

☐ _____  SECTION NO. _61-5-116_  SUB. _1_

ON THE _28_ DAY OF _FEB_ , _2022_ AT _1540_ (MILITARY TIME)

**IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE:**

UNIFORM VIOLATION CODE
_V1060_

_Fail to have DL in Immediate possession to wit susp refused to exhibit a valid DL upon Demand upon being contacted for a traffic violation_

LOCATION _Towne/Merrill_  GLENDIVE, DAWSON COUNTY, MT

I hereby swear that all information contained on this document is true and correct to the best of my knowledge.

OFFICER SIGNATURE _L Ferre 050_

**TOTAL APPEARANCE**
$ _____

**BOND RECEIVED**

DOCKET NUMBER

DEFENDANT COPY

# NOTICE TO APPEAR AND COMPLAINT — GLENDIVE POLICE DEPARTMENT

**050A** 35268

☐ STATE OF MONTANA )
☐ COUNTY OF Dawson ) vs.
☐ CITY OF GLENDIVE )

**YOU ARE HEREBY GIVEN NOTICE TO APPEAR IN**

☐ JUSTICE  ☑ CITY  ☐ YOUTH  ☐

COURT OF Buffman        DEPT # _____

COUNTY OF DAWSON

LOCATED AT 312 S MERRILL

GLENDIVE, _____ , MONTANA

AT 2:00   ☐ AM  ☑ PM  ON

THE 07 DAY OF MAR , 2022

TO ANSWER THIS CHARGE. FAILURE TO APPEAR IN COURT OR PAY ASSESSED FINES, COSTS OR RESTITUTION MAY RESULT IN THE SUSPENSION OF YOUR DRIVER'S LICENSE OR PRIVILEGE TO DRIVE.

**PERSONAL APPEARANCE IN COURT REQUIRED IF BOX IS CHECKED.** ☐ ▲

☐ Felony

SEARCH:
☐ Consent
☐ Denied
☐ Warrant

☐ Crash
☐ Aircraft
☐ Arrested
☐ B/A Test Given
☐ B/A Test Refused

Badge # GP9
Dist. # 050
Radar Unit # _____

$85

Supr. Review

---

DEFENDANT (F/M/L)  FIRST  M.  LAST
Brenda  Lee  HELD

STREET
130 Glenwood Ave (HP)

CITY Glendive    ST MT   ZIP 59330

SEX F  WT. 165  HT. 5'7"  HAIR BRO  EYES BRO  DOB 2022

D/L # 8805019694115   D/L STATE MT   D/L EXP. YEAR 2022

HOME PHONE 406 989 2006   BUSINESS NAME   BUS. PHONE

VEHICLE LICENSE NO. N/A
LICENSE STATE N/A
VEHICLE MAKE DODGE
VEH. COLOR RED  VEH. YEAR 2019
VEH. MODEL RAM

VEHICLE TYPE
☐ CAR  ☐ TRK
☐ M/C  ☐ TRK/TRL
☐ PICKUP  ☐ BUS
☐

☐ CMV  ☐ CMV-H
☐ CDL HOLDER

**THE ABOVE NAMED DEFENDANT IS CHARGED WITH VIOLATING**

☐ MONTANA CODE                    ☐ CITY CODE

☐ _____ SECTION NO. 61-8-328 SUB. _____

ON THE 28 DAY OF FEB , 2022 AT _____ (MILITARY TIME)

**IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE:**

Unsafe lane change to wit susp. improperly turned into the #2 lane when turning NB onto Merrill Ave from W Towne St

**UNIFORM VIOLATION CODE**
V5280

LOCATION Towne / Merri , GLENDIVE, DAWSON COUNTY, MT

I hereby swear that all information contained on this document is true and correct to the best of my knowledge.

OFFICER SIGNATURE

**TOTAL APPEARANCE**
$

**BOND RECEIVED**

DOCKET NUMBER

**DEFENDANT COPY**

# NOTICE TO APPEAR AND COMPLAINT

**GLENDIVE POLICE DEPARTMENT**   **050A**   5F301

☐ STATE OF MONTANA )
☐ COUNTY OF _Dawson_ ) vs.
☐ CITY OF _GLENDIVE_ )

DEFENDANT (F/M/L)   FIRST   M.   LAST
_Brenda_   _Lee_   _Held_

STREET _130 Glenwood Ave_   VEHICLE LICENSE NO. _N/A_

CITY _Glendive_   ST _MT_   ZIP _59330_   LICENSE STATE _N/A_

SEX _F_   WT. _165_   HT. _5'07"_   HAIR _BRO_   EYES _BRO_   DOB _08/15/1969_   VEHICLE MAKE _DODG_

D/L # _0805019694115_   D/L STATE _MT_   D/L EXP. YEAR _2023_   VEH. COLOR _RED_   VEH. YEAR _2019_

HOME PHONE _408 989 1266_   BUSINESS NAME   BUS. PHONE   VEH. MODEL _RAM_

## YOU ARE HEREBY GIVEN NOTICE TO APPEAR IN

☐ JUSTICE  ☑ CITY  ☐ YOUTH  ☐ _____

COURT OF _Buracco_   DEPT # ____

COUNTY OF _DAWSON_

LOCATED AT _312 S MERRILL_

_GLENDIVE,_ , MONTANA

AT _2:00_ ☐ AM ☑ PM ON

THE _21_ DAY OF _MAR_ , _2022_

TO ANSWER THIS CHARGE. FAILURE TO APPEAR IN COURT OR PAY ASSESSED FINES, COSTS OR RESTITUTION MAY RESULT IN THE SUSPENSION OF YOUR DRIVER'S LICENSE OR PRIVILEGE TO DRIVE.

**PERSONAL APPEARANCE IN COURT REQUIRED IF BOX IS CHECKED.** ☐ ▲

☐ Felony

SEARCH:
☐ Consent
☐ Denied
☐ Warrant

☐ Crash
☐ Aircraft
☐ Arrested
☐ B/A Test Given
☐ B/A Test Refused

Badge # _6P9_
Dist. # _050_
Radar Unit # ____

$85.00

Supr. Review

VEHICLE TYPE
☐ CAR  ☐ TRK
☐ M/C  ☐ TRK/TRL
☐ PICKUP  ☐ BUS
☐ ___
☐ CMV  ☐ CMV-H
☐ CDL HOLDER

**THE ABOVE NAMED DEFENDANT IS CHARGED WITH VIOLATING**

☑ MONTANA CODE   ☐ CITY CODE

☐ _____ SECTION NO. _61-3-301_ SUB. _(1)_

ON THE _09_ DAY OF _MAR_ , _2022_ AT _1730_ (MILITARY TIME)

IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE:

**UNIFORM VIOLATION CODE** _V8100_

_Altered/Fictitous plates to wit susp operated a MV bearing fictitous plates on a public roadway_

LOCATION _700 BLK N Merrill_ GLENDIVE, DAWSON COUNTY, MT

I hereby swear that all information contained on this document is true and correct to the best of my knowledge.

OFFICER SIGNATURE _S Fergler God_

**TOTAL APPEARANCE**
$ ____

**BOND RECEIVED**

DOCKET NUMBER

DEFENDANT COPY

**NOTICE TO APPEAR AND COMPLAINT**  — **GLENDIVE POLICE DEPARTMENT**  **050A** 55302

☐ STATE OF MONTANA )
☐ COUNTY OF _Dawson_ ) vs.
☐ CITY OF _GLENDIVE_ )

**YOU ARE HEREBY GIVEN NOTICE TO APPEAR IN**

☐ JUSTICE  ☑ CITY  ☐ YOUTH  ☐

COURT OF _Bufman_ DEPT # _____

COUNTY OF _DAWSON_

LOCATED AT _312 S MERRILL_

_GLENDIVE,_ , MONTANA

AT _2:00_ ☐ AM ☑ PM ON

THE _21_ DAY OF _MAR_ , _2022_

TO ANSWER THIS CHARGE. FAILURE TO APPEAR IN COURT OR PAY ASSESSED FINES, COSTS OR RESTITUTION MAY RESULT IN THE SUSPENSION OF YOUR DRIVER'S LICENSE OR PRIVILEGE TO DRIVE.

**PERSONAL APPEARANCE IN COURT REQUIRED IF BOX IS CHECKED.** ▮ ▲

☐ Felony
SEARCH:
☐ Consent
☐ Denied
☐ Warrant

☐ Crash
☐ Aircraft
☐ Arrested
☐ B/A Test Given
☐ B/A Test Refused

Badge # _GP9_
Dist. # _050_
Radar Unit # _____

$60.00

Supr. Review

DEFENDANT (F/M/L)  FIRST  M.  LAST
_Brenda_  _Lee_  _Held_

STREET _130 Glenwood Ave_

CITY _Glendive_  ST _MT_  ZIP _59330_

SEX _F_  WT. _165_  HT. _5'07"_  HAIR _BRO_  EYES _BRO_  DOB _08/15/1969_

D/L # _0805019694115_  D/L STATE _MT_  D/L EXP. YEAR _2028_

HOME PHONE _406 989 1006_  BUSINESS NAME  BUS. PHONE

VEHICLE LICENSE NO. _N/A_
LICENSE STATE _N/A_
VEHICLE MAKE _DODG_
VEH. COLOR _RED_  VEH. YEAR _2019_
VEH. MODEL _RAM_
VEHICLE TYPE
☐ CAR  ☐ TRK
☐ M/C  ☐ TRK/TRL
☐ PICKUP  ☐ BUS
☐
☐ CMV  ☐ CMV-H
☐ CDL HOLDER

**THE ABOVE NAMED DEFENDANT IS CHARGED WITH VIOLATING**

☑ MONTANA CODE  ☐ CITY CODE

☐  SECTION NO. _61-5-116_  SUB. _____

ON THE _04_ DAY OF _MAR_ , _2022_ AT _1720_ (MILITARY TIME)

IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE:

UNIFORM VIOLATION CODE

_Fail to have DL in immediate possession to wit susp refused to provide a DL upon contact for a traffic violation on a public roadway_

V1060

LOCATION _700 Blk N Merrill_ GLENDIVE, DAWSON COUNTY, MT

I hereby swear that all information contained on this document is true and correct to the best of my knowledge.

_S Zenger GPD_
OFFICER SIGNATURE

**TOTAL APPEARANCE**
$ _____
**BOND RECEIVED**

DOCKET NUMBER

Case 1:22-cv-00137-SPW-TJC Document 2-1 Filed 12/08/22 Page 38 of 152

**DEFENDANT COPY**

# NOTICE TO APPEAR AND COMPLAINT

## GLENDIVE POLICE DEPARTMENT

**050A 55303**

- ☐ STATE OF MONTANA )
- ☐ COUNTY OF _Dawson_ ) vs.
- ☒ CITY OF _GLENDIVE_ )

**YOU ARE HEREBY GIVEN NOTICE TO APPEAR IN**

☐ JUSTICE  ☒ CITY  ☐ YOUTH  ☐

COURT OF _Butman_          DEPT # ____

COUNTY OF _DAWSON_

LOCATED AT _312 S MERRILL_

_GLENDIVE,_ _____, MONTANA

AT _2:00_  ☐ AM ☒ PM ON

THE _21_ DAY OF _MAR_ , _2022_

TO ANSWER THIS CHARGE. FAILURE TO APPEAR IN COURT OR PAY ASSESSED FINES, COSTS OR RESTITUTION MAY RESULT IN THE SUSPENSION OF YOUR DRIVER'S LICENSE OR PRIVILEGE TO DRIVE.

**PERSONAL APPEARANCE IN COURT REQUIRED IF BOX IS CHECKED.** ☐ ▲

- ☐ Felony
- SEARCH:
  - ☐ Consent
  - ☐ Denied
  - ☐ Warrant
- ☐ Crash
- ☐ Aircraft
- ☐ Arrested
- ☐ B/A Test Given
- ☐ B/A Test Refused

Badge # _G-09_
Dist. # _050_
Radar Unit # ____

_$285_

Supr. Review

---

DEFENDANT (F/M/L)  FIRST  M.  LAST
_Brenda_  _Lee_  _Held_

STREET _130 Glenwood Ave_   VEHICLE LICENSE NO. _N/A_

CITY _Glendive_  ST _MT_  ZIP _59330_  LICENSE STATE _N/A_

SEX _F_  WT. _165_  HT. _5'07"_  HAIR _BRO_  EYES _BRO_  DOB _08/15/1969_  VEHICLE MAKE _DODG_

D/L # _0805019694115_  D/L STATE _MT_  D/L EXP. YEAR _2028_  VEH. COLOR _RED_  VEH. YEAR _2019_

HOME PHONE _406 989 1008_  BUSINESS NAME  BUS. PHONE  VEH. MODEL _RAM_

VEHICLE TYPE
- ☐ CAR  ☐ TRK
- ☐ M/C  ☐ TRK/TRL
- ☒ PICKUP  ☐ BUS
- ☐ ____
- ☐ CMV  ☐ CMV-H
- ☐ CDL HOLDER

**THE ABOVE NAMED DEFENDANT IS CHARGED WITH VIOLATING**

☒ MONTANA CODE  ☐ CITY CODE

☐ _____ SECTION NO. _61-6-301_ SUB. _____

ON THE _09_ DAY OF _MAR_ , _2022_ AT _1720_ (MILITARY TIME)

**IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE:**

**UNIFORM VIOLATION CODE** _V9009_

_owner operating w/o insu-rance to wit susp operated an uninsured MV on a public roadway_

LOCATION _700 BLK N Merrill_ GLENDIVE, DAWSON COUNTY, MT

I hereby swear that all information contained on this document is true and correct to the best of my knowledge.    _L. Fengler GPD_

OFFICER SIGNATURE

**TOTAL APPEARANCE** $ _____

**BOND RECEIVED**

DOCKET NUMBER

**DEFENDANT COPY**

**NOTICE TO APPEAR AND COMPLAINT** — **GLENDIVE POLICE DEPARTMENT**   050A 55304

- ☐ STATE OF MONTANA _LPS_
- ☐ COUNTY OF _Burman Dawson_ ) vs.
- ☐ CITY OF _GLENDIVE_ )

**DEFENDANT (F/M/L)**  FIRST: _Brenda_  M.: _Lee_  LAST: _Held_

STREET: _130 Glenwood Ave_

CITY: _Glendive_   ST: _MT_   ZIP: _59330_

| SEX | WT. | HT. | HAIR | EYES | DOB |
| --- | --- | --- | --- | --- | --- |
| F | 165 | 5'07" | BRO | BRO | 08/15/1969 |

D/L #: _0805019694115_   D/L STATE: _MT_   D/L EXP. YEAR: _2028_

HOME PHONE: _406 989 1006_   BUSINESS NAME:   BUS. PHONE:

**YOU ARE HEREBY GIVEN NOTICE TO APPEAR IN**

- ☐ JUSTICE  ☑ CITY  ☐ YOUTH  ☐

COURT OF _Burman_   DEPT #

COUNTY OF _DAWSON_

LOCATED AT _312 S MERRILL_

_GLENDIVE,_  , MONTANA

AT _2:00_  ☐ AM  ☐ PM  ON

THE _21_ DAY OF _MAR_ , _2022_

TO ANSWER THIS CHARGE. FAILURE TO APPEAR IN COURT OR PAY ASSESSED FINES, COSTS OR RESTITUTION MAY RESULT IN THE SUSPENSION OF YOUR DRIVER'S LICENSE OR PRIVILEGE TO DRIVE.

VEHICLE LICENSE NO.: _N/A_
LICENSE STATE: _N/A_
VEHICLE MAKE: _DODG_
VEH. COLOR: _RED_   VEH. YEAR: _209_
VEH. MODEL: _RAM_

VEHICLE TYPE:
- ☐ CAR  ☐ TRK
- ☐ M/C  ☐ TRK/TRL
- ☐ PICKUP  ☐ BUS
- ☐
- ☐ CMV  ☐ CMV-H
- ☐ CDL HOLDER

**THE ABOVE NAMED DEFENDANT IS CHARGED WITH VIOLATING**

- ☑ **MONTANA CODE**  ☐ **CITY CODE**
- ☐ _____ SECTION NO. _61-3-301_  SUB _(1)(a)_

ON THE _09_ DAY OF _MAR_ , _2022_ AT _1700_ (MILITARY TIME)

IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE:

_operating out of a vehicle which has not been properly registered to wit susp operated an unregistered vehicle on a public roadway_

**UNIFORM VIOLATION CODE** _V8121_

LOCATION _700 BLK N Merrill_  GLENDIVE, DAWSON COUNTY, MT

I hereby swear that all information contained on this document is true and correct to the best of my knowledge.

OFFICER SIGNATURE: _J. Jellyk GP4_

**PERSONAL APPEARANCE IN COURT REQUIRED IF BOX IS CHECKED.** ☐

- ☐ Felony

SEARCH:
- ☐ Consent
- ☐ Denied
- ☐ Warrant

- ☐ Crash
- ☐ Aircraft
- ☐ Arrested
- ☐ B/A Test Given
- ☐ B/A Test Refused

Badge # _GP4_
Dist. # _050_
Radar Unit # ____

_$85_

Supr. Review

**TOTAL APPEARANCE**  $ ____

**BOND RECEIVED**

DOCKET NUMBER



brenda-lee:  house of held
c\o 130 glenwood avenue
glendive montana republic [RFD 59330]


brenda-lee:  house of held , Sui Juris impropra personam

IN THE CITY COURT, STATE OF MONTANA
IN AND FOR THE CITY OF GLENDIVE

CITY OF GLENDIVE  ,                                   Case No.: TK-350-2022-0000070
     Plaintiff,

  vs.

            **AFFIDAVIT OF FACTS**
BRENDA LEE HELD,                                **FEBRUARY 28 2022 INCIDENT**
     <sic> <misnomer>
     Alleged & Aggrieved              Date: 18th day of June 2022
     Defendant

             Traffic Court
_____

The Common Law Citizen Brenda of the family name Held hereinafter "Affiant" hereby
Certifies, by Rights Secured under provisions of the Organic Constitution, Constitution
of the United States of America, the Constitution of the several states, Common Law,
Nature and Laws of Natures GOD, that these Rights are retained in FEE SIMPLE
ABSOLUTE, and held and protected with special regard to Rights designated and/or set
forth as follows:


1. I, the Affiant Brenda, affirm that on February 28, 2022 at approximately 3:40:00
   PM, hereinafter "FEBRUARY INCIDENT", was stopped by City of Glendive
   Police Officer FEAGLER hereinafter "FEAGLER".

2. I, the Affiant Brenda, affirm, in interest of repetition, facts stated in Affidavit of
   Facts for Case MARCH 9 2022 INCIDENT# TK-350-2022-000081 that pertain to
   case TK-350-2022-00070 are also included in reference and affiant asserts all
   facts into this case.

3. I, the Affiant Brenda, affirm that Affiant has not knowingly or willingly taken an
   oath of office as of the date of this document.

4. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT",
   Affiant WAS NOT ACTING IN A PUBLIC OFFICIAL CAPACITY.

5. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant WAS NOT OPERATING IN COMMERCE or COMMERCIAL CAPACITY.

6. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant WAS NOT OPERATING IN A FOR HIRE, PAID CAPACITY.

7. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant WAS IN THE PRIVATE DEJURE NOT THE PUBLIC DEFACTO

8. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant WAS NOT OPERATING A COMMERCIAL VEHICLE.

9. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant WAS TRAVELLING IN A PRIVATE NON-PASSENGER AUTOMOBILE 2019 Dodge Ram #1C6SRFxxxxxxx885 hereinafter "**Dodge**" [as defined in 49 USC 32901(17)]

10. I, the Affiant Brenda, affirm that the "Dodge" was acquired within the BRENDA LEE HELD PRIVATE TRUST on June 30th, 2021 documented in Private Trust Documents

11. I, the Affiant Brenda, affirm that the "Dodge" superior equitable title is within the BRENDA LEE HELD PRIVATE TRUST on June 30th, 2021 documented in Private Trust Documents

12. I, the Affiant Brenda, affirm that BRENDA LEE HELD PRIVATE TRUST IS A TRUST WITHIN BRENDA LEE HELD IRRV PRIVATE TRUST documented in Private Trust Documents

13. I, the Affiant Brenda, affirm that BRENDA LEE HELD IRRV PRIVATE TRUST IS A TRUST WITHIN BRENDA LEE EIDENSCHINK **IRRV** PRIVATE TRUST. documented in Private Trust Documents

14. I, the Affiant Brenda, affirm that BRENDA LEE HELD IRRV PRIVATE TRUST is registered with USDOT Number 3484616 See attached EXHIBIT B

15. I, the Affiant Brenda, affirm that BRENDA LEE HELD IRRV PRIVATE TRUST is registered with USDOT since 8/9/2020. See attached EXHIBIT B

16. I, the Affiant Brenda, affirm that BRENDA LEE HELD IRRV PRIVATE TRUST is registered with USDOT as Priv. Pass (non-business). See attached EXHIBIT B

17. I, the Affiant Brenda, affirm that USDOT Number 3484616 is displayed on the "Dodge" EXHIBIT I

18. I, the Affiant Brenda, affirm that "US DOT EXEMPT" is displayed on the "Dodge" stolen trust property See attached EXHIBIT H

19. I, the Affiant Brenda, affirm that "NOT FOR HIRE" is displayed on the "Dodge" stolen trust property EXHIBIT H

20. I, the Affiant Brenda, affirm that "FOR NON-COMMERCIAL USE ONLY" is displayed on the "Dodge" stolen trust property EXHIBIT H

21. I, the Affiant Brenda, affirm affiant does not own any equipment that can be used on the roadways or highways

22. I, the Affiant Brenda, affirm that Montana Driver's License# belongs 080519694115 to BRENDA LEE HELD

23. I, the Affiant Brenda, affirm that "Dodge" is Consumer Goods

24. I, the Affiant Brenda, affirm that "Dodge is used for private, household goods

25. I, the Affiant Brenda, affirm that "Dodge is used for pleasure only

26. **Prior to stop:**

   a. I, the Affiant Brenda, was traveling in the first automobile in the left lane on Towne street stopped at a traffic controlled red light

   b. I, the Affiant Brenda, signaled to turn left onto Merrill Avenue

   c. I, the Affiant Brenda, travelled through the intersection and safely turned into the right lane onto Merrill.

   d. I, the Affiant Brenda, never changed lanes while travelling until turning right onto Allen Road

   e. I, the Affiant Brenda observed GLENDIVE POLICE DEPARTMENT Officer threaten, oppress, harass and intimidate affiant in the free exercise of affiant rights observed a Glendive Police vehicle following and also turning right onto Allen Road.

   f. I, the Affiant Brenda, stopped at the stop sign at the Allen St and N Anderson Ave intersection.

   g. I, the Affiant Brenda, signaled to turn left onto N Anderson Ave

h.  I, the Affiant Brenda observed GLENDIVE POLICE DEPARTMENT Officer threaten, oppress, harass and intimidate affiant in the free exercise of affiant rights observed the Glendive Police vehicle also turning and following affiant

i.  I, the Affiant Brenda, signaled to turn right onto Hillcrest Ent Rd

j.  I, the Affiant Brenda observed GLENDIVE POLICE DEPARTMENT Officer threaten, oppress, harass and intimidate affiant in the free exercise of affiant rights observed Glendive Police vehicle also turning and following affiant

k.  I, the Affiant Brenda observed GLENDIVE POLICE DEPARTMENT Officer threaten, oppress, harass and intimidate affiant in the free exercise of affiant rights observed Glendive Police vehicle turn on overhead emergency lights shortly after completing the turn onto Hillcrest Ent Rd.

l.  I, the Affiant Brenda observed GLENDIVE POLICE DEPARTMENT Officer threaten, oppress, harass and intimidate affiant in the free exercise of affiant rights immediately pulled over to the side of the road.

**27. <u>Duration of stop:</u>**

a.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", OBSERVED NO APPARENT EMERGENCY NEAR THE AREA WHERE Affiant WAS PULLED OVER.

b.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", WAS NOT IN AN ACCIDENT

c.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", WAS NOT INVOLVED IN AN ACCIDENT.

d.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", DID NOT CAUSE AN ACCIDENT.

e.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", DID NOT WITNESS AN ACCIDENT.

f.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", DID NOT WITNESS AN EMERGENCY

g.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", WAS NOT IN A STATE OF EMERGENCY.

h.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", WAS NOT INVOLVED IN AN EMERGENCY.

i.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", DID NOT CAUSE ANY TYPE OF AN EMERGENCY SITUATION

j.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", DID NOT injure a man, woman, child or living soul

k.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", WAS NOT INVOLVED in any injury to a man, woman, or child or living soul

l.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", DID NOT CAUSE in any injury to a man, woman, child or living soul

m.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", DID NOT observe any injury to a man, woman, child or living soul

n.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", DID NOT observe any property damage

o.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", WAS NOT INVOLVED in any property damage

p.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", DID NOT CAUSE any property damage

q.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", DID NOT WITNESS any property damage

r.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", WAS NOT DRIVING A VEHICLE.

s.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", WAS NOT IN CONTROL OF A VEHICLE

t.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", DOES NOT OWN A VEHICLE

u.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", WAS NOT IN A VEHICLE

v.  I, the Affiant Brenda observed armed OFFICER FEAGLER threaten, oppress, and intimidate affiant in the free exercise of affiant rights by walking to the window on the right side of the private conveyance affiant was travelling in, and further,

w.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", under threat, oppression, and intimidation affiant handed armed OFFICER FEAGLER a passport, and further, EXHIBIT N

x.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant DID NOT PRODUCE A DRIVERS LICENSE TO ARMED OFFICER FEAGLER

y.  I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant DID NOT PRODUCE INSURANCE DOCUMENTS TO ARMED OFFICER FEAGLER

z.  I, the Affiant Brenda, affirm that affiant accepts armed OFFICER FEAGLER oath and bind him to it, and further,

aa. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant DID PRODUCE AUTOMOBILE BILL OF SALE INFORMATION TO ARMED OFFICER FEAGLER EXHIBIT A

bb. I, the Affiant Brenda, affirm that under threat, oppression, and intimidation said to armed OFFICER FEAGLER while traveling in affiant personal capacity in a private trust automobile and not for commercial or for hire is a protected right under the constitution to travel freely and unencumbered.

cc. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant IMMEDIATELY TOLD ARMED OFFICER FEAGLER Affiant is TRAVELING IN THE PRIVATE CAPACITY AND NOT FOR COMMERCIAL OR FOR HIRE

dd. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", REPEATEDLY TOLD ARMED OFFICER FEAGLER Affiant is TRAVELING IN THE PRIVATE CAPACITY AND NOT FOR COMMERCIAL OR FOR HIRE.

ee. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", OBSERVED ARMED OFFICER FEAGLER STATE THAT IN THE STATE OF MONTANA A DRIVERS LICENSE, LICENSE PLATES AND REGISTRATION IS REQUIRED BY LAW.

ff. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", affiant observed ARMED OFFICER FEAGLER try to oppress and intimidate affiant with the use of his uniform, official capacity, emergency lights on police vehicle and alleged authority.

gg. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", ASKED ARMED OFFICER FEAGLER TO CALL HIS SUPERVISOR.

hh. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", OBSERVED ARMED OFFICER FEAGLER REFUSE TO CALL HIS SUPERVISOR.

ii. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", OBSERVED ARMED OFFICER FEAGLER STATE HE WILL BE RIGHT BACK.

jj. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", OBSERVED ARMED OFFICER FEAGLER ENTER HIS POLICE VEHICLE.

kk. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant UNDERSTOOD FROM ARMED OFFICER FEAGLER Affiant WAS NOT FREE TO LEAVE.

ll. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant UNDERSTOOD FROM ARMED OFFICER FEAGLER Affiant WAS UNDER CUSTODIAL ARREST.

mm.     I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant WAS DENIED FREE EXERCISE OF Affiant RIGHTS.

nn. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant believed Affiant could not leave and WAS DENIED FREEDOM OF MOVEMENT.

oo. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant BELIEVED Affiant WAS UNDER THREATS BY ARMED OFFICER FEAGLER.

pp. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant BELIEVED Affiant WAS UNDER OPPRESSION BY ARMED OFFICER FEAGLER.

qq. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant BELIEVED Affiant WAS UNABLE TO LEAVE FREELY WITHOUT HARM OR DURESS BY ARMED OFFICER FEAGLER.

rr. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant BELIEVED ARMED OFFICER FEAGLER WAS INTERROGATING Affiant.

ss. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant BELIEVED ARMED OFFICER FEAGLER WAS FORCING Affiant TO ANSWER QUESTIONS

tt. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant WAS UNDER DURESS OF BEING ARRESTED

uu. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", Affiant BELIEVED ARMED OFFICER FEAGLER IS/WAS USING INTIMIDATION METHODS TO SCARE AND INTIMIDATE Affiant.

vv. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", OBSERVED ARMED OFFICER FEAGLER DID NOT READ THE MIRANDA RIGHTS TO Affiant AT ANY TIME THROUGHOUT THE INCIDENT.

ww.      I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", ARMED OFFICER FEAGLER REMOVED PRIVATE TRUST PROPERTY OFF OF THE BACK OF THE TRUST AUTOMOBILE WITHOUT PERMISSION.

xx. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", under threat, oppression, and intimidation INFORMED ARMED OFFICER FEAGLER HE DID NOT HAVE PERMISSION TO REMOVED PRIVATE TRUST PROPERTY OFF OF THE TRUST AUTOMOBILE WITHOUT PERMISSION.

yy. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", INFORMED ARMED OFFICER FEAGLER HE WILL BE HELD RESPONSIBLE FOR STEALING TRUST PROPERTY.

zz. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", INFORMED ARMED OFFICER FEAGLER HE IS NOW A TRUSTEE

aaa. I, the Affiant Brenda, observed that at the time of the "FEBRUARY INCIDENT", ARMED OFFICER FEAGLER BY FORCE, THREW CITATIONS #55265, 55266, 55267, 55268 AND PASSPORT DOCUMENT

THROUGH THE AUTOMOBILE WINDOW WHICH FELL INTO Affiant's LAP AND FLOOR OF THE AUTOMOBILE

bbb. I, the Affiant Brenda, affirm that Affiant did not accept the citations

ccc. I, the Affiant Brenda, affirm that Affiant did not consent to the citations

ddd. I, the Affiant Brenda, observed that at the time of the "FEBRUARY INCIDENT", ARMED OFFICER FEAGLER WALKED AWAY FROM THE WINDOW AND GOT INTO HIS POLICE VEHICLE

eee. I, the Affiant Brenda, believed that at the time of the "FEBRUARY INCIDENT", ARMED OFFICER FEAGLER WAS RUDE

fff. I, the Affiant Brenda, believed that at the time of the "FEBRUARY INCIDENT", ARMED OFFICER FEAGLER WAS UNPROFESSIONAL

ggg. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", WITNESSED ARMED OFFICER FEAGLER LEFT HIS OVERHEAD EMERGENCY LIGHTS ON HIS POLICE VEHICLE THE ENTIRE TIME OF THE "FEBRUARY INCIDENT"

hhh. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", WITNESSED OFFICER FEAGLER LEFT HIS OVERHEAD EMERGENCY LIGHTS ON HIS POLICE VEHICLE AS Affiant LEFT THE LOCATION

28. I, the Affiant Brenda, observed the duration of the FEBRUARY INCIDENT was approximately 55 min.

29. I, the Affiant Brenda, observed on all four citations ARMED OFFICER FEAGLER entered private medical information on the ticket affiant did not give to FEAGLER See attached EXHIBIT J

30. I, the Affiant Brenda, observed on all four citations ARMED OFFICER FEAGLER entered private medical information on the ticket without affiant knowledge See attached EXHIBIT J

31. I, the Affiant Brenda, observed on all four citations ARMED OFFICER FEAGLER entered private medical information on the ticket without affiant permission See attached EXHIBIT J

32. I, the Affiant Brenda, observed on all four citations ARMED OFFICER FEAGLER entered a D/L# 0805019694115 that was not given to FEAGLER by affiant See attached EXHIBIT J

33. I, the Affiant Brenda, observed on all four citations ARMED OFFICER FEAGLER entered a D/L# 0805019694115 without affiant knowledge See attached EXHIBIT J

34. I, the Affiant Brenda, observed on all four citations ARMED OFFICER FEAGLER entered a D/L# 0805019694115 without affiant permission See attached EXHIBIT J

35. I, the Affiant Brenda, observed on all four citations ARMED OFFICER FEAGLER entered a D/L# 0805019694115 falsifying state documents with incorrect information on all four citations

36. I, the Affiant Brenda, observed on citations #55265- 55268 issued by ARMED OFFICER FEAGLER who entered a D/L# 0805019694115 on each citation

37. I, the Affiant Brenda, observed on citations #55265- 55268 are signed under sworn statement "I hereby swear that all information contained on this document is true and correct to the best of my knowledge" EXHIBIT J.

38. I, the Affiant Brenda, observed on citations #55265- 55268 are signed under sworn statement by ARMED OFFICER FEAGLER

39. I, the Affiant Brenda, observed on citations #55265- 55268 ARMED OFFICER FEAGLER signing all citations with incorrect information that was not authorized or supplied or verified by affiant.

40. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", BRENDA LEE HELD's driver's license is valid.  See attached EXHIBIT C

41. I, the Affiant Brenda, affirm that affiant read FEAGLER traffic stop report received by City of Glendive Attorney Scott Herring verifying BRENDA LEE HELD has a valid driver's license.  See attached EXHIBIT D

42. I, the Affiant Brenda, affirm that at the time of the "FEBRUARY INCIDENT", the trust automobile has valid insurance.  See attached EXHIBIT E

43. I, the Affiant Brenda, affirm that affiant read FEAGLER traffic stop report received by Attorney Scott Herring verifying the trust automobile has valid insurance  See attached EXHIBIT D

44. I, the Affiant Brenda, affirm that FEAGLER's traffic stop report of the "FEBRUARY INCIDENT" received by City of Glendive Attorney Scott Herring OFFICER FEAGLER did not state affiant injured any man, woman, child or living soul See attached EXHIBIT D

45. I, the Affiant Brenda, affirm that FEAGLER's traffic stop report of the "FEBRUARY INCIDENT" received by City of Glendive Attorney Scott Herring OFFICER

FEAGLER did not state any observation of any injured man, woman, child or living soul See attached EXHIBIT D

46. I, the Affiant Brenda, affirm that FEAGLER's traffic stop report of the "FEBRUARY INCIDENT" received by City of Glendive Attorney Scott Herring did not state affiant damaged any property See attached EXHIBIT D

47. I, the Affiant Brenda, affirm that FEAGLER's traffic stop report of the "FEBRUARY INCIDENT" received by City of Glendive Attorney Scott Herring OFFICER FEAGLER did not state any observation of any damage to any property See attached EXHIBIT D

48. I, the Affiant Brenda, affirm that affiant read FEAGLER traffic stop notes verifying automobile has valid insurance.  See attached EXHIBIT E

49. I, the Affiant Brenda affirm that Bureau of Land Management and Montana Cadastral hereinafter "BLM" website does not show location of TOWNE and MERRILL AVE as ceded property to STATE OF MONTANA or FEDERAL GOVERNMENT.  See attached EXHIBIT G

50. I, the Affiant Brenda, affirm that BLM website does not show traveling route of affiant from location TOWNE and MERRILL AVE to location of "FEBRUARY INCIDENT" as ceded property to STATE OF MONTANA or FEDERAL GOVERNMENT.  See attached EXHIBIT G

51. I, the Affiant Brenda, affirm that BLM website does not show location of "FEBRUARY INCIDENT" as ceded property to STATE OF MONTANA or FEDERAL GOVERNMENT.  See attached EXHIBIT G

52. I, the Affiant Brenda, affirm that stolen trust property has not been returned as of the date of this affidavit See attached EXHIBIT D

53. I, the Affiant Brenda, observed citation #55265 issued by OFFICER FEAGLER states "IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE: "Altered/Fictitious plates to wit susp operated a MV bearing fictitious plates on the public roadway" 61-3-301

54. I, the Affiant Brenda, observed citation #55266 issued by OFFICER FEAGLER states "IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE: "operating a vehicle which has not been properly registered to wit susp operated an unregistered vehicle on a public roadway" 61-3-301

55. I, the Affiant Brenda, observed citation #55267 issued by OFFICER FEAGLER states "IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE: "fail to have DL in

immediate possession to wit susp refused to exhibit a valid DL upon demand upon being contacted for a traffic violation" 61-5-116

56. I, the Affiant Brenda, observed citation #55268 issued by OFFICER FEAGLER states "IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE: "unsafe lane change to wit susp improperly turned into the #2 lane when turning NB onto Merrill Ave from W Towne St" 61-8-328

57. I, the Affiant Brenda, affirm there was not unsafe lane change.  Please reference # 26 above.

58. I, the Affiant Brenda, affirm that I endorsed each citation on the face in red ink "Your offer to contract is NOT accepted while traveling in my private automobile.  I provided a passport not a driver's license.  Title 18 USC 241 & 242 as a conspiracy to deprive me of my rights under the color of law.  by: Brenda-Lee: Held, Authorized Rep Brenda –Lee: Held UCC 1-308 2/28/22" EXHIBIT K

59. I, the Affiant Brenda, affirm that I inscribed each citation on the back in red ink "WITHOUT RECOURSE" EXHIBIT K

60. I, the Affiant Brenda, affirm that all citations were mailed back to City of Glendive Court on March 3, 2022 USPS certified mail # 7020 3160 0000 6934 8384 EXHIBIT K

61. I, the Affiant Brenda, affirm that I received a Summons for Case No:  TK-350-2022-0000070 for the above listed citations on March 10, 2022 EXHIBIT K

62. I, the Affiant Brenda, affirm that I endorsed each citation on the face in red ink "Refused for cause timely without dishonor and without recourse to me 72 hr right to rescission Your offer to contract is NOT accepted while traveling in the private   I provided a passport not a driver's license.  18 USC 241 & 242 I am a united States of America National Article 1 Section 8 Clause 17 Article 6 paragraph 1 Not a United States Citizen, person or resident.  Vacate for lack of jurisdiction.  Return to sender refused for cause consent not given – denied UCC1-308 MCA 30-1-207 UCC 3-501 MC 30-3-504" EXHIBIT M

63. I, the Affiant Brenda, affirm that endorsed summons for case# TK-350-2022-0000070 was mailed back to City of Glendive Traffic Court on March 11, 2022 USPS certified mail # 7021 0950 0000 8244 4776 EXHIBIT M

Affiant further sayeth not.

If affidavit is not rebutted point by point within 10 DAYS of receipt by lawful evidence to the contrary, this affidavit is at law evidence in court.  Failure to present evidence to the

contrary of the Affiants testimony, will be evidence that all parties stipulate to the facts herein as true, correct and complete.

Notice, it is a Fact, that, the affiant states under penalty of perjury without the United States in accordance with 28 U.S. Code § 1746 that all statements of fact herein are truth in commerce.

I, Brenda-Lee:  Held, affiant and consumer certify under penalty of perjury under the laws of The United States of America in the nature of [ 28 U.S.C. 1746 ( 1 ) ], that I have read the foregoing request for information and know the contents thereof, and that the information listed above is true, correct and complete to the best of my knowledge.

Submitted, on this 18th day of June 2022.

Affiant,

brenda-lee:  house of held, beneficiary
All Right Reserved   Without Recourse

SUB SUBSCRIBED TO AND SWORN before me this 18th day of JUNE, A.D. 2020, a Notary, that **Brenda-Lee: Held**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Montana that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____  Seal;
Notary Public

ANDREA NICOLE FOX
NOTARY PUBLIC for the
State of Montana
Residing at Helena, MT
My Commission Expires
December 20, 2023

EXHIBIT C

brenda-lee:  house of held
c\o 130 glenwood avenue
glendive montana republic [RFD 59330]


brenda-lee:  house of held , Sui Juris impropra personam

IN THE CITY COURT, STATE OF MONTANA
IN AND FOR THE CITY OF GLENDIVE

CITY OF GLENDIVE  ,                         Case No.: TK-350-2022-0000081
          Plaintiff,

    vs.                                       **AFFIDAVIT OF FACTS**
                                   **MARCH 9 2022 INCIDENT**

BRENDA LEE HELD,
          <sic> <misnomer>
          Alleged & Aggrieved            Date: 18ᵗʰ day of June 2022
          Defendant

                             Traffic Court

The Common Law Citizen Brenda of the family name Held hereinafter "Affiant" hereby Certifies, by Rights Secured under provisions of the Organic Constitution, Constitution of the United States of America, the Constitution of the several states, Common Law, Nature and Laws of Natures GOD, that these Rights are retained in FEE SIMPLE ABSOLUTE, and held and protected with special regard to Rights designated and/or set forth as follows:

1. I, the Affiant Brenda, affirm that on March 9, 2022, at approximately 5:20:00 PM, hereinafter "MARCH INCIDENT", was stopped by City of Glendive Police Officer FEAGLER hereinafter "FEAGLER".

2. I, the Affiant Brenda, affirm, in interest of repetition, facts stated in Affidavit of Facts for Case FEBRUARY 28 2022 INCIDENT # TK-350-2022-000070 that pertain to case TK-350-2022-00081 are also included in reference and affiant asserts all facts into this case.

3. **Prior to stop:**

   a. I, the Affiant Brenda, affirm affiant was travelling down Merrill Avenue in the left [inside lane] of the two lanes heading toward Towne Street and further,

b.  I, the Affiant Brenda observed GLENDIVE POLICE DEPARTMENT vehicle parked on the side of the road by the high school front parking lot and further,

c.  I, the Affiant Brenda observed GLENDIVE POLICE DEPARTMENT vehicle pull out into traffic when affiant passed, and further,

d.  I, the Affiant Brenda observed GLENDIVE POLICE DEPARTMENT Officer threaten, oppress, harass affiant and intimidate affiant in the free exercise of affiant rights when the officer aggressively drove the police vehicle across two lanes of traffic right behind the "Dodge", and further,

e.  I, the Affiant Brenda, affirm affiant turned on the "Dodge" blinker, signaled and changed lanes safely to the right lane [outside] of the two lanes and further,

f.  I, the Affiant Brenda observed GLENDIVE POLICE DEPARTMENT Officer threaten, oppress, harass and intimidate affiant in the free exercise of affiant rights when officer followed affiant with officers black and white police vehicle that has a paint scheme that is designed to be threatening, oppressing, and intimidating; and further,

g.  I, the Affiant Brenda, affirm affiant turned on the "Dodge" blinker, signaled to turned right safely onto West Slocum Street, and further,

h.  I, the Affiant Brenda observed GLENDIVE POLICE DEPARTMENT Officer threaten, oppress, harass and intimidate affiant in the free exercise of affiant rights when affiant turned right onto West Slocum Street and officer followed, and further,

i.  I, the Affiant Brenda, affirm affiant stopped at the stop sign on the corner of West Slocum Street and North Kendrick Avenue and further,

j.  I, the Affiant Brenda, affirm affiant turned on the automobiles blinker, signaled to turn left safely

k.  I, the Affiant Brenda, affirm affiant turned left onto North Kendrick Avenue, and further,

l.  I, the Affiant Brenda observed GLENDIVE POLICE DEPARTMENT Officer threaten, oppress, harass and intimidate affiant in the free exercise of affiant rights when affiant turned left onto North Kendrick Avenue and officer continued to follow, and further,

m. I, the Affiant Brenda observed Officer threaten, oppress, harass and intimidate affiant in the free exercise of affiant rights when affiant traveled approximately four blocks to the corner of North Kendrick Avenue and Dodge Street and officer continued to follow, and further, EXHIBIT G

n. I, the Affiant Brenda observed Officer threaten, oppress, and intimidate affiant in the free exercise of affiant rights when Officer turned on GLENDIVE POLICE DEPARTMENT VEHICLE sirens and emergency lights, and further,

o. I, the Affiant Brenda observed armed OFFICER FEAGLER HEREIN "OFFICER FEAGLER" conspire together to threaten, oppress, harass, and intimidate affiant in the **free exercise of affiant rights** under color of their codes by assaulting, and harassing affiant after traveling at least six blocks and making two turns and then stopping affiant for no apparent reason, and further,

p. I, the Affiant Brenda observed armed OFFICER FEAGLER conspire together to threaten, oppress, harass, intimidate **and violate affiant rights (trespassed** upon affiant property) under color of their codes by assaulting, and harassing affiant after traveling at least six blocks and making two turns and then stopping me for no apparent reason, and further,

q. I, the Affiant Brenda, affirm affiant immediately pulled over to the side of the road on the corner of North Kendrick Avenue and Dodge Street, EXHIBIT G

4. **Duration of stop:**

a. I, the Affiant Brenda observed armed OFFICER FEAGLER threaten, oppress, and intimidate affiant in the free exercise of affiant rights by walking to the window on the right side of the private conveyance affiant was travelling in, and further,

b. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threat, oppression, and intimidation affiant handed armed OFFICER FEAGLER a passport, and further, EXHIBIT N

c. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant DID NOT PRODUCE A DRIVERS LICENSE TO ARMED OFFICER FEAGLER

d. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant DID NOT PRODUCE INSURANCE DOCUMENTS TO ARMED OFFICER FEAGLER

e. I, the Affiant Brenda, affirm that affiant accepts armed OFFICER FEAGLER oath and bind him to it, and further,

f. I, the Affiant Brenda, affirm that under threat, oppression, and intimidation said to armed OFFICER FEAGLER while traveling in affiant personal capacity in a private trust automobile and not for commercial or for hire is a protected right under the constitution to travel freely and unencumbered.

g. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant IMMEDIATELY TOLD ARMED OFFICER FEAGLER Affiant is TRAVELING IN THE PRIVATE CAPACITY AND NOT FOR COMMERCIAL OR FOR HIRE

h. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", REPEATEDLY TOLD ARMED OFFICER FEAGLER Affiant is TRAVELING IN THE PRIVATE CAPACITY AND NOT FOR COMMERCIAL OR FOR HIRE.

i. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", OBSERVED ARMED OFFICER FEAGLER STATE THAT IN THE STATE OF MONTANA A DRIVERS LICENSE, LICENSE PLATES AND REGISTRATION IS REQUIRED BY LAW.

j. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", affiant observed ARMED OFFICER FEAGLER try to oppress and intimidate affiant with the use of his uniform, official capacity, emergency lights on police vehicle and alleged authority.

k. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", ASKED ARMED OFFICER FEAGLER TO CALL HIS SUPERVISOR.

l. I, the Affiant Brenda observed armed OFFICER FEAGLER threaten, oppress, and intimidate affiant guest who was traveling with affiant in the free exercise of his rights by demanding identification from affiant guest, and further,

m. I, the Affiant Brenda observed affiant guest who was traveling with affiant state guest gave armed OFFICER FEAGLER guest ID because guest didn't want to be arrested, and further,

n. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threat, oppression, and intimidation affiant requested to speak to a supervisor, and further,

o. I, the Affiant Brenda under extreme duress, extortion, and coercion observed armed Unknown named SARGENT on duty hereinafter "SARGENT" arrive in a GLENDIVE POLICE DEPARTMENT VEHICLE with emergency lights on, and further,

p. I, the Affiant Brenda under extreme duress, extortion, and coercion observed armed SARGENT pull behind Armed Officer Feagler vehicle

q. I, the Affiant Brenda under extreme duress, extortion, and coercion observed both GLENDIVE POLICE DEPARTMENT VEHICLE with emergency lights on, and further,

r. I, the Affiant Brenda under threat, oppression, and intimidation observed armed OFFICER FEAGLER bow slightly to affiant on the road and state "your wish is my command" in a sarcastic tone, and further,

s. I, the Affiant Brenda under threat, oppression, and intimidation observed armed OFFICER FEAGLER further humiliating and mocking affiant, and further,

t. I, the Affiant Brenda under threat, oppression, and intimidation observed armed OFFICER FEAGLER and SARGENT on duty talking behind the automobile while several other automobiles slowly driving by and further humiliating affiant on the side of the road, and further,

u. I, the Affiant Brenda under extreme duress, extortion, and coercion stated to armed OFFICER FEAGLER, and armed SARGENT on duty affiant do not consent to contract with them, and further,

v. I, the Affiant Brenda under extreme duress, extortion, and coercion witnessed a third officer (unknown name) arrive with his emergency lights on

w. I, the Affiant Brenda under extreme duress, extortion, and coercion witnessed a third officer (unknown name) park his police car behind the other police vehicles "Dodge", and further,

x.  I, the Affiant Brenda under extreme duress, extortion, and coercion witnessed a fourth officer (unknown name) arrive with his emergency lights on

y.  I, the Affiant Brenda under extreme duress, extortion, and coercion witnessed a fourth officer (unknown name) park his police vehicle across the road from the "Dodge", and further,

z.  I, the Affiant Brenda under extreme duress, extortion, and coercion witnessed armed SARGENT on duty oppress, threaten and intimidate affiant in the free exercise of affiant rights, by telling affiant that in the STATE OF MONTANA affiant had to have a driver's license, registration and license plates on affiant motor vehicle, and further,

aa. I, the Affiant Brenda Under threat, oppression, and intimidation told armed SARGENT on duty affiant was not driving in a motor vehicle and was traveling, in the private, in a not for hire noncommercial capacity, and further,

bb. I, the Affiant Brenda witnessed armed SARGENT on duty oppress, threaten and intimidate affiant in the free exercise of affiant rights, by telling affiant that armed OFFICER FEAGLER is going to seize private trust plates, and further,

cc. I, the Affiant Brenda under threat, oppression, and intimidation told Officer FEAGLER and SARGENT no one has permission to remove trust property

dd. I, the Affiant Brenda under threat, oppression, and intimidation told Officer FEAGLER and SARGENT if trust property is removed both officers are responsible for theft of foreign trust property, and further,

ee. I, the Affiant Brenda under threat, oppression, and intimidation witnessed armed OFFICER FEAGLER seize private trust plates behind and in front of the private foreign trust property "Dodge", and further,

ff.  I, the Affiant Brenda under threat, oppression, and intimidation told armed OFFICER FEAGLER and armed SARGENT on duty that removing the property without permission is theft of trust property and they are the fiduciary and personally liable, and further,

gg. I, the Affiant Brenda under threat, oppression, and intimidation corrected all officers' multiple times stating the plates are not fictitious, and further,

hh. I, the Affiant Brenda under threat, oppression, and intimidation corrected all officers' multiple times stating affiant was not commercially driving

ii. I, the Affiant Brenda under threat, oppression, and intimidation corrected all officers' multiple times stating affiant is traveling in the private

jj. I, the Affiant Brenda under threat, oppression, and intimidation corrected all officers' multiple times stating affiant was not arguing

kk. I, the Affiant Brenda under threat, oppression, and intimidation was correcting officers use of vocabulary, and further,

ll. I, the Affiant Brenda under threat, oppression, and intimidation affiant witnessed armed SARGENT  on duty confirm with a nod of his head that he heard what affiant stated, and he said the officer is taking the fictitious plates and armed OFFICER FEAGLER is writing up citations and that affiant will be receiving citations, and further,

mm.      I, the Affiant Brenda under threat, oppression, and intimidation affiant witnessed armed OFFICER FEAGLER and armed SARGENT on duty stated that affiant/Beneficiary is not allowed to "drive a motor vehicle without registration, plates…." etc.

nn. I, the Affiant Brenda relies on the Organic Constitution, Constitution of the United States of America, the Constitution of the several states, Common Law, Nature and Laws of Natures GOD, Federal and District case laws and previous finding of superior court judges for basic understanding of private rights of We the People and private civilians

oo. I, the Affiant Brenda under threat, oppression, and intimidation affiant /Beneficiary corrected all the officers multiple times stating beneficiary was traveling in affiant private capacity in a private automobile and not for hire and not for commercial purposes, and further,

pp. I, the Affiant Brenda under threat, oppression, and intimidation witnessed armed SARGENT on duty oppress, threaten me, and intimidate affiant in

the free exercise of affiant rights by telling affiant that affiant was unable to use affiant private trust property

qq. I, the Affiant Brenda under threat, oppression, and intimidation witnessed armed SARGENT on duty oppress, threaten me, and intimidate affiant in the free exercise of affiant rights by telling affiant the "Dodge" must be parked and cannot move denying affiant rights to travel in the private via freedom of movement, and further,

rr.  I, the Affiant Brenda witnessed armed SARGENT on duty oppress, threaten, and intimidate affiant in the free exercise of affiant rights by telling affiant that if Beneficiary continues to drive on the roads he will tow affiant motor vehicle, and further,

ss. I, the Affiant Brenda under threat, oppression, and intimidation affiant asked armed SARGENT on duty if he was going to remove affiant by armed force from affiant private automobile while traveling in affiant private capacity and steal trust property without permission, and further,

tt.  I, the Affiant Brenda witnessed armed SARGENT on duty oppress, threaten, and intimidate affiant in the free exercise of affiant rights by telling affiant that he was going to tow affiant automobile, and further,

uu. I, the Affiant Brenda under threat, oppression, and intimidation affirm that no officers during the time of the MARCH INCIDENT asked affiant for a drivers license, and further,

vv. I, the Affiant Brenda under threat, oppression, and intimidation affirm that no officers during the time of the MARCH INCIDENT asked affiant for registration, and further,

ww.      I, the Affiant Brenda under threat, oppression, and intimidation affirm that no officers during the time of the MARCH INCIDENT asked affiant for proof of insurance, and further,

xx. I, the Affiant Brenda affirm the total time of the MARCH INCIDENT was approximately 90 min.

5.  I, the Affiant Brenda the beneficiary believe GLENDIVE POLICE DEPARTMENT AND CITY OF GLENDIVE POLICE Officers will tow Beneficiary's "Dodge" while Beneficiary is inside

6.  I, the Affiant Brenda the beneficiary believe GLENDIVE POLICE DEPARTMENT AND CITY OF GLENDIVE POLICE Officers will be using force as affiant do not consent

7.  I, the Affiant Brenda the beneficiary believes GLENDIVE POLICE DEPARTMENT AND CITY OF GLENDIVE POLICE Officers removing the Beneficiary by armed force the GLENDIVE POLICE DEPARTMENT AND CITY OF GLENDIVE POLICE Officers will steal trust property without permission, and further,

8.  I, the Affiant Brenda under extreme duress, extortion, and coercion, have not traveled in affiant private "Dodge" because of threats, oppression and intimidation methods from armed SARGENT on duty, armed Officer Feagler

9.  I, the Affiant Brenda affirms that GLENDIVE POLICE DEPARTMENT AND CITY OF GLENDIVE POLICE Officers has cause physical and mental injury, undo stress, worry and financial harm to the beneficiary and family members, and further,

10. I, the Affiant Brenda under threats, oppression and intimidation methods, witnessed all of the armed officers mentioned above arrest affiant on the side of the road for no lawful reason, and further,

11. I, the Affiant Brenda affirm that at the time of the "MARCH INCIDENT", under extreme duress, extortion, and coercion witnessed that none of the above-mentioned armed officers read the Miranda warning while beneficiary was under arrest on the side of the road

12. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", OBSERVED ARMED OFFICER FEAGLER ENTER HIS POLICE VEHICLE.

13. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant UNDERSTOOD FROM ARMED OFFICER FEAGLER Affiant WAS NOT FREE TO LEAVE.

14. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant UNDERSTOOD FROM ARMED OFFICER FEAGLER Affiant WAS UNDER CUSTODIAL ARREST.

15. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threats, oppression and intimidation methods, believed Affiant WAS DENIED FREE EXERCISE OF Affiant RIGHTS.

16. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threats, oppression and intimidation methods, witnessed armed officers were on both sides of the "Dodge" as well as in front and behind the "Dodge" surrounding the "Dodge at different times throughout the interrogation

17. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threats, oppression and intimidation affiant witnessed the armed officers DID NOT inform affiant was free to go

18. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threats, oppression and intimidation affiant witnessed the armed officers DID NOT inform affiant that answering question were voluntary

19. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threats, oppression and intimidation affiant believed she was forced to answer questions by officers

20. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threats, oppression and intimidation methods standing by the window the entire time of the incident

21. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threats, oppression and intimidation affiant believes she was not free to leave

22. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threats, oppression and intimidation believes she was detained against her will

23. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threats, oppression and intimidation methods of many officers on the road and surrounding the vehicle caused undue stress and harm to the beneficiary, and further

24. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant believed Affiant could not leave and WAS DENIED FREEDOM OF MOVEMENT.

25. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant BELIEVED Affiant WAS UNDER THREATS BY ARMED OFFICER FEAGLER.

26. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant BELIEVED Affiant WAS UNDER OPPRESSION BY ARMED OFFICER FEAGLER AND THE OTHER ARMED OFFICERS.

27. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant BELIEVED Affiant WAS UNABLE TO LEAVE FREELY WITHOUT HARM OR DURESS BY ARMED OFFICER FEAGLER.

28. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant BELIEVED ARMED OFFICER FEAGLER and SARGENT WAS INTERROGATING Affiant.

29. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant BELIEVED ARMED OFFICER FEAGLER and SARGENT WAS FORCING Affiant TO ANSWER QUESTIONS

30. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant WAS UNDER EXTREME DURESS OF BEING ARRESTED

31. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", Affiant BELIEVED ARMED OFFICER FEAGLER AND ALL OTHER Officers IS/WAS USING INTIMIDATION METHODS TO SCARE AND INTIMIDATE Affiant.

32. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", OBSERVED ARMED OFFICER FEAGLER AND ALL OTHER Officers DID NOT READ THE MIRANDA RIGHTS TO Affiant AT ANY TIME THROUGHOUT THE INCIDENT.

33. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", ARMED OFFICER FEAGLER REMOVED PRIVATE TRUST PROPERTY OFF OF THE BACK OF THE TRUST AUTOMOBILE WITHOUT PERMISSION.

34. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", INFORMED ARMED OFFICER FEAGLER and ARMED SARGENT HE DID NOT

HAVE PERMISSION TO REMOVED PRIVATE TRUST PROPERTY OFF OF THE TRUST AUTOMOBILE WITHOUT PERMISSION.

35. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", INFORMED ARMED OFFICER FEAGLER HE WILL BE HELD RESPONSIBLE FOR STEALING TRUST PROPERTY.

36. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", INFORMED ARMED OFFICER FEAGLER HE IS NOW A TRUSTEE

37. I, the Affiant Brenda, affirm that Affiant did not accept the citations

38. I, the Affiant Brenda, affirm that Affiant did not consent to the citations

39. I, the Affiant Brenda, observed that at the time of the "MARCH INCIDENT", ARMED OFFICER FEAGLER WALKED AWAY FROM THE WINDOW AND GOT INTO HIS POLICE VEHICLE

40. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", WITNESSED ARMED OFFICER FEAGLER AND ALL OTHER OFFICERS LEFT HIS EMERGENCY LIGHTS ON HIS POLICE VEHICLE THE ENTIRE TIME OF THE "MARCH INCIDENT"

41. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", WITNESSED OFFICER FEAGLER LEFT HIS OVERHEAD EMERGENCY LIGHTS ON HIS POLICE VEHICLE AS Affiant LEFT THE LOCATION

42. I, the Affiant Brenda witnessed armed OFFICER FEAGLER AND ALL OTHER OFFICERS threaten, oppress, and intimidate affiant in the free exercise of affiant rights by wearing his military uniform that is designed to be oppressing, threatening and intimidating, and by assaulting affiant with his martial law jurisdiction

43. I, the Affiant Brenda witnessed armed OFFICER FEAGLER, ALL OTHER OFFICERS ON ROAD and other unknown individuals over the radio, conspire together to threaten, oppress, harass and intimidate affiant in the free exercise of affiant rights and violate affiant rights (trespassed upon affiant property) under color of their codes by assaulting, harassing and denying affiant due process and execute debt instruments called capias', that are not warrants, but in "good faith" which were three of the same capias he forced upon affiant seven days ago during the FEBRUARY INCIDENT case # 350-2022-000070, and further,

44. I, the Affiant Brenda, observed on all four citations ARMED OFFICER FEAGLER entered a D/L# 0805019694115 falsifying state documents with incorrect information on all four citations

45. I, the Affiant Brenda, observed on citations #55301- 55304 issued by ARMED OFFICER FEAGLER who entered a D/L# 0805019694115 on each citation

46. I, the Affiant Brenda, observed on citations #55301- 55304 are signed under sworn statement "I hereby swear that all information contained on this document is true and correct to the best of my knowledge" EXHIBIT J.

47. I, the Affiant Brenda, observed on citations #55301- 55304 are signed under sworn statement by ARMED OFFICER FEAGLER

48. I, the Affiant Brenda, observed on citations #55301- 55304 ARMED OFFICER FEAGLER signing all citations with incorrect information that was not authorized or supplied or verified by affiant.

49. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", BRENDA LEE HELD's driver's license is valid.  See attached EXHIBIT C

50. I, the Affiant Brenda, affirm that affiant read OFFICER FEAGLER traffic stop report for FEBRUARY INCIDENT case #350-2022-000070 received by City of Glendive Attorney Scott Herring verifying BRENDA LEE HELD has a valid driver's license. See attached EXHIBIT D

51. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", the trust automobile has valid insurance.  See attached EXHIBIT E

52. I, the Affiant Brenda, affirm that affiant read OFFICER FEAGLER traffic stop report for FEBRUARY INCIDENT case #350-2022-000070 received by Attorney Scott Herring verifying the trust automobile has valid insurance See attached EXHIBIT D

53. I, the Affiant Brenda, affirm that OFFICER FEAGLER traffic stop report of the "MARCH INCIDENT" received by City of Glendive Attorney Scott Herring OFFICER FEAGLER did not state affiant injured any man, woman, child or living soul See attached EXHIBIT D

54. I, the Affiant Brenda, affirm that OFFICER FEAGLER's traffic stop report of the "MARCH INCIDENT" received by City of Glendive Attorney Scott Herring OFFICER FEAGLER did not state any observation of any injured man, woman, child or living soul See attached EXHIBIT D

55. I, the Affiant Brenda, affirm that OFFICER FEAGLER's traffic stop report of the "MARCH INCIDENT" received by City of Glendive Attorney Scott Herring did not state affiant damaged any property See attached EXHIBIT D

56. I, the Affiant Brenda, affirm that OFFICER FEAGLER's traffic stop report of the "MARCH INCIDENT" received by City of Glendive Attorney Scott Herring OFFICER FEAGLER did not state any observation of any damage to any property See attached EXHIBIT D

57. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threats, oppression and intimidation believes all officers already placed affiant on trial and found affiant guilty

58. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threats, oppression and intimidation believes she was denied due process throughout the entire arrest and Incident by all officers

59. I, the Affiant Brenda, affirm that at the time of the "MARCH INCIDENT", under threats, oppression and intimidation stated affiant does not consent to contract

60. I, the Affiant Brenda, affirm that Bureau of Land Management and Montana Cadastral online search hereinafter "BLM" website does not show location of 700 BLK N MERRILL AVE as ceded property to STATE OF MONTANA or FEDERAL GOVERNMENT.  See attached EXHIBIT G

61. I, the Affiant Brenda, affirm that BLM website does not show traveling route of affiant from location 700 BLK N MERRILL AVE to location of  "MARCH INCIDENT" as ceded property to STATE OF MONTANA or FEDERAL GOVERNMENT.  See attached EXHIBIT G

62. I, the Affiant Brenda, affirm that BLM website does not show location of "MARCH INCIDENT" as ceded property to STATE OF MONTANA or FEDERAL GOVERNMENT.  See attached EXHIBIT G

63. I, the Affiant Brenda, observed that at the time of the "MARCH INCIDENT", ARMED OFFICER FEAGLER ISSUED CITATIONS #55301, 55302, 55303, 55304 AND PASSPORT DOCUMENT THROUGH THE AUTOMOBILE WINDOW

64. I, the Affiant Brenda, observed citation #55301 issued by OFFICER FEAGLER states "IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE: "Altered/Fictitious plates to wit susp operated a MV bearing fictitious plates on the public roadway" 61-3-301

65. I, the Affiant Brenda, affirm that affiant never knowingly or purposely or negligently commit any offenses.

66. I, the Affiant Brenda, affirm that affiant was not operating a MV.

67. I, the Affiant Brenda, affirm that affiant was not operating a motor vehicle.

68. I, the Affiant Brenda, affirm that affiant was not bearing altered/fictitious plates.

69. I, the Affiant Brenda, affirm that private trust plates are authorized and issued by trust.

70. I, the Affiant Brenda, observed citation #55302 issued by OFFICER FEAGLER states "IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE: "fail to have DL in immediate possession to wit susp refused to provide a DL upon contact for a traffic violation on a public roadway" 61-5-116

71. I, the Affiant Brenda, affirm that OFFICER FEAGLER never requested a driver's license to be produced during the MARCH INCIDENT.

72. I, the Affiant Brenda, observed citation #55303 issued by OFFICER FEAGLER states "IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE: "owner operating w/o insurance to wit susp operated on uninsured MV on the public roadway" 61-6-301

73. I, the Affiant Brenda, affirm that affiant does not own a MV

74. I, the Affiant Brenda, affirm that affiant does not own a motor vehicle

75. I, the Affiant Brenda, affirm that OFFICER FEAGLER never requested insurance documents to be produced during the MARCH INCIDENT.

76. I, the Affiant Brenda, observed citation #55304 issued by OFFICER FEAGLER states "IN THAT SAID DEFENDANT DID KNOWINGLY OR PURPOSELY OR NEGLIGENTLY COMMIT THE FOLLOWING OFFENSE: "operating???? A vehicle which has not been properly registered to wit susp operated an unregistered vehicle on a public roadway" 61-3-301

77. I, the Affiant Brenda, affirm that Dodge automobile superior equitable title is properly registered in the trust.

78. I, the Affiant Brenda, affirm that affiant does I, the Affiant Brenda, affirm that stolen trust property has not been returned as of the date of this affidavit See attached EXHIBIT D

79. I, the Affiant Brenda, affirm that I endorsed each citation on the face in red ink "Your offer to contract is NOT accepted while traveling in my private automobile.  I provided a passport not a driver's license.  Title 18 USC 241 & 242 as a conspiracy

to deprive me of my rights under the color of law.  by: Brenda-Lee: Held,
Authorized Rep Brenda –Lee: Held UCC 1-308 without prejudice vacate for lack of
jurisdiction MCA 30-1-207" EXHIBIT K

80. I, the Affiant Brenda, affirm that all citations were mailed back to City of Glendive
Court on March 11, 2022 7021 0950 0000 8244 4769 endorsement EXHIBIT K

81. I, the Affiant Brenda, affirm that affiant DID NOT receive and has never received a
Summons for Case No:  TK-350-2022-0000081

Affiant further sayeth not.

If affidavit is not rebutted point by point within 10 DAYS of receipt by lawful evidence to
the contrary, this affidavit is at law evidence in court.  Failure to present evidence to the
contrary of the Affiants testimony, will be evidence that all parties stipulate to the facts
herein as true, correct and complete.

Notice, it is a Fact, that, the affiant states under penalty of perjury without the United
States in accordance with 28 U.S. Code § 1746 that all statements of fact herein are
truth in commerce.

I, Brenda-Lee:  Held, affiant and consumer certify under penalty of perjury under the
laws of The United States of America in the nature of [ 28 U.S.C. 1746 ( 1 ) ], that I have
read the foregoing request for information and know the contents thereof, and that the
information listed above is true, correct and complete to the best of my knowledge.

Submitted, on this 18th day of June 2022.

Affiant,

brenda-lee:  house of held, beneficiary
All Right Reserved   Without Recourse

SUB SUBSCRIBED TO AND SWORN before me this 18th day of JUNE, A.D. 2020, a Notary, that **Brenda-Lee: Held**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Montana that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ Seal;
Notary Public

ANDREA NICOLE FOX
NOTARY PUBLIC for the
State of Montana
Residing at Helena, MT
My Commission Expires
December 20, 2023

ANDREA NICOLE FOX
NOTARIAL
SEAL
STATE OF MONTANA



brenda-lee:  house of held
c\o 130 glenwood avenue
glendive montana republic [RFD 59330]


brenda-lee:  house of held , Sui Juris impropra personam


IN THE CITY COURT, STATE OF MONTANA
IN AND FOR THE CITY OF GLENDIVE

CITY OF GLENDIVE  ,     Case No.: TK-350-2022-0000070
    Plaintiff,       TK-350-2022-0000081

  vs.

BRENDA LEE HELD,     **AFFIDAVIT OF FACTS -**
    \<sic> \<misnomer>   **DOCUMENTATION**
    Alleged & Aggrieved
    Defendant
            Date: 18th day of June 2022

_____

          Traffic Court

The Common Law Citizen Brenda of the family name Held hereinafter "Affiant" hereby Certifies, by Rights Secured under provisions of the Organic Constitution, Constitution of the United States of America, the Constitution of the several states, Common Law, Nature and Laws of Natures GOD, that these Rights are retained in FEE SIMPLE ABSOLUTE, and held and protected with special regard to Rights designated and/or set forth as follows:


1. I, the Affiant Brenda, affirm, in interest of repetition, facts stated in Affidavit of Facts for Case MARCH 9 2022 INCIDENT# TK-350-2022-000081 herein referenced as "MARCH INCIDENT", are herein referenced and affiant asserts all facts into affidavit.

2. I, the Affiant Brenda, affirm, in interest of repetition, facts stated in Affidavit of Facts for Case FEBRUARY 28 2022 INCIDENT # TK-350-2022-000070 herein referenced as "FEBRUARY INCIDENT" are herein referenced and affiant asserts all facts into affidavit.

3. I, the Affiant Brenda, affirm Summons received for TK-350-2022-000070 stated failure to appear on the dates will be cause for issuance of a warrant for your arrest

4. I, the Affiant Brenda, under threat, duress and cohesion arrived on the date of the summons to inquire about trust activities.

5. I, the Affiant Brenda, affirm that Motion to Dismiss with prejudice for lack of jurisdiction, lack of injured party, for want of a verified complaint and brief in support thereof hereinafter "Motion #1" [12 pages] was mailed to City of Glendive Traffic Court on March 16, 2022 USPS certified mail # 7020 2450 0000 1921 5905 EXHIBIT P

6. I, the Affiant Brenda, affirm that initial paperwork was only sent to court because no other parties were disclosed at this time.  I.e. no city attorney and no injured party identified.

7. I, the Affiant Brenda, affirm that "Motion #1" has been received by City of Glendive Traffic Court on March 17, 2022 EXHIBIT P

8. I, the Affiant Brenda, affirm that a true and correct copy of the "Motion #1" has been mailed, [notice #2] to City of Glendive Attorney Scott Herring on April 11, 2022 USPS certified mail # 7020 3160 0000 6934 7820 EXHIBIT R

9. I, the Affiant Brenda, affirm that **no response to "Motion #1"** has been received since the date of this affidavit

10. I, the Affiant Brenda, affirm that since the date of this affidavit lapsed time of no response to "**Motion #1" [Notice #1] totals 114 days**

11. I, the Affiant Brenda, affirm that since the date of this affidavit lapsed time of no response to "**Motion #1" [Notice #2] totals 69 days**

12. I, the Affiant Brenda, affirm that City of Glendive Traffic Court acquiesced to all information pertaining to "Motion #1"

13. I, the Affiant Brenda, affirm that City of Glendive Attorney Scott Herring acquiesced to all information pertaining to "Motion #1"

14. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Court regarding Affidavit of Truth sent on April 11, 2022.

15. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Attorney Scott Herring regarding Affidavit of Truth sent on April 11, 2022.

16. I, the Affiant Brenda, affirm that there is no conflict of information between affiant, City of Glendive Traffic Court and City of Glendive Attorney Scott Herring to all information pertaining to "Motion #1"

17. I, the Affiant Brenda, affirms that "**Motion #1" has not been granted** by the City of Glendive Traffic Court to date of this affidavit.

18. I, the Affiant Brenda, affirm that FOIA Request for documents for Case # was mailed to City of Glendive Traffic Court on March 17, 2022 USPS certified mail # 7020 3160 0000 6934 7783   EXHIBIT O

19. I, the Affiant Brenda, affirm that no response has been received since date of this affidavit for FOIA Request for documents

20. I, the Affiant Brenda, believes that City Court of Glendive would kidnap affiant if affiant did not address the issue.

21. I, the Affiant Brenda, affirm that under threat, duress and cohesion told Fiduciary Kerry Affiant is the beneficiary on **March 24 2022**

22. I, the Affiant Brenda, affirm that Affiant informed Fiduciary Kerry affiant is under threat, duress and cohesion as stated on Summons for case.

23. I, the Affiant Brenda, believes that City Court of Glendive would kidnap affiant if affiant did not address the issue.

24. I, the Affiant Brenda, believes it is the beneficiary's duty to inquire

25. I, the Affiant Brenda, affirm that Affiant informed Fiduciary Kerry items 1-17 facts stated in Affidavit of Facts for Case FEBRUARY 28, 2022, INCIDENT at the beginning of the conversation on March 24 2022

26. I, the Affiant Brenda, affirm that Affiant informed Fiduciary Kerry affiant does not consent to being forced to inquire

27. I, the Affiant Brenda, affirm that Affiant informed Fiduciary Kerry affiant does not wish to contract multiple times during the conversation on March 24 2022

28. I, the Affiant Brenda, affirm that Fiduciary Kerry read affiant Miranda rights

29. I, the Affiant Brenda, believes that Fiduciary Kerry placed affiant under custodial arrest

30. I, the Affiant Brenda, believes that affiant could not leave during the conversation on March 24 2022

31. I, the Affiant Brenda, believes that Fiduciary Kerry interrogated affiant

32. I, the Affiant Brenda, affirm that affiant stated Fiduciary Kerry and Court does not have jurisdiction

33. I, the Affiant Brenda, affirm that affiant did not plea guilty

34. I, the Affiant Brenda, affirm that affiant did not plea not guilty

35. I, the Affiant Brenda, believes entering a plea of guilty or not guilty is committing perjury

36. I, the Affiant Brenda under threats, oppression and intimidation methods witnessed Fiduciary Kerry Burman officer of the court, oppress and intimidate affiant in the free exercise of affiant rights by harassing affiant and manipulating affiant into entering a plea of guilty or not guilty

37. I, the Affiant Brenda stated affiant is the beneficiary

38. I, the Affiant Brenda stated many times affiant does not understand

39. I, the Affiant Brenda stated many times affiant does not know why beneficiary is here

40. I, the Affiant Brenda stated many times beneficiary does not consent

41. I, the Affiant Brenda, affirm no admin hearing was conducted with Department of Transportation prior to summons

42. I, the Affiant Brenda, believes no admin hearing was conducted prior to summons is a denial of due process rights

43. I, the Affiant Brenda, observed Fiduciary Kerry state "the Court does have jurisdiction because you are here"

44. I, the Affiant Brenda, affirm that Affiant informed Fiduciary Kerry affiant does not wish to contract

45. I, the Affiant Brenda, affirm that Affiant informed Fiduciary Kerry affiant does not consent

46. I, the Affiant Brenda, affirm that Affiant informed Fiduciary Kerry affiant is under threat, duress and cohesion of harm

47. I, the Affiant Brenda, affirm that Affiant informed Fiduciary Kerry jurisdiction cannot be stated it must be proven

48. I, the Affiant Brenda, affirm Fiduciary Kerry did not provide documentary evidence that the court has jurisdiction since the date of this affidavit.

49. I, the Affiant Brenda, affirm that court assistant/clerk "Wendy" placed paperwork on the table EXHIBIT Y – Omnibus schedule

50. I, the Affiant Brenda, affirm that Fiduciary Kerry stated at the end of the conversation "you are free to go"

51. I, the Affiant Brenda, affirm paperwork received by Wendy shows bail is set in the amount of O/R in Fiduciary Kerry Burman handwriting.  EXHIBIT Y

52. I, the Affiant Brenda, affirm that Omnibus notice was endorsed in red ink "Refused for cause timely without dishonor and without recourse to me 72 hr right of rescission your offer to contract not accepted while traveling in the private and under fraud threat cohesion intimidation duress of public officials  I provided a passport not a license 18 USC 241 & 242 I am a united States of America National.  Article 1 section 8 clause 17 article 6 paragraph 1 not a United States Citizen person or resident.  Vacate for lack of jurisdiction 3rd notice 18 USC 1001 15 USC 1692e 15 USC 70a Return to sender refused for cause consent not give-denied UCC 1-308 UCC 3-501 RF357839532US.100.003" mailed on 3/26/22 USPS Certified Mail # 7021 0950 0000 8244 4745

53. I, the Affiant Brenda, affirm that Affidavit of truth and a true correct copy of previously mailed Motion to Dismiss with prejudice for lack of jurisdiction, lack of injured party , for want of a verified complaint and brief in support hereof was mailed to City of Glendive Court on April 11 2022 USPS certified mail # 7020 3160 0000 6934 7820 EXHIBIT R

54. I, the Affiant Brenda, affirm that Affidavit of truth and a true correct copy of previously mailed Motion to Dismiss with prejudice for lack of jurisdiction, lack of injured party , for want of a verified complaint and brief in support hereof was mailed to City of Glendive Attorney Scott Herring on April 11 2022 USPS certified mail # 7020 3160 0000 6934 7813 EXHIBIT R

55. I, the Affiant Brenda, affirm that City of Glendive Attorney Scott Herring has not responded to Affidavit of Truth and Motion to Dismiss with prejudice for lack of jurisdiction, lack of injured party , for want of a verified complaint and brief in support hereof sent on April 11, 2022

56. I, the Affiant Brenda, affirm that City of Glendive Court has not responded to Affidavit of Truth and Motion to Dismiss with prejudice for lack of jurisdiction, lack of injured party , for want of a verified complaint and brief in support hereof sent on April 11, 2022

57. I, the Affiant Brenda, affirm that City of Glendive Attorney Scott Herring has acquiesced to all facts stated in Affidavit of Truth and Motion to Dismiss with prejudice for lack of jurisdiction, lack of injured party , for want of a verified complaint and brief in support hereof sent on April 11, 2022

58. I, the Affiant Brenda, affirm that City of Glendive Court has acquiesced to all facts stated in Affidavit of Truth and Motion to Dismiss with prejudice for lack of jurisdiction, lack of injured party , for want of a verified complaint and brief in support hereof sent on April 11, 2022

59. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Attorney Scott Herring regarding Affidavit of Truth and Motion to Dismiss with prejudice for lack of jurisdiction, lack of injured party, for want of a verified complaint and brief in support hereof sent on April 11, 2022.

60. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Court regarding Affidavit of Truth and Motion to Dismiss with prejudice for lack of jurisdiction, lack of injured party, for want of a verified complaint and brief in support hereof sent on April 11, 2022.

61. I, the Affiant Brenda, affirm that Notice of Default and Three day notice to cure was mailed to City of Glendive Attorney Scott Herring on May 3 2022 USPS certified mail# 7019 2970 0001 7673 5042 EXHIBIT R

62. I, the Affiant Brenda, affirm that Notice of Default and Three day notice to cure was mailed to City of Glendive Court on May 3 2022 USPS certified mail# 7020 3160 0000 6934 7875 EXHIBIT R

63. I, the Affiant Brenda, affirm that City of Glendive Attorney Scott Herring has not responded to Notice of Default and Three day notice to cure

64. I, the Affiant Brenda, affirm that City of Glendive Court has not responded to Notice of Default and Three day notice to cure

65. I, the Affiant Brenda, affirm that affiant accepts City of Glendive Attorney Scott Herring default to non-response of Notice of Default and Three day notice to cure

66. I, the Affiant Brenda, affirm that affiant accepts City of Glendive Court default to non-response of Notice of Default and Three day notice to cure

67. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Attorney Scott Herring regarding Notice of Default and Three day notice to cure

68. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Court regarding Notice of Default and Three day notice to cure

69. I, the Affiant Brenda, affirm that Final Notice of Default was mailed on May 9 2022 to City of Glendive Court USPS certified mail 7019 2970 0001 7673 5134 EXHIBIT R

70. I, the Affiant Brenda, affirm that Final Notice of Default was mailed on May 9 2022 to City of Glendive Attorney Scott Herring USPS certified mail 7019 2970 0001 7673 5127 EXHIBIT R

71. I, the Affiant Brenda, affirm that City of Glendive Attorney Scott Herring has not responded to Final Notice of Default

72. I, the Affiant Brenda, affirm that City of Glendive Court has not responded to Final Notice of Default

73. I, the Affiant Brenda, affirm that affiant accepts City of Glendive Attorney Scott Herring default to non-response to Final Notice of Default

74. I, the Affiant Brenda, affirm that affiant accepts City of Glendive Court default to non-response of Final Notice of Default

75. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Attorney Scott Herring regarding Final Notice of Default

76. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Court regarding Final Notice of Default

77. I, the Affiant Brenda, affirm that Motion to Dismiss with prejudice for lack of subject matter jurisdiction, lack of injured party, for want of a verified complaint and lawful default of the prosecutor hereinafter "Motion #2" [4 pages] was mailed to City of Glendive Court on May 9 2022 USPS certified mail 7019 2970 0001 7673 5134 EXHIBIT R

78. I, the Affiant Brenda, affirm that Motion to Dismiss with prejudice for lack of subject matter jurisdiction, lack of injured party, for want of a verified complaint and lawful default of the prosecutor was mailed to Scott Herring on May 9, 2022 USPS certified mail # 7019 2970 0001 7673 5127 EXHIBIT R

79. I, the Affiant Brenda, affirm receipt of Order filed May 19 2022 for affiant filing of Motion to Dismiss with prejudice for lack of subject matter jurisdiction, lack of injured party for want of a verified complain and lawful default of prosecutor Exhibit W

80. I, the Affiant Brenda affirm that the order stated City of Glendive responded to motion on May 11 2022

81. I, the Affiant Brenda, affirm affiant did not receive a response from the city of Glendive for this motion

82. I, the Affiant Brenda affirm that affiant was not given due process to respond to said response prior to the order.

83. I, Affiant Brenda, affirm that DISCOVERY REQUEST was mailed June 7 2022 to Glendive City Court USPS Certified Mail #7020 0090 0001 4257 7855  EXHIBIT V

84. I, Affiant Brenda, affirm that DISCOVERY REQUEST was mailed June 7 2022 to Glendive City Attorney Scott Herring USPS Certified Mail #7020 2450 0000 1921 7220  EXHIBIT V

85. I, the Affiant Brenda, affirm affiant mailed a Notice of Rebuttal to order and motion for more definite statement regarding order in item number 60 above mailed to Glendive City Court on June 7 2022 USPS certified mail# 7020 0090 0001 4257 7855. Exhibit X

86. I, the Affiant Brenda, affirm affiant mailed a Notice of Rebuttal to order and motion for more definite statement regarding order in item number 60 above mailed to Glendive City Attorney Scott Herring on June 7 2022 USPS certified mail# 7020 2450 0000 1921 7220 Exhibit X

87. I, the Affiant Brenda, affirm recent of response on or about June 18 regarding Notice of rebuttal to order and motion for more definite statement from Glendive City Attorney Scott Herring refusal to product evidence requested for affiant to prepare a defense and stating he cannot provide legal advice. Exhibit S

88. I, the Affiant Brenda, affirm affiant did not ask for legal advice.

89. I, the Affiant Brenda, affirm affiant requested documentary evidence. Exhibit S

90. I, the Affiant Brenda, believes the City of Glendive Attorney Scott Herring is willfully refusing to provide documentary evidence

91. I, the Affiant Brenda, believe the City of Glendive Attorney Scott Herring is willfully denying affiant due process rights to view crucial evidence requested.

92. I, the Affiant Brenda, believe the affiant cannot defend the case if affiant cannot agree to the terms used in the legal documents provided by the City of Glendive Attorney Scott Herring and the City of Glendive Court.

93. I, the Affiant Brenda, affirm received Order filed May 19 2022 regarding Motion to dismiss with prejudice for lack of subject matter jurisdiction lack of injured party for want of a verified complain and lawful default of the prosecutor. Exhibit W

94. I, the Affiant Brenda, affirm could not understand the order in Exhibit W and found it non sensical.

95. I, the Affiant Brenda, affirm affiant requested documentary evidence. Exhibit S

96. I, the Affiant Brenda, believes the City of Glendive Court is willfully refusing to provide documentary evidence

97. I, the Affiant Brenda, believe the City of Glendive Court is willfully denying affiant due process rights to view crucial evidence requested.

98. I, the Affiant Brenda, believe the affiant cannot defend the case if affiant and City of Glendive cannot agree to the terms used in the legal documents provided by the City of Glendive Attorney Scott Herring and the City of Glendive Court.

99. I, the Affiant Brenda, affirm research to find legal definitions of terms used by the City of Glendive Court and the City of Glendive Attorney Scott Herring.

100. I, the Affiant Brenda, affirm research to find legal definitions of has resulted in many terms undefined.

101. I, the Affiant Brenda, affirm no clarification on terms or production of requested documentary evidence have been provided by the City of Glendive Court or the City of Glendive Attorney Scott Herring

102. I, the Affiant Brenda, affirm agreement affiant is not a person

103. I, the Affiant Brenda, affirm agreement affiant is not within the state

104. I, the Affiant Brenda, affirm the Order in Exhibit W is frivolous

105. I, the Affiant Brenda, affirm the affiant does not consent to order in Exhibit W

106. I, the Affiant Brenda, affirm the affiant does not accept order in Exhibit W

107. I, the Affiant Brenda, affirm that Writ of Praecipe was mailed to City of Glendive Attorney Scott Herring on May 3 2022 USPS certified mail# 7019 2970 0001 7673 5042 EXHIBIT R

108. I, the Affiant Brenda, affirm that Writ of Praecipe was mailed to City of Glendive Court on May 3 2022 USPS certified mail# 7020 3160 0000 6934 7875 EXHIBIT R

109. I, the Affiant Brenda, affirm that City of Glendive Attorney Scott Herring has not responded to Writ of Praecipe

110. I, the Affiant Brenda, affirm that City of Glendive Court has not responded to Writ of Praecipe

111. I, the Affiant Brenda, affirm that affiant accepts City of Glendive Attorney Scott Herring default to non-response of Writ of Praecipe

112. I, the Affiant Brenda, affirm that affiant accepts City of Glendive Court default to non-response of Writ of Praecipe

113. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Attorney Scott Herring regarding Writ of Praecipe

114. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Court regarding Writ of Praecipe

115.

116. I, the Affiant Brenda, affirm that Writ of Mandamus was mailed on May 14 2022 to City of Glendive Court USPS certified mail 7020 3160 0000 6934 7837 EXHIBIT R

117. I, the Affiant Brenda, affirm that Writ of Mandamus was mailed on May 14 2022 to City of Glendive Attorney Scott Herring USPS certified mail 7019 2970 0001 7673 5288 EXHIBIT R

118. I, the Affiant Brenda, affirm that City of Glendive Attorney Scott Herring has not responded to Writ of Mandamus

119. I, the Affiant Brenda, affirm that City of Glendive Court has not responded to Writ of Mandamus

120. I, the Affiant Brenda, affirm that affiant accepts City of Glendive Attorney Scott Herring default to non-response to Writ of Mandamus

121. I, the Affiant Brenda, affirm that affiant accepts City of Glendive Court default to non-response of Writ of Mandamus

122. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Attorney Scott Herring regarding Writ of Mandamus

123. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Court regarding Writ of Mandamus

124. I, the Affiant Brenda, affirm that Response:  Acknowledgement and Formal Acceptance of Default , Notice of Default Certified Judgement of Unrebutted Affidavit for Affidavit of Truth and Affidavit of Facts and Expression of Trust Case # TK-350-2022-000070 & TK-350-2022-000081 was mailed on May 21 2022 to City of Glendive Court USPS certified mail 7020 0090 0001 4257 7855 EXHIBIT R

125. I, the Affiant Brenda, affirm that Acknowledgement and Formal Acceptance of Default , Notice of Default Certified Judgement of Unrebutted Affidavit for Affidavit of Truth and Affidavit of Facts and Expression of Trust Case # TK-350-2022-000070 & TK-350-2022-81 was mailed on May 21 2022 to City of Glendive Attorney Scott Herring USPS certified mail 7020 2450 0000 1921 7220 EXHIBIT R

126. I, the Affiant Brenda, affirm that City of Glendive Attorney Scott Herring has not responded to Acknowledgement and Formal Acceptance of Default , Notice of Default Certified Judgement of Unrebutted Affidavit for Affidavit of Truth and Affidavit of Facts and Expression of Trust Case # TK-350-2022-000070 & TK-350-2022-000081

127. I, the Affiant Brenda, affirm that City of Glendive Court has not responded to Acknowledgement and Formal Acceptance of Default , Notice of Default Certified Judgement of Unrebutted Affidavit for Affidavit of Truth and Affidavit of Facts and Expression of Trust Case # TK-350-2022-000070 & TK-350-2022-000081

128. I, the Affiant Brenda, affirm that affiant accepts City of Glendive Attorney Scott Herring default to non-response to Acknowledgement and Formal Acceptance of Default , Notice of Default Certified Judgement of Unrebutted Affidavit for Affidavit of Truth and Affidavit of Facts and Expression of Trust Case # TK-350-2022-000070 & TK-350-2022-000081

129. I, the Affiant Brenda, affirm that affiant accepts City of Glendive Court default to non-response of Acknowledgement and Formal Acceptance of Default , Notice of Default Certified Judgement of Unrebutted Affidavit for Affidavit of Truth and Affidavit of Facts and Expression of Trust Case # TK-350-2022-000070 & TK-350-2022-000081

130. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Attorney Scott Herring regarding Acknowledgement and Formal Acceptance of Default , Notice of Default Certified Judgement of Unrebutted Affidavit for Affidavit of Truth and Affidavit of Facts and Expression of Trust Case # TK-350-2022-000070 & TK-350-2022-000081

131. I, the Affiant Brenda, affirm that affiant accepts agreement of facts from City of Glendive Court regarding Acknowledgement and Formal Acceptance of Default , Notice of Default Certified Judgement of Unrebutted Affidavit for Affidavit of Truth and Affidavit of Facts and Expression of Trust Case # TK-350-2022-000070 & TK-350-2022-000081

Affiant further sayeth not.

If affidavit is not rebutted point by point within 10 DAYS of receipt by lawful evidence to the contrary, this affidavit is at law evidence in court.  Failure to present evidence to the contrary of the Affiants testimony, will be evidence that all parties stipulate to the facts herein as true, correct and complete.

Notice, it is a Fact, that, the affiant states under penalty of perjury without the United States in accordance with 28 U.S. Code § 1746 that all statements of fact herein are truth in commerce.

I, Brenda-Lee:  Held, affiant and consumer certify under penalty of perjury under the laws of The United States of America in the nature of [ 28 U.S.C. 1746 ( 1 ) ], that I have read the foregoing request for information and know the contents thereof, and that the information listed above is true, correct and complete to the best of my knowledge.

Submitted, on this 18th day of June 2022.

Affiant, _____

brenda-lee:  house of held, beneficiary
All Right Reserved   Without Recourse

SUB SUBSCRIBED TO AND SWORN before me this 18th day of JUNE, A.D. 2020, a Notary, that **Brenda-Lee: Held**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Montana that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____   Seal:
Notary Public

ANDREA NICOLE FOX
NOTARY PUBLIC for the
State of Montana
Residing at Helena, MT
My Commission Expires
December 20, 2023

1  *Please assign file/complaint number **EXHIBIT G**
and advise Co-Complainants.
2  Thank you, Mr. Gonzales.

3

4

5

6

7

8                UNITED STATES DEPARTMENT OF JUSTICE

9                         WASHINGTON, D.C.

10

11 David R. Myrland, Kurt R. Riggin, and We  ) No. [ **please assign file number** ]
   the People,                              )
12            Citizen Complainants,          )
                                            )
13                vs.                        ) <u>INFORMATION:</u> 18 U.S.C. §§ 4, 241,
                                            ) 242, 876(d), 880, 1341, 1343, 1951(a),
14                                           ) 1962(a), (c), and (d).
                                            )
15 STATE OF WASHINGTON, CHRISTINE           )
   GREGOIRE, LIZ LUCE, KING COUNTY Wa.,     ) VERIFIED CRIMINAL COMPLAINT
16 SNOHOMISH COUNTY, PIERCE COUNTY,         ) under 18 U.S.C. § 4 Misprision of felony.
   DAVID REICHERT, SUSAN RAHR,              )
17 RICHARD BART, PAUL PASTOR, MICHAEL       )
   HURTADO, TEDDY CHOW, NORMAN              )
18 MALENG, T. McALLISTER, CITY OF           )
   KIRKLAND, KENYON DORNAY MARSHALL)
19 LAW FIRM, MARGITA DORNAY, and all        )
   those similarly situated or involved,     )
20              DEFENDANTS.                  )
21

22              I. <u>INTRODUCTION & PARTIES.</u>

23
        1.1 COMES NOW, Complainants above named, seeking herewith to comply with 18
24
   U.S.C. § 4 by reporting felonious conduct and to cause the U.S. Department of Justice to
25
   commence criminal proceedings against the Defendants for the federal crimes alleged herein,
26
   felony and lesser violations included. Defendants have engaged in a course of conduct over the

   past several years which has caused and is causing public vehicular travelers in Washington

1    state the loss of Constitutional rights to freely associate, to contract, to property and privacy,

2    and which threatens their liberty and right to reside. Any federal public servant receiving this

3    Complaint shall consider it to be their constructive notice of the acts complained of herein, be

4    they in Congress, the U.S. Department of Justice, or any other office or position. "Ignorance of

5    the law is no excuse, in any country. If it were, the laws would lose their effect, because it can

6    be always pretended. . . With us, there is no power which can suspend the law for a moment."

     (See, Thomas Jefferson to Andrew Limozin, 1787. ME 6:401).

7            1.2 The criminal conduct complained of includes but is not limited to, **1)** malicious

8    prosecution and false imprisonment, **2)** extortion of property under color of official right in an

9    ongoing racketeering enterprise, **3)** extortion activities which directly discriminate against the

     poor, **4)** illegally obtaining articles of commerce in the interference therewith, **5)** mailing

10   threatening communications to public vehicular travelers, and **6)** conduct dangerous to human

11   life intended to intimidate a civilian population (domestic terrorism). Statutory authorities

12   quoted therein show modes of enforcement visited by the Defendants upon the public at large,

     in Washington state, to be excessive and overtly criminal, and occurring on or after 12/1/00 and

13   which are ongoing. The attached memorandum is incorporated by this reference as if fully

14   restated herein. ***Any and all emphasis*** employed herein may be construed to have been added.

15           1.3 Defendant STATE OF WASHINGTON is a state government operating as the

16   jurisdictional authority over the geographical area contained by the political boundaries of

17   Washington state. The chief executive official in the racketeering enterprise complained of

     herein is Defendant CHRISTINE GREGOIRE whose address is Office of the Governor, P.O.

18   Box 40002, Olympia, WA 98504-0002. The determination as to who is similarly situated

19   would naturally include Washington state's past and present Directors of Licensing (Defendant

20   LIZ LUCE), but the remainder is better determined by federal authorities which ultimately

21   investigate the structure of the extortion and racketeering scheme complained of herein.

22   Defendant LUCE's address is 1125 Washington St. SE, Post Office Box 9020, Olympia, WA

     98507-9920.

23           1.4 Defendants KING COUNTY, SNOHOMISH COUNTY, and PIERCE COUNTY,

24   and other counties in WA are similarly situated as municipal corporations in Washington state,

25   creatures of the Washington state legislature, which benefit and continue to benefit from the

26

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          **Page 2 of 16**

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

racketeering activities complained of herein. Defendants REICHERT, RAHR, BART, PASTOR, and other county sheriffs in Washington state are similarly situated as current or past sheriff's of their respective counties also named herein, in charge of entire squads of armed officers engaged in the misenforcement of RCW 46 against public vehicular travelers. Last known addresses of these Defendants are as follows:

1. King County Bldg. 516 Third Ave., Seattle, 98104, also SUSAN RAHR (presently Sheriff of King County), and NORMAN MALENG (presently District Attorney and Prosecutor of and for King County).

2. Snohomish County 3000 Rockefeller Ave., Everett, WA 98201 also RICHARD BART (presently Sheriff of Snohomish County).

3. Pierce County Administration Division 615 South 9th Street, #100 Tacoma, WA 98405, also PAUL PASTOR (presently Sheriff of Pierce County).

1.5 Defendant DAVID REICHERT (formerly Sheriff of King County), now occupies a seat in Congress and his address as such occupant is 1223 Longworth House Office Bldg., Washington, D.C. 20515.

1.6 Defendant CITY OF KIRKLAND is a municipal corporation in Washington state, a creature of the Washington state legislature, which has and continues to benefit from the racketeering activities complained of herein, having the address of City of Kirkland, 123 5th Street, Kirkland, WA 98033. Those similarly situated are each and all of Washington's city and town governments which enforce RCW 46 in relation to public vehicular travelers.

1.7 Defendant MICHAEL HURTADO serves as judge and judge *pro tempore* in municipal courts in Washington states, and has the address of Municipal Court of Seattle, Seattle Justice Center, 600 Fifth Avenue, PO BOX 34987, Seattle, WA 98124-4987. Those similarly situated are each and all of Washington's judges (pro tem or otherwise) and all other presiding officers who hear and have hears cases where the provisions of RCW 46 were brought to bear against the liberty and property of public vehicular travelers.

1.8 Defendant TEDDY CHOW (Grant County, WA prosecutor currently falsely prosecuting Complainant K. Riggin) and Defendant NORMAN MALENG (King County, WA prosecutor) are similarly situated as prosecutors who represent and have represented in state courts actions brought with the intent of falsely imprisoning innocent public vehicular travelers

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 3 of 16

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

under laws wholly inapplicable to them, and designed to extort from their respective targets huge sums in court fees, fines, and to deprive them of privacy in unconscionable amounts, and seizing untold thousands of automobiles to which RCW 46 and adopting ordinances do not apply. Those similarly situated include all county and city attorneys in Washington who have prosecuted or are prosecuting simple or gross misdemeanor charges, or felony charges against public vehicular travelers but which arise under Revised Code of Washington (hereinafter "RCW") Title 46 Motor Vehicles.

1. Defendant TEDDY CHOW - Grant County, 35 C ST NW, Ephrata, WA 98823.

2. Defendant NORMAN MALENG -  King County Prosecuting Attorney, W554 King County Courthouse, 516 Third Avenue, Seattle, WA  98104.

1.9 T. McALLISTER (hereinafter "OFFICER") is a general law enforcement officer employed by the City of Everett, WA, with the authority to enforce RCW 46 (as adopted into city ordinance), who has falsely arrested Complainant Riggin and his friend with whom Everett settled for $5,000.00 (U.S.). Those similarly situated are all such officers exercising the lawful authority to enforce RCW 46 Motor Vehicles but who have enforced it upon and against public vehicular travelers in Washington state. The City of Everett's address is 2930 Wetmore Ave., Everett, WA 98201.

1.10 Defendant KENYON, DORNAY, MARSHALL law firm (hereinafter "LAW FIRM") is a private law firm hired by certain Washington municipalities to bring false charges under RCW 46 Motor Vehicles (adopted by ordinance) against public vehicular travelers, falsely imprisoning them and extorting hundreds of thousands of dollars from the innocent every month for each municipality fortunate enough to contract with them. Defendant MARGITA DORNAY (hereinafter "DORNAY") served her clients in this way, including Defendant CITY OF KIRKLAND. These Defendants are at this address: Kenyon, Dornay, Marshall Law Firm, PLLC, 11 Front Street S., Issaquah, WA 98027. Those similarly situated are all private law firms and attorneys so contracting and prosecuting in Washington state, and those individuals serving such an enterprise a attorneys or general partners. Due to a proven track record of perjury to the court and other modes of shameful misconduct, Ms. Dornay

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 4 of 16

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

1  might no longer be in practice. (fn. [1] ). All persons similarly situated to named Defendants shall

2  be deemed to have been specifically named in each appropriate allegation made below.

3  II. <u>EXHIBITS IN SUPPORT OF THIS COMPLAINT</u>.

4  2.1 All exhibits are incorporated by this reference as if fully restated herein. Exhibits

5  and declaration of truth appear as appendices to the attached memorandum in support of this

6  complaint.

7  **Exhibit A**. Washington Sessions Laws from 1915 to 1921 showing the foundation of
8  RCW 46 Motor Vehicles with obvious constraints.

9  2.2 Complainants are teachers at seminars to promote state and federal legislators,

10  compliance with court rules, and attempt to instill in every American the confidence that the

11  law is perfect, that the system is incredibly crafted, and that the problem to focus on is the

    executive and judicial branches' willingness to set all of that aside for their compensation.

12

13  III. <u>MANDATORY NOTICE OF FOREIGN (non-federal) LAW</u>.

14  3.1 All who possess the authority to act in this regard, and as required of them under 18

15  U.S.C. § 4, are hereby placed on notice as to the Washington state statutes below also violated

16  by the Defendants and each of them in the course of conduct complained of herein:

17  RCW 9A.04.080 Limitation of actions.
18      (1) Prosecutions for criminal offenses shall not be commenced after the periods
    prescribed in this section.
19      (b) ***The following offenses shall not be prosecuted more than <u>ten years after</u>***
    ***<u>their commission</u>***:
20      (i) ***<u>Any felony committed by a public officer if the commission is in</u>***
    ***<u>connection with the duties of his or her office</u> or constitutes a breach of his or her***
21    ***public duty or a violation of the oath of office***[.]

22  RCW 9.62.010 Malicious prosecution. Every person who shall, maliciously and ***without***
    ***probable cause*** therefor, cause or attempt to ***cause another to be arrested or proceeded***
23    ***against for any crime of which he or she is innocent***:

24

25

26

---

[1]  See Google.com - Search "Margita Dornay" for articles concerning perjury to superior court, adulterous affair
with abusive sheriff's deputy, victim of said deputy's stalking and threats, and other misconduct.

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.    Page 5 of 16

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

(1) If such crime be a felony, *shall be punished by imprisonment in a state correctional facility for not more than five years*; and

(2) If such crime be a gross misdemeanor or misdemeanor, <u>shall be guilty of a misdemeanor</u>.

RCW 9A.28.020 Criminal attempt.

(1) *A person is guilty of an attempt to commit crime if*, with intent to commit a specific crime, *he does any act which is a substantial step toward the commission of that crime*.

(2) If the conduct in which a person engages otherwise constitutes an attempt to commit a crime, it is no defense to a prosecution of such attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission.

(3) *An attempt to commit a crime is a*:

(a) Class A felony when the crime attempted is murder in the first degree, murder in the second degree, or arson in the first degree;

(b) Class B felony when the crime attempted is a class A felony other than murder in the first degree, murder in the second degree, or arson in the first degree;

(c) <u>Class C felony when the crime attempted is a class B felony;</u>

(d) <u>Gross misdemeanor when the crime attempted is a class C felony;</u>

(e) <u>Misdemeanor when the crime attempted is a gross misdemeanor or misdemeanor.</u>

RCW 9A.40.040 Unlawful imprisonment.

(1) *A person is guilty* of unlawful imprisonment *if he knowingly restrains another person*.

(2) <u>Unlawful imprisonment is a class C felony.</u>

RCW 9A.52.025 Residential burglary.

(1) *A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling* other than a vehicle.

(2) <u>Residential burglary is a class B felony.</u> In establishing sentencing guidelines and disposition standards, the sentencing guidelines commission and the juvenile disposition standards commission shall consider residential burglary as a more serious offense than second degree burglary.

RCW 9A.46.020 Definition--Penalties.

(1) *A person is guilty of harassment if*:

(a) *Without lawful authority, the person knowingly threatens*:

(i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or

(ii) To cause physical damage to the property of a person other than the actor; or

(iii) *To subject the person threatened or any other person to physical confinement or restraint*; or

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 6 of 16

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

(iv) *Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety*; and

(b) *The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.*

(2) *A person who harasses another is guilty of a gross misdemeanor* punishable under chapter 9A.20 RCW, except that the person is guilty of a class C felony if either of the following applies: (a) The person has previously been convicted in this or any other state of any crime of harassment, as defined in RCW 9A.46.060, of the same victim or members of the victim's family or household or any person specifically named in a no-contact or no-harassment order; or (b) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person.

(3) The penalties provided in this section for harassment do not preclude the victim from seeking any other remedy otherwise available under law.

RCW 9A.56.030 Theft in the first degree--Other than firearm.

(1) *A person is guilty of theft in the first degree* if he or she commits theft of:

(a) *Property or services which exceed(s) one thousand five hundred dollars in value* other than a firearm as defined in RCW 9.41.010; or

(b) Property of any value other than a firearm as defined in RCW 9.41.010 taken from the person of another.

(2) Theft in the first degree is a class B felony.

RCW 9A.56.050 Theft in the third degree.

(1) A person is guilty of *theft in the third degree if he* or she *commits theft of property* or services *which* (a) *does not exceed two hundred and fifty dollars in value*, or (b) includes ten or more merchandise pallets, or ten or more beverage crates, or a combination of ten or more merchandise pallets and beverage crates.

(2) Theft in the third degree is a gross misdemeanor.

RCW 9A.80.010 Official misconduct.

(1) A public servant is guilty of official misconduct if, *with intent to* obtain a benefit or to *deprive another person of a lawful right or privilege*:

(a) *He intentionally commits an unauthorized act under color of law*; or

(b) *He intentionally refrains from performing a duty* imposed upon him by law.

(c) Official misconduct is a gross misdemeanor.

3.2 The attached memorandum in support of this Complaint shows the Defendants and each of them to have set about violating these state laws in the furtherance of racketeering activities against Washington state's public vehicular travelers and their families, and against

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 7 of 16

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

their own families, and this constitutes the violations of federal criminal statutes as alleged herein.

3.3 This matter may be disposed of as easily as one simply out-briefing the Complainants to show RCW 46 to be applicable to public vehicular travelers in Washington state, or as easy as agreeing with the Complainants and their abundance of authorities which show said title to be inapplicable to public vehicular travelers. The former is merely about the law; nothing more. The latter, however, requires of Defendant REICHERT that he immediately resign his Congressional office and turn himself in to the U.S. Department of Justice as he clearly should. As one so steeped in violent tendencies, corruption and misconduct against the helpless, with ignorance as his only excuse, Defendant REICHERT's having risen to said office constitutes a clear and present threat to each and every American emanating from the very top levels of government and cannot be allowed to continue for one more moment. Impeach now!

3.4 Complainants are entirely satisfied that the law operates as briefed; public vehicular travel is a right and is not a privilege granted by Defendant WASHINGTON STATE. The fact that the law alone can dispose of this proves the Complainants to possess good faith in this filing. The fairness brought to the matter by such responsible and articulately briefed representation of the law as it exists demands a response in kind, be it opposed or in agreement. Isn't that just as fair as fair can be, in this *nation of laws*?

## IV. VIOLATIONS OF FEDERAL CRIMINAL STATUTES.

4.1 All exhibits, facts, and writings shall be deemed to be incorporated by this reference into each count alleged below as if fully restated therein. The facts are these, **1)** Defendants and each of them enforce and impose upon public vehicular travelers the provisions of RCW 46 and RCW 82 despite the law which says it does not apply to said travelers, **2)** said misapplication of the law deprives public vehicular travelers in Washington state enormous sums paid to obtain all trappings associated with "operating a motor vehicle upon the highways of the state," **3)** those who cannot afford these amounts or who seek to not pay them or who otherwise fail to comply with Defendants' unlawful demands are stripped of liberty, privacy, and property in the retaliation of the Defendants, and **4)** all Defendants hereto are experts on the law and they therefore certainly cannot claim ignorance as a defense, not that it is one.

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.                    Page 8 of 16

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

<u>COUNT I: Receiving proceeds of extortion.</u>

4.2 Defendants STATE OF WASHINGTON receives the proceeds of extortion in a racketeering scheme by imposing and collecting RCW 82 Motor Vehicle Excise Tax upon and from public vehicular travelers when they purchase gasoline, threatening prosecution and imprisonment to those public vehicular travelers seeking to not pay said excise tax, despite its inapplicability to said travelers. Defendants conduct therefore constitutes a violation of 18 U.S.C. § 880 Receiving proceeds of extortion.

<u>COUNT II: Receiving proceeds of extortion.</u>

4.3 Defendant STATE OF WASHINGTON receives the proceeds of extortion by requiring under threat of force public vehicular travelers to pay sums not imposed upon them under RCW 46. These undue takings include but are not limited to title transfer fees, license plates and annual registration renewal fees, driver's licenses, motor vehicle insurance, emissions testing fees. Defendant's conduct therefore constitutes a violation of 18 U.S.C. § 880 Receiving proceeds of extortion.

<u>COUNT III: Receiving proceeds of extortion.</u>

4.4 Defendant STATE OF WASHINGTON receives the proceeds of extortion by bringing false charges (civil and criminal) under RCW 46 against public vehicular travelers so as to impose fees, fines, and penalties, depriving public vehicular travelers of approximately $1 billion annually. Those similarly situated are each and all county and city governments in Washington state which so enforce RCW 46 (adopted by ordinance or otherwise) against public vehicular travelers. Defendants conduct therefore constitutes a violation of 18 U.S.C. § 880 Receiving proceeds of extortion.

<u>COUNT IV: Receiving proceeds of extortion.</u>

4.5 Defendants GREGOIRE, LUCE, REICHERT, MALENG, HURTADO, OFFICER, LAW FIRM, and DORNAY, benefit from WASHINGTON's racketeering enterprise and that of their [respective] municipalities in the form of compensation for services and pensions. This

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 9 of 16

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

1  conduct on the part of these Defendants therefore constitutes a violation of 18 U.S.C. § 880
2  Receiving proceeds of extortion.

COUNT V; Mailing threatening communications.

4  4.6 In their intentional misenforcement of RCW 46 (an extortion and racketeering
5  scheme) against public vehicular travelers, Defendants and each of them author letters,
6  pleadings, and other correspondence promising arrest or imposing a fine, or one's purporting
7  that the recipient is required to appear in court, and Defendants place said items in the U.S.
8  mails addressed to public vehicular travelers in the furtherance of the misapplication of RCW
9  46 to them as a racketeering enterprise. Defendants' course of conduct is therefore a violation
   of 18 U.S.C. § 876(d) Mailing threatening communications.

COUNT VI; Interference with commerce by threats or violence.

12  4.7 Defendants and each of them have willfully and intentionally acted to extort by
13  intimidation and threat of force Federal Reserve Notes (fn. [2] ) from public vehicular travelers
14  by misapplying RCW 46 to them as described herein, and have acted to deprive them of FRNs
   which otherwise would gone into the American economy through spending in intrastate and
15  interstate commerce. By unlawfully obtaining and channeling FRNs into government, to enrich
16  insurance companies, and into their own pockets Defendants and each of them are in violation
17  of 18 U.S.C. § 1951(a) Interference with commerce by threats or violence.

COUNT VII; Prohibited activities.

19  4.8 Defendant WASHINGTON STATE, KING COUNTY, CITY OF KIRKLAND, and
20  LAW FIRM, willfully and intentionally derived income from racketeering and has furthered
21  such activity by investing in and acquiring more equipment, buildings, and personnel for the
22  purposes of enhancing and maintaining revenue streams of unlawful debt. All public vehicular
23  travelers within and without Washington state were intimidated into acquiring the trappings of
24  privileges not lawfully required of them in their enjoyment of interstate and intrastate travel and

---

[2] Securities in commerce, see 15 U.S.C. § 77b.(a)(1), (7).

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 10 of 16

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

commerce not derived from the use of the highways for hire. These Defendants are therefore in violation of 18 U.S.C. § 1962(a) Prohibited activities.

### COUNT IIX; Prohibited activities.

4.9 Defendants GREGOIRE, LUCE, REICHERT, BART, MALENG,  HURTADO, CHOW, OFFICER, LAW FIRM, and DORNAY, have willfully and intentionally, directly and indirectly, conducted or participated in a racketeering enterprise to collect unlawful debt, benefiting in the form of compensation for services and pensions, in violation of 18 U.S.C. 1962(c) Prohibited activities.

### COUNT IX; Prohibited activities.

4.10 Defendants and each of them, and all those similarly situated, have willfully and intentionally conspired to violate 18 U.S.C. §§ 1962(a) and 1962(c) against all public vehicular travelers in Washington state, and are therefore in violation of 18 U.S.C. § 1962(d) Prohibited activities.

### COUNT X; Frauds and swindles.

4.11 Defendants STATE OF WASHINGTON, GREGOIRE, LUCE, KING COUNTY, CITY OF KIRKLAND, REICHERT, HURTADO, MALENG, OFFICER, LAW FIRM, and DORNAY, as a matter of routine, employed the U.S. mails to raise and enhance revenue streams in their artifice of fraud of applying RCW 46 to public vehicular travelers. Billing for court fees and fines, summons and arrest warrants, license suspensions, reminders to obtain annual license tabs, all elements of RCW 46 enforcement but mailed or otherwise sent as fraudulent representations to public vehicular travelers demanding or otherwise seeking monies not owed by them. This conduct on the part of these Defendants therefore constitutes a violation of 18 U.S.C. § 1341 Frauds and swindles.

### COUNT XI; Fraud by wire, radio, or television.

4.12 Defendants STATE OF WASHINGTON, GREGOIRE, LUCE, KING COUNTY, CITY OF KIRKLAND, REICHERT, HURTADO, MALENG, OFFICER, LAW FIRM, and

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

1  DORNAY, as a matter of routine, relied upon and benefited from false and misleading
2  television and radio broadcasts to intimidate, *ala*, "Click it or ticket" and other television
3  campaigns and newscasts warning all public vehicular travelers of enforcement modes and
4  emphasis patrols and efforts under RCW 46 Motor Vehicles. Warnings of every nature but
   relevant only to RCW 46 enforcement have been broadcast constantly over the television for
5  the past twenty years, all of which was fraudulent communication to public vehicular travelers
6  to keep them supplying monies they have never owed. These fraudulent and unlawful threats
7  were conveyed to television personnel for airing, or during air time that was actually purchased
   on television, for the purposes of using RCW 46 to obtain monies from public vehicular
8  travelers and were implemented by, or for the benefit of, these Defendants, and this conduct
9  therefore constitutes a violation of 18 U.S.C. § 1343 Fraud by wire, radio, or television.
10
                        COUNT XII; Conspiracy against rights.
11
12     4.13 Defendants and each of them are co-conspirators in the racketeering and extortion
   activities complained of herein. These activities included theft of property through intimidation
13
   and threat of force, unlawful arrest and imprisonment, unlawful acquisition of securities by
14 requiring the posting of bail, and the confiscation of automobiles from public vehicular
15 travelers. This conspiracy on the part of the Defendants therefore constitutes a conspiracy to
16 deprive public vehicular travelers of rights to liberty, to public vehicular travel, to property and
   to privacy, in violation of 18 U.S.C. § 241 Conspiracy against rights.
17
18                      COUNT XIII; Deprivation of rights.
19     4.14 Defendants and each of them have willfully engaged in a racketeering enterprise
20 against the very Americans to whom they pledged their support and protection, all with the
   design of taking property under threat of loss of liberty and larger sums for bail, court fines, etc.
21
   Defendants have enforced RCW 46 and are enforcing RCW 46 against public vehicular
22 travelers despite the lawlessness of such, thus depriving public vehicular travelers of rights to
23 equal protection, to privileges and immunities, to property, to liberty, to public vehicular travel,
24 and to privacy, in violation of 18 U.S.C. § 242 Deprivation of rights.
25  / / /
26

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.            Page 12 of 16

COUNT XIV: Misprision of felony.

4.15 Although possessive for years the personal first hand knowledge that the acts complained of herein constituted the crimes alleged herein, Defendants and each of them chose to ignore their lawful requirements under 18 U.S.C. § 4 that they report such federal crimes to United States authorities, choosing rather to engage in the pillaging of public vehicular travelers throughout Washington state. Those similarly situated includes Defendant STATE OF WASHINGTON's attorney general and all 400(+) assistants there. Defendants' willful failure to report these crimes therefore constitutes their violation of 18 U.S.C. § 4 Misprision of felony.

COUNT XV: Misprision of felony in the future.

4.16 Although now possessive of personal first hand knowledge that the acts complained of herein constituted the crimes alleged herein, Defendant JOHN(s) DOE (un-named federal officials and others who receive this 18 U.S.C. § 4 complaint) will remain unable to provide an answer in law to justify as lawful that conduct complained of herein, and he or she will choose to not utter a word about this issue to federal authorities, and thus will be in violation 18 U.S.C. § 4 Misprision of felony. Any such malfeasance exposes a need to expedite the replacement of such a criminal to protect Congress, *a fortiori*, every American, from them and their proclivities.

V. CONCLUSION.

5.1 As legal advocates in Washington state, Complainants have watched this abuse for many years and have seen families torn apart under RCW 46, they've seen the poor jailed because they are poor, they've lost automobiles and other property to this scheme, and they know the deprivation of the use of the highways due to RCW 46 imposed financial hardship to utterly extinguish the right to reside and to seek opportunity. Hundreds of the wrongly accused are rotting in jails throughout Washington state as you read this.

5.2 The harsh treatment suffered by public vehicular travelers at the hands of the Defendants is unforgivable. Such travelers in Washington state desperately need to be made whole in this common and *precious* right of public vehicular travel. The fact that a domestic

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 13 of 16

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

1   terrorist now serves in Congress on the Committee of Homeland Security screams of peril, to

2   the Complainant, and it cannot be allowed to continue absent clear proof that Complainant is

3   mistaken about the language of the law.

4       5.3 We the People deserve to know how we are mistaken in our interpretation.

    Complainants and each of them, including We the People, view any public servant with

5   authority to act but who chooses to not cogently brief their opposition to the attached

6   Memorandum, and to not authorize or otherwise cause the prosecution of the actors complained

7   of, as one who is willingly in violation of 18 U.S.C. §§ 3 and 4, thus compelling Complainants

8   and each of them to name said servant as a party defendant to a complaint such as this one.

9   Absent an explanation as to how they are mistaken in such conclusion, inaction compels them

    to act as required by said provision thirty days after service of this Complaint upon them.

10

11           VI. <u>VERIFICATION</u>.

12       **6.1 We, Complainants, David R. Myrland, and Kurt R. Riggin, bring this criminal**

13   **complaint in good faith, and <u>We believe</u> in full** that the allegations of lawlessness on the part

14   of the Defendants above named are true and correct, that they constitute the crimes alleged

herein, and that 18 U.S.C. § 4 therefore requires us to complain in this fashion.

15       6.2 Complainants have never operated and will never operate a motor vehicle (vehicle

16   for hire) but rather have and will only engage in public vehicular travel as a matter of right, as it

17   relates to <u>all</u> of their prior, present and future usage of the public highways of Washington state.

/ / /

18   / / /

19   / / /

20   / / /

21   / / /

/ / /

22   / / /

23   / / /

24   / / /

/ / /

25   / / /

26

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.        **Page 14 of 16**

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

6.3 I, David R. Myrland, view the language of Washington law to preserve as a common right the activity of public vehicular travel. I do hereby declare under penalties of perjury that the statements and allegations made herein are true and correct to the very best of our knowledge, and that no material falsity is believed to exist, nor has any been made or uttered in relation to any exhibit filed in support of this Complaint. Executed this _4th_ day of the month of March, 2006.

_____

David R. Myrland, Affiant/Complainant

6.4 The above affirmation was duly subscribed and sworn to before me, this _4th_ day of the month of March, 2006, by David R. Myrland.

6.5 I, ___ALFRED T TORIO___ , am a Notary under license from the State of Washington whose Commission expires on ___June 15, 2008___, and be it known by my Hand and my Seal as follows:

_____

Notary signature

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

Notary Public
State of Washington
ALFRED T. TORIO
My Appointment Expires Jun 15, 2008

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 15 of 16

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

1
6.6 I, Kurt R. Riggin, do hereby declare under penalties of perjury that the statements and

2
allegations made herein are true and correct to the very best of <u>my individual personal</u>

3
<u>knowledge</u>. I view the language of Washington law to preserve as a common right the activity of

public vehicular travel. Executed this 27th day of the month of February, 2006.

4
*Kurt Riggin*

5
Kurt R. Riggin, Affiant/Complainant

6
6.7 The above affirmation was subscribed and duly sworn to before me this 27th day

7
of the month of February, 2006, by Kurt R. Riggin.

8
6.8 I, *SHAWN GLAZER*, am a Notary under license from the State of Colorado

whose Commission expires 8-11-09, and be it known by my hand and my Seal as follows:

9
*Shen Place*

10
Notary signature

11
**My Commission Expires**
**August 11, 2009**

12
/ / /

13
/ / /

14
/ / /

15
/ / /

16
/ / /

17
/ / /

/ . /

18
/ / /

19
/ / /

20
/ / /

21
/ / /

22
/ / /

23
/ / /

24
/ / /

25
/ / /

/ / /

26

COMPLAINT under 18 U.S.C.                                    David R. Myrland / Kurt R. Riggin
§ 4 Misprision of felony.        Page 16 of 16                6619 132nd Ave. NE #100
                                                             Kirkland, WA  98033

# Exhibit A:

**Exhibit A**. Sessions Laws of Washington from 1915 through 1921 discussed and relied upon in Memorandum.

Exhibit: ___*A*___

Case 1:22-cv-00137-SPW-TJC Document 2-1 Filed 12/08/22 Page 99 of 152

**46.04.304 Moped.** "Moped" means a motorized device designed to travel with not more than three sixteen-inch or larger diameter wheels in contact with the ground, having fully operative pedals for propulsion by human power, and an electric or a liquid fuel motor with a cylinder displacement not exceeding fifty cubic centimeters which produces no more than two gross brake horsepower (developed by a prime mover, as measured by a brake applied to the driving shaft) that is capable of propelling the device at not more than thirty miles per hour on level ground.

The Washington state patrol may approve of and define as a "moped" a vehicle which fails to meet these specific criteria, but which is essentially similar in performance and application to motorized devices which do meet these specific criteria. [1990 c 250 § 18; 1987 c 330 § 702; 1979 ex.s. c 213 § 1.]

Severability—1990 c 250: See note following RCW 46.16.301.

Construction—Application of rules—Severability—1987 c 330: See notes following RCW 28B.12.050.

**46.04.305 Motor homes.** "Motor homes" means motor vehicles originally designed, reconstructed, or permanently altered to provide facilities for human habitation, which include lodging and cooking or sewage disposal, and is enclosed within a solid body shell with the vehicle, but excludes a camper or like unit constructed separately and affixed to a motor vehicle. [1990 c 250 § 19; 1971 ex.s. c 231 § 3.]

Severability—1990 c 250: See note following RCW 46.16.301.

Effective date—1971 ex.s. c 231: See note following RCW 46.01.130.

**46.04.310 Motor truck.** "Motor truck" means any motor vehicle designed or used for the transportation of commodities, merchandise, produce, freight, or animals. [1961 c 12 § 46.04.310. Prior: 1959 c 49 § 32; prior: (i) 1943 c 153 § 1, part; 1937 c 188 § 1, part; Rem. Supp. 1943 § 6312-1, part; 1923 c 181 § 1, part; 1921 c 96 § 2, part; 1919 c 59 § 1, part; 1917 c 155 § 1, part; 1915 c 142 § 2, part; RRS § 6313, part. (ii) 1937 c 189 § 1, part; RRS § 6360-1, part; 1929 c 180 § 1, part; 1927 c 309 § 2, part; RRS § 6362-2, part.]

**46.04.320 Motor vehicle.** "Motor vehicle" shall mean every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails. An electric personal assistive mobility device is not considered a motor vehicle. [2002 c 247 § 2; 1961 c 12 § 46.04.320. Prior: 1959 c 49 § 33; 1955 c 384 § 10; prior: (i) 1943 c 153 § 1, part; 1937 c 188 § 1, part; Rem. Supp. 1943 § 6312-1, part; 1923 c 181 § 1, part; 1921 c 96 § 2, part; 1919 c 59 § 1, part; 1917 c 155 § 1, part; 1915 c 142 § 2, part; RRS § 6313, part. (ii) 1937 c 189 § 1, part; RRS § 6360-1, part; 1929 c 180 § 1, part; 1927 c 309 § 2, part; RRS § 6362-2, part.]

Legislative review—2002 c 247: See note following RCW 46.04.1695.

**46.04.330 Motorcycle.** "Motorcycle" means a motor vehicle designed to travel on not more than three wheels in contact with the ground, on which the driver rides astride the motor unit or power train and is designed to be steered with a handle bar, but excluding a farm tractor, an electric personal assistive mobility device, and a moped.

The Washington state patrol may approve of and define as a "motorcycle" a motor vehicle that fails to meet these specific criteria, but that is essentially similar in performance and application to motor vehicles that do meet these specific criteria. [2002 c 247 § 3; 1990 c 250 § 20; 1979 ex.s. c 213 § 2; 1961 c 12 § 46.04.330. Prior: 1959 c 49 § 34; prior: (i) 1943 c 153 § 1, part; 1937 c 188 § 1, part; Rem. Supp. 1943 § 6312-1, part; 1923 c 181 § 1, part; 1921 c 96 § 2, part; 1919 c 59 § 1, part; 1917 c 155 § 1, part; 1915 c 142 § 2, part; RRS § 6313, part. (ii) 1937 c 189 § 1, part; RRS § 6360-1, part; 1929 c 180 § 1, part; 1927 c 309 § 2, part; RRS § 6362-2, part.]

Legislative review—2002 c 247: See note following RCW 46.04.1695.

Severability—1990 c 250: See note following RCW 46.16.301.

**46.04.332 Motor-driven cycle.** "Motor-driven cycle" means every motorcycle, including every motor scooter, with a motor that produces not to exceed five brake horsepower (developed by a prime mover, as measured by a brake applied to the driving shaft). A motor-driven cycle does not include a moped or an electric personal assistive mobility device. [2002 c 247 § 4; 1979 ex.s. c 213 § 3; 1963 c 154 § 28.]

Legislative review—2002 c 247: See note following RCW 46.04.1695.

Effective date—1963 c 154: See note following RCW 46.37.010.

**46.04.340 Muffler.** "Muffler" means a device consisting of a series of chambers, or other mechanical designs for the purpose of receiving exhaust gas from an internal combustion engine and effective in reducing noise resulting therefrom. [1961 c 12 § 46.04.340. Prior: 1959 c 49 § 35; prior: 1937 c 189 § 1, part; RRS § 6360-1, part.]

**46.04.350 Multiple lane highway.** "Multiple lane highway" means any highway the roadway of which is of sufficient width to reasonably accommodate two or more separate lanes of vehicular traffic in the same direction, each lane of which shall be not less than the maximum legal vehicle width and whether or not such lanes are marked. [1975 c 62 § 5; 1961 c 12 § 46.04.350. Prior: 1959 c 49 § 36; prior: 1937 c 189 § 1, part; RRS § 6360-1, part.]

Severability—1975 c 62: See note following RCW 36.75.010.

**46.04.355 Municipal transit vehicle.** Municipal transit vehicle includes every motor vehicle, street car, train, trolley vehicle, and any other device, which (1) is capable of being moved within, upon, above, or below a public highway, (2) is owned or operated by a city, county, county transportation authority, public transportation benefit area, or metropolitan municipal corporation within the state, and (3) is used for the purpose of carrying passengers together with incidental baggage and freight on a regular schedule. [1984 c 167 § 2; 1974 ex.s. c 76 § 4.]

Unlawful bus conduct: RCW 9.91.025.

JUL-06-03 THU 16:40  010101010101010101                                    P.03

SESSION LAWS, 1915.                                    [Ch. 141.

(724.48) feet, a distance of one thousand four hundred sixty and eighty-two one-hundredths (1460.82) feet to a point of tangency; thence north fifty-three degrees, six minutes, twenty-seven seconds west (N. 53° 6' 27" W.) thirty-three and twenty-five one-hundredths (33.25) feet to the true point of beginning, containing two and thirty-seven one-hundredths (2.37) acres more or less, excepting therefrom that portion of the described strip of land in Montlake boulevard:

Also beginning at the northwest corner of section sixteen (16), township twenty-five (25) north, range four (4) east, Willamette meridian; thence south sixty-five degrees, thirty-six minutes, twenty-two seconds west (S. 65° 36' 22" W.) a distance of one thousand seven hundred twenty-seven and twenty-seven one-hundredths (1727.27) feet; thence south eighty-three degrees, ten minutes, fifty-five seconds east (S. 83° 10' 55" E.) a distance of four thousand fifty-three (4053) feet to a point of tangency on the westerly margin of the Northern Pacific Railway Company's present right-of-way and the northeasterly margin of Montlake boulevard, which point is the true point of beginning; thence southerly along the northeasterly margin of said Montlake boulevard on a curve to the left having a uniform radius of fifty (50) feet a distance of forty-eight and thirty-nine one-hundredths (48.39) feet to a point of tangency; thence south forty-eight degrees, thirty-seven minutes, fifty-eight seconds east (S. 48° 57' 58" E.) continuing on said northeasterly margin a distance of forty-two and sixteen one-hundredths (42.16) feet to a point of tangency on a curve to the right having a curve; thence southerly on a curve to the right having a uniform radius of three thousand six hundred ninety-seven and eighteen one-hundredths (3697.18) feet a distance of one hundred two and sixteen one-hundredths (102.16) feet to a point of tangency; thence south eleven degrees, twenty-one minutes, fifty-two seconds west (S. 11° 21' 52" W.) a distance of seventy-one and eighty-eight one-hundredths

SESSION LAWS, 1915.

thirty-seven minutes, fifty-eight seconds west (N. 48° 57' 58" W.) a distance of fifty-nine and seventy-five one-hundredths (59.75) feet to a point on the westerly margin of the Northern Pacific Railway Company's present right-of-way; thence northerly along said westerly margin on a curve to the left having a uniform radius of four thousand fifty-three (4053) feet a distance of one hundred four and fifty-three one-hundredths (104.53) feet to the true point of beginning; and further to confirm in the city of Seattle by quit-claim deed for public park and parkway purposes the property so to be deeded by the Northern Pacific Railway Company, a corporation, to the said The City of Seattle.

Passed the Senate March 4, 1915.
Passed the House March 10, 1915.
Approved by the Governor March 17, 1915.

## CHAPTER 142.
[S. B. 121.]

### MOTOR VEHICLES.

An Act relating to the use of the public highways, and the rights and remedies of persons thereon, and fixing penalties for a violation of the conditions imposed; and providing for the licensing of motor vehicles and the collecting of fees therefor and repealing sections 5562, 5563, 5564, 5565, 5566, 5567, 5568, 5569, 5570, 5571, 5572, 5573 and 5574 of Remington & Ballinger's Annotated Codes and Statutes of Washington.

*Be it enacted by the Legislature of the State of Washington:*

Section 1. Except as otherwise provided by law this act shall be controlling:

(1) Upon the registration and numbering of motor vehicles;

(2) Upon the use of motor vehicles upon the public highways;

(3) Upon penalties for the violation of any of the provisions of this act.

Sec. 2. The words and phrases herein used, unless the same be clearly contrary to or inconsistent with the context of the act or section in which used, shall be construed as follows:

(1) "Motor vehicle" shall include all vehicles or machines propelled by any power other than muscular, used upon the public highways for the transportation of persons, freight, produce or any commodity, except traction engines temporarily upon the public highway, road rollers or road making machines, and motor vehicles that run upon rails or tracks.

*"Motor vehicle" defined.*

(2) "Automobile" shall mean the ordinary four wheeled motor vehicle, and shall be synonymous with the term "motor vehicle" except as otherwise herein provided;

*"Automobile" defined.*

(3) "Motor cycle" shall mean a motor vehicle of two or three wheels intended for the carrying of one, two or three persons, or operated by one person for the carrying of small parcels or packages;

*"Motor cycle" defined.*

(4) "Auto stage" as distinguished from "automobile" shall mean a motor vehicle used for the purpose of carrying passengers, baggage or freight on a regular schedule of time and rates;

*"Auto stage" defined.*

(5) "Motor truck" shall mean a motor vehicle intended for the purpose of transporting any commodity, produce or freight;

*"Motor truck" defined.*

(6) "Public highway" or "public highways" shall include any highway, state road, county road, public street, avenue, alley, driveway, boulevard or other place built, supported, maintained, controlled or used by the public or by the state, county, district or municipal officers for the use of the public as a highway, or for the transportation of persons or freight, or as a place of travel or communication between different localities or communities;

*"Public highway" defined.*

(7) "Local authorities" shall include the officers of counties, cities or towns or other municipal sub-divisions of the state having control, power or authority over any

*"Local authorities" defined.*

(8) "Peace officer" or "peace officers" shall be taken to mean any officer or officers authorized by law to execute criminal process or to make arrests for the violation of the statutes generally or of any particular statutes relative to the public highways of the state;

*"Peace officer" defined.*

(9) "Dealer" shall be taken to mean any person, firm or corporation engaged in the sale of new or second-hand motor vehicles.

*"Dealer" defined.*

(10) "Privately owned" shall include all motor vehicles not offered for hire.

*"Privately owned" defined.*

(11) "For hire" shall be taken to mean all motor vehicles, other than auto stages, operated for hire.

*"For hire" defined.*

Sec. 8. The secretary of state, acting through the county auditors of the several counties of the State of Washington, as hereinafter provided, shall have the general supervision of the issuing of motor vehicle licenses and of the collecting of fees therefor and shall have full power to do all things necessary and proper to carry out the provisions of this act; he shall have the power to appoint a deputy and such clerk or clerks as may be required from time to time, and may purchase all materials and make all expenditures as may be necessary hereunder.

*Supervision of fees and licenses by secretary of state.*

It shall be the duty of the secretary of state to make and furnish to each county auditor, and to such other persons as may be in any manner responsible for the collecting of the motor tax hereinafter provided for, a tabulated list of all motor vehicles, except motor cycles, giving the make, model, the year built, the weight and horse power and setting opposite each such description the license fee charged therefor.

*Lists furnished to county auditors.*

Sec. 4. No person under fifteen years of age shall operate or drive a motor vehicle upon a public highway unless such person is accompanied by his or her parent, guardian or the owner of such vehicle; no motor vehicle shall be operated upon a public highway without a license having been first obtained therefor, except as hereinafter

*Operating motor vehicle under 15 years of age.*

*Extremity of license.*

SESSION LAWS, 1912.                                    [CH. 154.

successors shall thereupon become and be a corporation having the powers and being subject to the duties and obligations prescribed by the laws of this state applicable to mutual savings banks, and the time of existence of such corporation shall continue for the period of fifty (50) years from the date of the filing of such certificate, unless sooner terminated pursuant to law.

SEC. 2. Upon the conversion of any association into a mutual savings bank, every person who was a shareholder of the association at the time of the conversion shall become and be deemed to be a depositor of the bank in a sum equal to the withdrawal value of his shares as of the day on which the conversion was consummated, and every such depositor shall share in the earnings of the corporation to that day as though the conversion had not been effected: *Provided, however,* That any person who was a shareholder shall be entitled at any time within sixty (60) days after the conversion was consummated to withdraw the value of his shares including his portion of the contingent fund as though no conversion had taken place, and in such case the value of the shares shall not be diminished by any fee, fine, forfeiture or penalty charged, imposed or incurred within one (1) year before the conversion or upon withdrawal.

SEC. 3. All mortgages, notes and other securities of any association that has been converted into a mutual savings bank, shall on request of the bank, be delivered to it by the state auditor or under his direction by any trust company or other depositary having possession thereof. The contingent fund of the association shall become the guaranty fund of the bank; And every such bank shall, as soon as practicable and within such time and by such methods as the state bank examiner may direct, cause its organization, its securities and investments, the character of its business and its methods of transacting the same to

---

CH. 155.                                                SESSION LAWS, 1917.

ings and loan association or society;" the word "director" means one of the managing board of such a corporation; and the word "bank" means "mutual savings bank."

Passed the Senate February 1, 1917.
Passed the House March 6, 1917.
Approved by the Governor March 15, 1917.

## CHAPTER 155.
[H. B. 211.]

### AMENDMENT OF MOTOR VEHICLE ACT.

AN ACT relating to the use of the public highways, and the rights and remedies of persons thereon, and fixing penalties for a violation of the conditions imposed; and providing for the licensing of motor vehicles and the collecting of fees therefor; amending sections 2, 3, 4, 6, 8, 10, 11, 12, 13, 15, 16, 18, 17, 18, 19, 21, 24, 30, 31 and 34 of chapter 142 of the laws of 1915, and repealing section 1531 of Remington & Ballinger's Annotated Codes and Statutes of Washington, and all acts and parts of acts in conflict herewith.

*Be it enacted by the Legislature of the State of Washington:*

SECTION 1. That section 2 of chapter 142 of the Laws of 1915 be amended to read as follows:

Section 2. The words and phrases herein used, unless the same be clearly contrary to or inconsistent with the context of the act or section in which used, shall be construed as follows:

(1) "Motor vehicle" shall include all vehicles or machines propelled by any power other than muscular, used upon the public highways for the transportation of persons, freight, produce or any commodity, except traction engines temporarily upon the public highway, road rollers or road making machines, and motor vehicles that run upon rails or tracks;

(2) "Automobile" shall mean the ordinary four wheeled motor vehicle, and shall be synonymous with the term "motor vehicle" except as otherwise herein provided;

homish county and the city of Marysville in said county be located as follows: Beginning in section 16, township 29 north, range 5 east W. M. at the north end of the Snohomish county bridge number 29 over the Snohomish river; thence in a northerly direction to the present Pacific Highway at the east town limits of the town of Marysville in Snohomish county, section 33, township 30 north, range 5 east W. M.

Sec. 2. The state highway commissioner is hereby directed to survey and definitely locate the route for said highway.

Passed the House, February 5, 1919.
Passed the Senate, February 19, 1919.
Approved by the Governor February 28, 1919.

## CHAPTER 58.
[H. B. 56.]

### DEFICIENCY APPROPRIATION FOR AUTOMOBILE DEPARTMENT OF SECRETARY OF STATE.

An Act making an appropriation for the automobile department of the Secretary of State, and providing when this act shall take effect.

Be it enacted by the Legislature of the State of Washington:

Section 1. There is hereby appropriated out of the general fund twenty-four thousand five hundred sixty-seven and 07/100 dollars ($24,567.07), or so much thereof as may be necessary for the use of the automobile department of the Secretary of State for the purchase of number plates of autos, trucks and motorcycles, deputy, clerk hire, traveling expenses, supplies, postage and incidentals.

---

Sec. 2. This act is necessary for the immediate support of the state government and its existing public institutions, and shall take effect immediately.

Passed the House, January 31, 1919.
Passed the Senate, February 11, 1919.
Approved by the Governor February 28, 1919.

## CHAPTER 59.
[S. B. 222.]

### AMENDMENTS OF MOTOR VEHICLE LAWS.

An Act relating to the use of the public highways, and the rights and remedies of persons thereon, and fixing penalties for a violation of the conditions imposed; and providing for the licensing of motor vehicles and the collecting of fees therefor; amending sections 6, 14 and 26, of chapter 142, Laws of 1915, and sections 2, 3, 4, 8, 11, 12, 19, 21, 30 and 34 of 1915, and sections 2, 3, 4, 8, 11, 12, 19, 21, 30 and 34 of 1915, as amended by chapter 155, Laws chapter 142, Laws of 1915, as amended by chapter 155, Laws of 1917, and repealing section 6, chapter 142, Laws of 1917, and section 21, as amended by chapter 155, Laws of 1917, and section 21, chapter 155, Laws of 1917.

Be it enacted by the Legislature of the State of Washington:

Section 1. That section 2 of chapter 142, Laws of 1915, as amended by chapter 155, Laws of 1917, be amended to read as follows:

Section 2. The words and phrases herein used, unless the same be clearly contrary to or inconsistent with the context of the act or section in which used, shall be construed as follows:

(1) "Motor vehicle" shall include all vehicles or machines propelled by any power other than muscular, used upon the public highways for the transportation of persons, freight, produce or any commodity, except traction engines temporarily upon the public highway, road rollers or road making ma-

Case 1:22-cv-00137-SPW-TJC   Document 2-1   Filed 12/08/22   Page 104 of 152

three persons, or operated by one person for the carrying of small parcels or packages;

(4) "Auto stage" as distinguished from "automobile" shall mean a motor vehicle used for the purpose of carrying passengers and baggage on a regular schedule of time and rates: *Provided, however*, That no motor vehicle shall be considered an auto stage where the whole route traveled by such vehicle is within the corporate limits of any incorporated city;

(5) "Motor truck" shall mean any motor vehicle designated or used for the transportation of commodities, merchandise, produce, freight or animals;

(5a) "Trailer" shall mean any vehicle which is attached to a motor vehicle for the purpose of being drawn or propelled by such motor vehicle;

(6) "Public highway" or "public highways" shall include any highway, state road, county road, public street, avenue, alley, driveway, boulevard or other place built, supported, maintained, controlled or used by the public or by the state, county, district or municipal officers for the use of the public as a highway, or for the transportation of persons or freight, or as a place of travel or communication between different localities or communities;

(7) "Local authorities" shall include the officers of counties, cities or towns or other municipal sub-divisions of the state having control, power or authority over any of the subject matter embraced within this act;

(8) "Peace officer" or "peace officers" shall be taken to mean any officer or officers authorized by law to execute criminal process or to make arrests for the violation of the statutes generally or of any particular statutes relative to the public highways of the state;

(9) "Dealer" shall be taken to mean any person, firm or corporation engaged in the sale of new or second-hand motor vehicles;

(11) "For hire" shall be taken to mean all motor vehicles, other than auto stages, used for the transportation of persons, for which transportation remuneration of any kind is received, either directly or indirectly."

Sec. 2. That section 3 of chapter 142 of the Laws of 1915 be amended to read as follows:

Section 3. The secretary of state, acting through the county auditors of the several counties of the State of Washington as hereinafter provided, shall have the general supervision of the issuing of motor vehicle licenses and of the collecting of fees therefor and shall have full power to do all things necessary and proper to carry out the provisions of this act; he shall have the power to appoint a deputy and such clerk or clerks as may be required from time to time, and may purchase all materials and make all expenditures as may be necessary hereunder.

It shall be the duty of the secretary of state to make and furnish to each county auditor, and to such persons as may be in any manner responsible for the collecting of the motor tax hereinafter provided for, a tabulated list of all motor vehicles, except motor cycles, giving the make, model, the year built and horse power and setting opposite each such description, the license fee charged therefor.

Sec. 3. That section 4 of chapter 142 of the Laws of 1915 be amended to read as follows:

Section 4. No person under fifteen years of age shall operate or drive a motor vehicle upon a public highway unless such person is accompanied by his or her parent, guardian, or the owner of such vehicle; no motor vehicle shall be operated upon a public highway without a license having been first obtained therefor, excepting as hereinafter provided: *Provided, however*, No motor vehicle for hire shall be operated by any person under the age of twenty-one years.

Sec. 4. That section 6 of chapter 142 of the Laws of 1915 be amended to read as follows:

Section 6. Upon receipt of such application accom-

14

chines, and motor vehicles that run upon rails or tracks;

Automobile.

(2) "Automobile" shall mean the ordinary four-wheeled motor vehicle, and shall be synonymous with the term "motor vehicle" except as otherwise herein provided;

Motor cycle.

(3) "Motor cycle" shall mean a motor vehicle of two or three wheels intended for the carrying of one, two or three persons, or operated by one person for the carrying of small parcels or packages;

(4) "Auto stage" as distinguished from "automobile," shall mean a motor vehicle used for the purpose of carrying passengers, baggage and freight on a regular schedule of time and rates: Provided, however, that no motor vehicle shall be considered an auto stage where the whole route traveled by such vehicle is within the corporate limits of any incorporated city;

Motor truck.

(5) "Motor truck" shall mean any motor vehicle designed or used for the transportation of commodities, merchandise, produce, freight or animals;

Trailer.

(5a) "Trailer" shall mean any vehicle which is attached to a motor vehicle for the purpose of being drawn or propelled by such motor vehicle;

Public highway.

(6) "Public highway" or "public highways" shall include any highway, state road, county road, public street, avenue, alley, driveway, boulevard or other place built, supported, maintained, controlled or used by the public or by the state, county, district or municipal officers for the use of the public as a highway, or for the transportation of persons as a highway, or as a place of travel or communication between different localities or communities;

(7) "Local authorities" shall include the officials...

authority over any of the subject matter embraced in this act;

Peace officers.

(8) "Peace officer" or "peace officers" shall be taken to mean any officer or officers authorized by law to execute criminal process or to make arrests for the violation of the statutes generally or of any particular statutes relative to the public highways of the state;

Dealer.

(9) "Dealer" shall be taken to mean any person, firm or corporation engaged in the sale of new or second-hand motor vehicles;

Privately owned.

(10) "Privately owned" shall include all motor vehicles not offered for hire;

For hire.

(11) "For hire" shall be taken to mean all motor vehicles, other than auto stages, used for the transportation of persons, for which transportation remuneration of any kind is received, either directly or indirectly and shall include motor hearses, dead wagons and ambulances.

Sec. 2. [Vetoed.]

Sec. 3. That section 4, chapter 142, Laws of 1915, as amended by chapter 155, Laws of 1917, be amended to read as follows:

Section 4. No person under fifteen years of age shall operate or drive a motor vehicle upon a public highway unless such person is accompanied by his or her parent, guardian, or the owner of such vehicle; no motor vehicle shall be operated upon a public highway without a license having been first obtained therefor, excepting as hereinafter provided: Provided, however, no motor vehicle for hire or auto stage shall be operated by any person under the age of twenty-one years.

Sec. 4. That section 5, chapter 142, Laws of 1915 is hereby amended to read as follows:

Section 5. for a motor vehicle li-

of such county on the books of the state auditor in excess of the amount necessary to pay all contracts then outstanding for the payment of which such fund is or may become liable to the payment of such interest or to such sinking fund. There shall be set forth in such resolution statements showing, first, the amount of all taxes levied in such county for the permanent highway fund which have not been remitted to the state auditor or which remain uncollected and, second, all contracts for the payment of which the permanent highway fund credited to such county is or may become liable. The commissioners may apply such amount to the payment of interest or into the sinking fund without levying the tax required by law to be levied for such purposes, or the commissioners may, in addition to the amount so applied, levy a tax in addition thereto either to raise funds for the payment of interest or for the redemption of such bonds. A certified copy of such resolution shall be transmitted to the state auditor and upon receipt thereof, he shall transmit the amount so applied to the county treasurer who shall credit the same to the proper accounts for the purposes stated in such resolution.

Sec. 2. That section 1 of chapter 118 of the Laws of 1917, be amended to read as follows:

Section 1. There is hereby created in each county of the state a county fund to be known as the county permanent highway maintenance fund. The county officers of the various counties having the custody and disposition thereof are directed to set aside and place to the credit of said fund all moneys received from the state as provided in section 18, chapter 142 of the Laws of 1915, and all acts amendatory thereof and supplementary thereto, and the per centum of the permanent highway fund as provided in section

---

the resolution of the board of county commissioners at their first meeting after the taking effect of this act for the year 1921 and at their January meeting in each succeeding year, shall be retained by the county treasurer and placed to the credit of the permanent highway maintenance fund of said county.

Sec. 3. This act is necessary for the immediate preservation of the public peace, health and safety, for the support of the state government and its existing public institutions and shall take effect immediately.

Passed the Senate February 26, 1921.
Passed the House March 2, 1921.
Approved by the Governor March 16, 1921.

## CHAPTER 96.
[S. B. 220.]

### MOTOR VEHICLES.

An Act relating to the use of the public highways and the rights and remedies of persons thereon, providing for the licensing of motor vehicles and collecting, distribution and expenditure of fees therefor, fixing penalties for violations thereof, and repealing Chapter 183 of the Laws of 1915, and Chapter 142 of the Laws of 1915.

Be it enacted by the Legislature of the State of Washington:

Section 1. Except as otherwise provided by law this act shall be controlling:
(1) Upon the registration and numbering of motor vehicles;
(2) Upon the use of motor vehicles upon the public highways;
(3) Upon penalties for the violation of any of

or used by the public or by the state, county, district or municipal officers for the use of the public as a highway, or for the transportation of persons or freight, or as a place of travel or communication between different localities or communities;

(8) "Local authorities" shall include the officers of counties, cities or towns or other municipal subdivisions of the state having control, power or authority over any of the subject matter embraced in this act; *"Local authorities" defined.*

(9) "Peace officer" or "peace officers" shall be taken to mean any officer or officers authorized by law to execute criminal process or to make arrest for the violation of the statutes generally or of any particular statutes relative to the public highways of the state; *"Peace officer" defined.*

(10) "Dealer" shall be taken to mean any person, firm or corporation engaged in the sale of new or second-hand motor vehicles; *"Dealer" defined.*

(11) "Privately owned" shall include all motor vehicles not operated for hire, and shall include hearses, ambulances, or any other motor propelled vehicle used exclusively in connection with the conduct of funerals. *"Privately owned" defined.*

(12) "For hire" shall be taken to mean all motor vehicles other than auto stages, used for the transportation of persons, for which transportation or remuneration of any kind is received, either directly or indirectly. *"For hire" defined.*

(13) The word "Operator" wherever used in this act shall be held to mean any person who operates or drives a motor vehicle. *"Operator" defined.*

Sec. 3. The secretary of state, acting through the county auditors of the several counties of the state of Washington as hereinafter provided, shall have the general supervision of the issuing of motor vehicle licenses and of the collecting of fees therefor *Supervision of fees and licenses.*

Sec. 2. The words and phrases herein used, unless the same be clearly contrary to or inconsistent with the context of the act or section in which used, shall be construed as follows:

(1) "Motor vehicle" shall include all vehicles or machines propelled by any power other than muscular, used upon the public highways for the transportation of persons, freight, produce or any commodity, except traction engines temporarily upon the public highway, road rollers or road making machines, and motor vehicles that run upon fixed rails or tracks; [tracks]

(2) "Automobiles" shall mean the ordinary four-wheeled motor vehicles, and shall be synonymous with the term "motor vehicle" except as otherwise herein provided;

(3) "Motor cycle" shall mean a motor vehicle of two or three wheels intended for the carrying of one, two or three persons, or operated by one person for the carrying of parcels or packages;

(4) "Auto stage" as distinguished from "automobile" shall mean a motor vehicle used for the purpose of carrying passengers, baggage and freight on a regular schedule of time and rates: *Provided, however,* That no motor vehicle shall be considered an auto stage where the whole route traveled by such vehicle is within the corporate limits of any incorporated city;

(5) "Motor truck" shall mean any motor vehicle designed or used for the transportation of commodities, merchandise, produce, freight or animals;

(6) "Trailer" shall mean any vehicle which is attached to a motor vehicle for the purpose of being drawn or propelled by such motor vehicle;

(7) "Public highway" or "public highways" shall include any highway, state road, county road, street, alley, alleyway, driveway, boulevard or

1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DEPARTMENT OF JUSTICE

WASHINGTON, D.C.

| | |
|---|---|
| David R. Myrland, Kurt R. Riggin, and We the People, | ) No. [ **please assign file number** ] ) |
| Citizen Complainants, | ) MEMORANDUM IN SUPPORT of |
| | ) 18 U.S.C. § 4 Misprision of felony |
| vs. | ) complaint; misenforcement of state law ) in the furtherance of racketeering and |
| | ) extortion scheme(s). |
| STATE OF WASHINGTON, CHRISTINE | ) |
| GREGOIRE, LIZ LUCE, KING COUNTY Wa., | ) |
| SNOHOMISH COUNTY, PIERCE COUNTY, | ) |
| DAVID REICHERT, SUSAN RAHR, | ) |
| RICHARD BART, PAUL PASTOR, MICHAEL | ) |
| HURTADO, TEDDY CHOW, NORMAN | ) |
| MALENG, T. McALLISTER, CITY OF | ) |
| KIRKLAND, KENYON DORNAY MARSHALL | ) |
| LAW FIRM, MARGITA DORNAY, and all those | ) |
| similarly situated or involved, | ) |
| DEFENDANTS. | ) |

## I. <u>INTRODUCTION</u>.

    1.1   COMES NOW, Complainants hereto (hereinafter singular masculine "Complainant"), seeking to provide in brief his contention that RCW 46 does not apply to

MEMORANDUM IN SUPPORT of 18 U.S.C. § 4 Misprision of felony complaint.    Page 1 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

public vehicular travelers and that it has been misapplied to them by the Defendants and each of them in the furtherance of extortion and racketeering activities run from public office. Complainant has supported his claims with prominent authorities and has presented questions that shall aid in focusing on the issues at hand. All recipients of this memorandum are hereby on mandatory notice of all provisions of authorities cited herein.

1.2 Federal law enforcement authorities will find that the Defendants have purposely misapplied Revised Code of Washington (hereinafter "RCW") 46 Motor Vehicles to public vehicular travelers, said provisions applicable only to those engaged in commerce upon the highways as a matter of statute. **Appendix A** attached hereto is a copy of WA Sessions Laws relied upon in part by the Complainant.

1.3 The Washington state legislature has never enacted any law which operates upon public vehicular travelers. Upon due consideration of the issues presented herein, the DOJ will find that the legislature of Washington state has never broadened the term "motor vehicle" in scope to include the activity of public vehicular travel. Defendants will hereafter be referred to in singular masculine as "he" and "Defendant." The U.S. Department of Justice shall hereafter be referred to as "DOJ." *Any and all emphasis employed herein* may be construed to have been added.

## II. ISSUES & AUTHORITIES.

### A. Enforcement must be within statutory limitations of authority.

2.1 Complainant charges that statutory parameters are controlling, and that the Defendant has intentionally and with intent to extort property from public vehicular travelers engaged in the exercise of a common right sums only owed by those engaged in the "operation of a motor vehicle" which is a State granted privilege provided for under the provisions of RCW 46 Motor Vehicles. Were it not for this misconduct on the part of the Defendant, Complainant would enjoy private vehicular travel on public highways as a matter of right. Because this claim involves assessing the weight and construction of statute, it is important to state that the judicial and executive branches have no authority to read into the law that which is not expressly manifest in its terms. "Whether the legislature acted wisely by creating the challenged restriction is not a proper subject for judicial determination. *McKinney v. Estate of*

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.        Page 2 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

*McDonald,* 71 Wash.2d 262, 264, 427 P.2d 974 (1967); *Port of Tacoma v. Parosa,* 52 Wash.2d 181, 192, 324 P.2d 438 (1958). The fact that the legislature made no exception for minors does not give rise to some latent judicial power to do so by means of a volunteered additional proviso. This is true even if it could be said the legislative omission was inadvertent. *State v. Roth,* 78 Wash.2d 711, 715, 479 P.2d 55 (1971); *Boeing v. King County,* 75 Wash.2d 160, 166, 449 P.2d 404 (1969); *State ex rel. Hagan v. Chinook Hotel,* 65 Wash.2d 573, 578, 399 P.2d 8 (1965); *Vannoy v. Pacific Power and Light Company,* 59 Wash.2d 623, 629, 369 P.2d 848 (1962). If there is a need for such an exception, it must be initiated by the legislature, not by the courts. *Boeing v. King County, supra; State ex rel. Hagan v. Chinook Hotel, supra.*" [1]

"The particular need for making the judiciary independent was elaborately pointed out by Alexander Hamilton in the Federalist, No.78, from which we excerpt the following:

> "The executive not only dispenses the honors, but holds the sword of the community. The legislature not only commands the purse, but prescribes the rules by which the duties and rights of every citizen are to be regulated. The judiciary, on the contrary, has no influence over either the sword or the purse; no direction either of the strength or of the wealth of the society; and can take no active resolution whatever. It may truly be said to have neither force nor will, but merely judgment." [2]

2.2 "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the court is to enforce it according to its terms. *Lake County v. Rollins,* 130 U.S. 662, 670, 671; *Bate Refrigerating Co. v. Sulzberger,* 157 U.S. 1, 33; *United States v. Lexington Mill and Elevator Co.,* 232 U.S. 399, 409; *United States v. Bank,* 234 U.S. 245, 258." [3] An agency with no statutory authority is one with no authority whatsoever. [4]

///

---

[1] See *Cook v. State,* 83 Wash.2d 725, 735, 521 P.2d 725 (1974).
[2] See *Evans v. Gore,* 253 U.S. 245, 249, 40 S.Ct. 550, 551 (1920).
[3] See *Carminetti v. U.S.,* 242 U.S. 470, 485, 489-493 (1916).
[4] See *Brown & Williamson v. F.D.A.,* 153 F.3d 155, 160-167 (CA4 1998), aff'd. 529 US 120 (2000) argued 12/1/99, decided 3/21/00, FDA found to have no statutory authority to regulate tobacco products, and found to have created such authority through regulation. The appellate level decision is a meticulous dissection and analysis of the Act in question, illustrating the role of Public Laws in weighing the intent of the legislative body enacting a particular statute.

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.        Page 3 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

2.3 The DOJ can see from this dialog that legislation and its intent are the governing factors in determining unlawfulness or legality, and that no agency or court has the authority to deviate from it, or expand its application to subjects not expressly implicated. All agency action, therefore, must find itself within the confines of legislative mandate, and those acts committed without statutory grace are unlawful, *e.g., the poisonous tree.* [5]

### B. Statutory interpretation must be strict.

2.4 With the understanding that statutory language must govern any determination that certain activity or conduct is unlawful, or that duties are imposed by law, an explanation of how to interpret said language, as instructed by the courts, is appropriate.

"The *parties provide vastly differing interpretations of the statutory language*, and *both contend that the language clearly supports their position.*"

"The Commissioner's argument has considerable force, if one focuses solely on the language of sections 1281 and 1283 and divorces them from the broader statutory context. But we cannot do that. The Supreme Court has noted that, "*the true meaning of a single section of a statute in a setting as complex as that of the revenue acts, however precise its language, cannot be ascertained if it be considered apart from related sections, or if the mind be isolated from the history of the income tax legislation of which it is an integral part.*" (Cite omitted) According to the Court, the construing court's duty is "*to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested.*"" (Cite omitted) The circumstances of the enactment of particular legislation may be particular relevant to this inquiry. (Cite omitted) *Finally, when there is reasonable doubt about the meaning of a revenue statute, the doubt is resolved in favor of those taxed.* (Cite omitted)

As in all cases of statutory interpretation, *we must start with the text of the statute.* But we cannot simply focus on sections 1281 through 1283 because they do not exist in a vacuum. *Rather, we must consider the context provided by the more general statutory scheme of which [they] are a part.*" [6]

"We are not convinced that the language is as clear as the Commissioner contends." [7]

---

[5] See *U.S. v. Patzer*, Ninth Circuit Court of Appeals, No. 00-30360, Appeal from the United States District Court for the District of Idaho. Argued and Submitted on November 5, 2001, Seattle, Washington, Filed January 14, 2002.
[6] See *Security Bank of Minnesota v. Commissioner of IRS*, 994 F.2d 432, 435-36 (CA8 1993).
[7] *Id.*, at 438.

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 4 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

1
2
3
4

"An examination of the statutory context, ***the text of the relevant provisions***, and the legislative history convinces us that the construction that is "most harmonious with its scheme and with the general purposes that Congress manifested." (Cite omitted) Moreover, because the application of [the provision] to these loans is ambiguous, we follow the venerable rule that "[i]n the interpretation of statutes levying taxes . . . ***[courts must not] enlarge their operation so as to embrace matters not specifically pointed out***. In case of doubt they are construed most strongly against the government."

5
6
7

"'I respectfully dissent. If the [statutory] intent of Congress is clear, that is the end of the matter.' *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)." [8]

8
9
10

2.5 This explanation of how to interpret statute only confirms the assertion that statute must clearly implicate particular or certain conduct or activities, or subject of taxation, for such to be deemed unlawful or taxable. [9] Next, one should examine statutes under which the authorities have sought, or will seek, to halt certain conduct or to tax certain objects.

11
12

### C. Definitions and *Expressio unius est exclusio alterius*.

13
14

2.6 Complainant is challenging the statutory authority of the Defendant, and does so with statutory definitions. A "definition" by its terms excludes non-essential elements by mentioning only those things to which it shall apply.

15
16
17
18
19

"**Define**. To explain or state the exact meaning of words and phrases; to state explicitly; to limit; to determine essential qualities of; to determine the precise signification of; to settle; to establish or prescribe authoritatively; to make clear. (Cite omitted)"
    "To "define" with respect to space, means to set or establish its boundaries authoritatively; to mark the limits of; to determine with precision or exhibit clearly the boundaries of; to determine the end or limit; to fix or establish the limits. It is the equivalent to declare, fix or establish.

20
21
22

"**Definition**. A description of a thing by its properties; an explanation of the meaning of a word or term. The process of stating the exact meaning of a word by means of other words. Such a description of the thing defined, including all essential elements and excluding all nonessential, as to distinguish it from all other things and classes." [10]

23
24

2.7 A statutory definition's failure to mention the conduct of the Complainant as a privilege that to which the provisions of RCW 46 attaches is ample basis to refrain from

---

[8] *Id.*, at 441.
[9] See *Brown & Williamson v. F.D.A.*, *supra*.
[10] See *Black's*, 6th Edition, "define" and "definition."

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

25
26

1  applying said scheme to him, and to deem his public vehicular travel as that to which RCW 46
2  does not apply.

3      "*In construing a statute, it is safer always not to add to, or subtract from, the*
4      *language of the statute* unless imperatively required to make it . . .rationale . . ." *State*
       *v. Taylor*, 97 Wn.2d 724, 728, 649 P.2d 633 (1982); *McKay v. Department of Labor &*
5      *Indus.*, 180 Wash. 191, 194, 39 P.2d 997, 98 A.L.R. 990 (1934)." [11]

6      "*A well established general rule is that where a statute expressly provides for stated*
       *exceptions, no other exceptions will be implied. Insurance Co. of N. Am. Co. v.*
7      *Sullivan*, 56 Wn.2d 251, 352 P.2d 193 (1960), and cases cited therein. See also, *In re*
       *Hoss' Estate*, 59 Wash. 360, 109 Pac. 1071 (1910), in which the function of a proviso
8      was described as follows:

9          "The office of a proviso generally is either to except something from the enacting
10         clause, or to qualify or restrain its generality, or to exclude some possible ground of
           misinterpretation of it, as extending to cases not intended by the legislature to be
11         brought within its purview; . . ." (Wash.) Attorney General Opinion 65-66 No.69.

12     ". . . *It is the rule that in construing statutes the mention of one thing implies the*
       *exclusion of another* thing under the maxim of *expressio unius est exclusio alterius.*
13     *State ex rel. Port of Seattle v. Dept. P.S.*, 1 Wn.2d 102, 95 P.2d 1007 (1939); *State v.*
       *Thompson*, 38 Wn.2d 774, 232 P.2d 87 (1951); *Bradley v. Dept. Labor & Ind.*, 52
14     Wn.2d 780, 329 P.2d 196 (1958)." (Wash.) AGO 65-66 No. 69. . . .This conclusion is
       further supported by the *well established rule of constitutional construction*,
15     "expressio unius est exclusio alterius." *The express mention of one thing implies the*
       *exclusion of the other*. *State ex rel. Banker v. Clausen*, 142 Wash. 450, 253 Pac. 805
16     (1927)." [12]

17     "A maxim of statutory interpretation meaning that the *expression of one thing is the*
18     *exclusion of another*. *Burgin v. Forbes*, 293 Ky. 456, 169 S.W.2d 321, 325; *Newblock*
       *v. Bowles*, 170 Okl. 487, 40 P.2d 1097, 1100. *Mention of one thing implies the*
19     *exclusion of another*. When certain persons or thing are specified are specified in law,
       contract, or will, *an intention to exclude all others from its operation may be inferred*.
20     Under this maxim, if statute specifies one exception to a general rule or assumes to
       specify the effects of a certain provision, *other exceptions or effects are excluded*." [13]

21

22     ———————————————
       [11] See *State v. Edwards*, 104 Wn.2d 63, 68, 701 P.2d 508 [No.50532-2.En Banc.6/13/85].
23     [12] See *Yelle v. Bishop*, 55 Wn.2d 286, 295, 306 (1959). See also *Cook v. State*, 83 Wash.2d 725, 735, 521 P.2d 725
       (1974)("Whether the legislature acted wisely by creating the challenged restriction is not a proper subject for
24     judicial determination. (cite omitted) The fact that the legislature made no exception for minors does not give rise
       to some latent judicial power to do so by means of a *volunteered additional proviso*. This is true even if it could be
25     said the legislative omission was inadvertent. (cite omitted) If there is a need for such an exception, *it must be*
       *initiated by the legislature, not by the courts*. (cite omitted)").
26     [13] See *Black's*, 6th Edition, definition of "*expressio unius est exclusio alterius*."

1   *"Definitions are integral to statutory scheme and of highest value in determining*
    *legislative intent. . . . To ignore definition section is to refuse to give legal effect to*
2   *part of statutory law of state.*" [14]

3   "When legislative body provides definition for statutory terms, *it is that definition to*
    *which a person must conform his conduct.*" [15]
4

5   "This Court recognizes the maxim *expressio unius est exclusio alterius*; that the
    *express mention in a statute of one thing implies the exclusion of other similar things.*
6   *Stowers v. Wolodzko*, 386 Mich. 119; 191 N.W.2d 355 (1971). . . . *[N]o part of a statute*
    *should be treated as mere surplusage or rendered nugatory. Smith v. Employment*
7   *Security Comm*, 410 Mich. 231; 301 N.W.2d 285 (1981)." [16]

8   "Another pertinent rule of statutory construction provides that "*inclusion by specific*
    *mention excludes what is not mentioned.*" *Van Sweden v. Van Sweden*, 250 Mich. 238,
9   241; 230 NW 191 (1930). *Statutory exceptions are to be accorded limited, rather than*
    *expansive construction*:
10

11      [It] *is not the province of this court to make an exception where the legislature*
        *has made none*. The rule of construction is that *the exception, if any, shall appear*
12      *in the act.*" [17]

13      2.8 When a court is confronted with a challenge based on statutory definitions the

14  Supreme Court is clear in its prescription that the specific terms of such a definition must be

15  "met" to trigger applicability of its related statutes to any particular act, person (natural or

16  otherwise), or item.

17      "*Metropolitan was subject* to Title VII, however, *only if, at the time* of the alleged
    *retaliation, it met the statutory definition* of "*employer,*" *to wit*: "a person engaged in
18  an industry affecting commerce who has fifteen or more employees for each working
    day in each of twenty or more calendar weeks in the current or preceding calendar
19  year." 42 U.S.C. Section(s) 2000e(b). . . . *Statutes must be interpreted, if possible, to*
    *give each word some operative effect.*"
20

21  ". . . We agree with petitioners that *the ultimate touchstone under Section(s) 2000e(b)*
    is whether an employer has employment relationships with 15 or more individuals for
22  each working day in 20 or more weeks during the year in question."

23  _____
    [14] See *State v. Taylor*, 30 Wash.App. 89, 632 P.2d 892 (1981).
24  [15] See *City of Seattle v. Koh*, 26 Wash.App. 708, 614 P.2d 665 (1980).
    [16] See *Bradley v. Saranac Community Schools Bd. of Educ.*, 455 Mich. 285, 565 N.W.2d 650 (1997).
25  [17] See *Arends v. Grand Rapids R Co*, 172 Mich. 448, 450-451; 138 NW 195 (1912). See also *Northville Coach
    Line, Inc v. Detroit*, 379 Mich. 317, 329; 150 N.W.2d 772 (1967) (plurality opinion); *Rzepka v. Farms Estates,
    Inc*, 83 Mich. App 702, 707; 269 N.W.2d 270 (1978).
26

MEMORANDUM IN SUPPORT of 18 U.S.C.                          David R. Myrland / Kurt R. Riggin
§ 4 Misprision of felony complaint.          Page 7 of 37   6619 132nd Ave. NE #100
                                                            Kirkland, WA  98033

"*. . . Therefore, Metropolitan was an "employer" within the meaning of Section(s) 2000e(b) for purposes of petitioners' retaliatory-discharge claim*. The judgment of the Court of Appeals is reversed . . ." [18]

"A new § 208(a) directed the Attorney General to establish procedures permitting aliens either in the United States or at our borders to apply for "asylum." 8 U.S.C. § 1158(a). *Under § 208(a), in order to be eligible for asylum, an alien must meet the definition of "refugee" contained in § 101(a)(42)(A), a standard that also would qualify an alien seeking to immigrate under § 207*. Meeting the definition of "refugee," however, does not entitle the alien to asylum -- the decision to grant a particular application rests in the discretion of the Attorney General under § 208(a)." [19]

"In the terms of § 4(a), the issue turns on whether the city is, for bailout purposes, either a "State with respect to which the determinations have been made under the third sentence of subsection (b) of this section" or a "political subdivision with respect to which such determinations have been made as a separate unit," the "determinations" in each instance being the Attorney General's decision whether the jurisdiction falls within the coverage formula of § 4(b). On the face of the statute, *the city fails to meet the definition for either term*, since the coverage formula of § 4(b) has never been applied to it. Rather, the city comes within the Act because it is part of a covered State. *Under the plain language of the statute, then, it appears that any bailout action to exempt the city must be filed by, and seek to exempt all of, the State of Georgia.*" [20]

"Interpreting that provision, Illinois defines a "foster family home" as a facility for child care in residences of families who receive no more than 8 children unrelated to them . . . for the purpose of providing family care and training for the children on a full-time basis. . . . Ill.Ann.Stat., ch. 23, § 2212.17 (Supp. 1978) (emphasis added). *Homes that do not meet the definition may not be licensed*, and, under state law, only licensed facilities are entitled to Foster Care payments." [21]

"Those courts have recognized that the only method Congress deemed effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great. . . . *Thus, Congress did not reach every transaction in which an investor actually relies on inside information. A person avoids liability if he does not meet the statutory definition of an "insider*[.]" [22]

---

[18]  See *Walters v. Metropolitan Enterprises, Inc. et al.*, 519 U.S. 202 (1997), excerpts in group appear throughout opinion. *Metropolitan* also cited in *Nat'l Railroad Passenger Corp. v. Morgan*, U.S. Supreme Court #00-1614 (2002), at lead opinion fn.5; *Duncan v. Walker*, 533 U.S. 167, 175 (2001); *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, SOUTER, J. lead opinion at fn.8; *Williams v. Taylor*, 529 U.S. 420, 431 (2000).

[19]  See *INS v. Stevic*, 467 US 407, lead opinion at fn.18 (1984).

[20]  See *City of Rome v. US*, 446 US 156, 167 (1980).

[21]  See *Miller v. Youakim*, 440 US 125, 131 (1979).

[22]  See *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 US 418, 422 (1972).

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 8 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

2.9 FURTHER, while the maxim of *expressio unius est exclusio alterius* is broader in its scope than to address only statutory definitions, this clear and consistent pattern shows such definitions wholly deserving of its influence and control.

2.10 This repeated and recent recurrence of this principle, the strict interpretation and application of statutory definitions, shows the challenges made herein regarding such are guided by this canon of statutory construction and do indeed point to enhancements, expansions, derogations, or other obfuscation of legislative branch mandate. The absence of solid affirmation that indeed those challenges are unfounded, accompanied by logical and authoritatively supported refutation rooted in accepted principles and standards, is validation of precisely what is claimed and complained of herein relating to statutory definitions.

2.11 From the authorities cited above it is readily gleaned that clear language must govern, that statute must clearly implicate the Complainant as having engaged in a *privilege*, or he must be deemed to be without the scope of the subject legislation.

### D. Void for vagueness and clear statutory language.

2.12 There are certain constraints on the parameters of enforcement of legislative mandate, certain things that cannot be accomplished if a statute is determined to be written in a way so as to prevent the individual of average intelligence from understanding its terms. If a statute is unreasonably vague, if its language is not sufficient to explain its intent or application, it may be held to be *void for vagueness*. Below are several expressions of this standard of due process, all of which are from the U.S. Supreme Court.

> "We agree with the holdings of the District Court and the Court of Appeals on the due process doctrine of vagueness. The settled principles of that doctrine require no extensive restatement here. (fn.7) ***The doctrine incorporates notions of fair notice or warning.*** (fn.8) ***Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement."*** (fn.9) Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts. (fn.10) The statutory language at issue here, "publicly... treats contemptuously the flag of the United States...," has such scope, e.g., *Street v. New York*, 394 U.S. 576

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

(1969) (verbal flag contempt), and at the relevant time was without the benefit of judicial clarification. (fn.11)" [23]

"Appellant's second argument, that 26-2101(c) is void for vagueness, also raises a substantial federal question-one of first impression in this Court-even though appellant fundamentally misapprehends the reach of the First Amendment in his argument that the protections of that Amendment extend to the sexual devices involved in this case. As we said in *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972):

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, *we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning.* Second, if arbitrary and discriminatory enforcement is to be prevented, *laws must provide explicit standards* for those who apply them. *A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.*" (Footnotes omitted.)

"See also *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972); *Cline v. Frink Dairy Co.*, 274 U.S. 445, 47 S. Ct. 681 (1927); *Connally v. General Construction Co.*, 269 U.S. 385 (1926)." [24]

---

[23] See *Smith v. Gougen*, 415 U.S. 566, 572 (1974). The Court's footnotes for this paragraph are as follows:

6. Appellant correctly conceded at oral argument that Goguen's case is the first recorded Massachusetts court reading of this language. Tr. of Oral Arg. 17-18. Indeed, with the exception of one case at the turn of the century involving one of the statute's commercial misuse provisions, *Commonwealth v. R. I. Sherman Mfg. Co.*, 189 Mass. 76, 75 N.E. 71 (1905), the entire statute has been essentially devoid of state court interpretation.

7. The elements of the "void for vagueness" doctrine have been developed in a large body of precedent from this Court. The cases are categorized in, e.g., *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972). See Note, *The Void for Vagueness Doctrine in the Supreme Court*, 109 U.Pa.L.Rev. 67 (1960).

8. *E.g.*, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972); *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939) ("*No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids*") (citations omitted); *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926) ("*[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law*") (citations omitted).

9. *E.g.*, *Grayned, supra* at 108; *United States v. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921) ("[T]o attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury"); *United States v. Reese*, 92 U.S. 214, 221 (1876) ("*It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large*").

10. *E.g.*, *Grayned, supra*, at 109; *Smith v. California*, 361 U.S. 147, 151 (1959). Compare the less stringent requirements of the modern vagueness cases dealing with purely economic regulation. *E.g.*, *United States v. National Dairy Products Corp.*, 372 U.S. 29 (1963) (Robinson-Patman Act).

11. See fn. 6, *supra*.

[24] See *Sewell v. Georgia*, 435 U.S. 982, 985 (1978).

---

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 10 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

"This ordinance is void for vagueness, both in the sense that it "*fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute*," *United States v. Harriss*, 347 U.S. 612, 617, **and because it encourages arbitrary and erratic arrests and convictions**. *Thornhill v. Alabama*, 310 U.S. 88; *Herndon v. Lowry*, 301 U.S. 242."

"*Living under a rule of law entails various suppositions, one of which is that "[all persons] are entitled to be informed as to what the State commands or forbids*." *Lanzetta v. New Jersey*, 306 U.S. 451, 453."

"*Lanzetta* is one of a well-recognized group of cases **insisting that the law give fair notice of the offending conduct**. See *Connally v. General Construction Co.*, 269 U.S. 385, 391; *Cline v. Frink Dairy Co.*, 274 U.S. 445; *United States v. Cohen Grocery Co.*, 255 U.S. 81. In the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed. *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337; *United States v. National Dairy Products Corp.*, 372 U.S. 29; *United States v. Petrillo*, 332 U.S. 1." [25]

"**It is a fundamental tenet of due process that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes**." *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). **A criminal statute is therefore invalid if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden**." *United States v. Harriss*, 347 U.S. 612, 617 (1954). See *Connally v. General Construction Co.*, 269 U.S. 385, 391-393 (1926); *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972); *Dunn v. United States*, ante, at 112-113. So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute. See *United States v. Evans*, 333 U.S. 483 (1948); *United States v. Brown*, 333 U.S. 18 (1948); cf. *Giaccio v. Pennsylvania*, 382 U.S. 399 (1966)." [26]

"**Criminal statutes must have an ascertainable standard of guilt or they fall for vagueness**. See *United States v. Cohen Grocery Co.*, 255 U.S. 81; *Winters v. New York*, 333 U.S. 507." [27]

"**Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed**. *United States v. Harriss*, 347 U.S. 612, 617 (1954). In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged. *Robinson v. United States*, 324 U.S. 282 (1945)." [28]

---

[25] Excerpts from *Papachristou v. City of Jacksonville*, 405 U.S. 156, 172 (1972).
[26] See *United States v. Batchelder*, 442 U.S. 114, 123 (1979).
[27] See *Williams v. United States*, 341 U.S. 97, 100 (1951).
[28] See *United States v. National Dairy Corp.*, 372 U.S. 29, 32 (1963). See also *Browning-Ferris Industries of Vermont v. Kelco Disposal, Inc.*, 492 U.S. 257, 297, 300-301 (1989); *U.S. v. Classic*, 313 U.S. 299, 331 (1941).

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.     Page 11 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

2.13 The questions for review, *infra*, are clear enough, the basis for them simple enough, and the Defendant will remain silent as to their interpretation of applicable statutes, as opposed to RCWs.

> "Congress has operated within this framework of legal uncertainty ever since the Court determined that it was the judiciary's duty "to say what the law is." *Marbury v. Madison*, 1 Cranch. 137, 177, 2 L.Ed. 60 (1803) (Marshal, C.J.)." [29]

2.14 If the Complainant remains silent as to the application of these authorities to the subject definition, public vehicular travelers are rightfully viewed as individuals not subject to the statutes and application of such challenged herein.

### F. Public highways of Washington state are open as a matter of right, not privilege, to public vehicular travel.

2.15 In response to inquires concerning this statutory claim, the WA Statute Law Committee (WA Code Reviser will testify to this at Complainant's hearing upon this motion) has directed that very particular Sessions Laws constitute those upon which the RCW 46.04.320 definition of the term "motor vehicle" rests or under which it is governed, and all are identical in their language regarding the scope of said term. (See Washington Sessions Laws of 1915, Chapter 142 §§ 2(1) "Motor vehicle" and 2(6) "Public highway" or public highways"; Sessions Laws of 1917, Chapter 155 §§ 1(1) "Motor vehicle" and 1(6) "Public highway" or public highways"; Sessions Laws of 1919, Chapter 59 §§ 1(1) "Motor vehicle" and 2(6) "Public highway" or public highways"; Sessions Laws of 1921, Chapter 96 §§ 2(1) "Motor vehicle" and 2(7) "Public highway" or public highways"). That language is as follows: [30]

> "Motor vehicle" *shall include all vehicles* or machines propelled by any power other than muscular, *used upon the public highways for the transportation of freight, produce or any commodity*, except traction engines temporarily upon the highway, road rollers or road making machines, and motor vehicles that run upon rails or tracks.

> "Public highway" or "public highways" *shall include any highway, state road, county road, public street, avenue, alley, driveway, boulevard or other place built, supported, maintained, controlled or used by the public or by the state, county*, district or municipal officers for the use of the public as a highway, *or for the transportation of*

[29] See *U.S. v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 1633 (1995).
[30] See **Appendix A** hereto.

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.　　　Page 12 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

*persons* or freight, *or as a place of travel or communication between different localities or communities*;

That was:

> (1) "place built, supported, maintained, controlled *or __used by the public__* or by the state, county," *or*
> (2) "*for the transportation of persons* or freight," *or*
> (3) "as *a place of travel* or communication between different localities or communities."

2.16 The term "motor vehicle" is said to embrace only those contrivances using the highways under purpose #2 above, and it is not said to embrace those using the highways for purpose #3, for "travel and communication," as is the conduct of public vehicular travelers.

> "Transportation. *The movement of goods or persons* from one place to another, *by a carrier*. Interstate Commerce Commission v. Brimson*, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047." [31]

2.17 In the 1961 major rewrite of RCW 46 the focus in defining its scope was shifted from the definition of motor vehicle and *transportation*, to a distinction between privilege and common right, that right of public vehicular travel being repeatedly deemed a "matter of right." In this 1961 definition of "motor vehicle" we find no mention of "transportation."

> RCW 46.04.320 Motor vehicle. "Motor vehicle" shall mean *every vehicle which is self-propelled and every vehicle which is propelled* by electric power obtained from overhead trolley wires, but not operated upon rails. An electric personal assistive mobility device is not considered a motor vehicle. [**2002** c 247 § 2; **1961** c 12 § 46.04.320. Prior: 1959 c 49 § 33; 1955 c 384 § 10; prior: (i) 1943 c 153 § 1, part; 1937 c 188 § 1, part; Rem. Supp. 1943 § 6312-1, part; 1923 c 181 § 1, part; **1921 c 96** § 2, part; **1919 c 59** § 1, part; **1917 c 155** § 1, part; **1915 c 142** § 2, part; RRS § 6313, part. (ii) 1937 c 189 § 1, part; RRS § 6360-1, part; 1929 c 180 § 1, part; 1927 c 309 § 2, part; RRS § 6362-2, part.]

> RCW 9A.56.075 Taking motor vehicle without permission in the second degree.
> (1) A person is guilty of taking a motor vehicle without permission in the second degree if he or she, without the permission of the owner or person entitled to possession, intentionally takes or drives away any *automobile __or motor vehicle__*, whether propelled by steam, electricity, or internal combustion engine, that is the property of another, or he or she voluntarily rides in or upon the *automobile __or motor__*

---

[31] See *Black's*, 6th Edition.

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.            Page 13 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

*vehicle* with knowledge of the fact that the ***automobile or motor vehicle*** was unlawfully taken.

(2) Taking a motor vehicle without permission in the second degree is a class C felony. [**2003** c 53 § 73.]

2.18 The removal of the term "transportation" from the language of the RCW clearly is the cause of this controversy. Support of this claim, that public vehicular travel is not and has never been placed within the scope of the term "motor vehicle," is found in other provisions as well. Washington (Sessions) Laws of 1961, Chapter 1 § 1(x) of the Highway License act defines a "Public highway" as:

> "Every way, lane, road, street, boulevard, and every way or place in the State of Washington *open as a matter of right to public vehicular travel* both inside and outside the limits of incorporated cities and towns."

2.19 The proof that public vehicular travel is, by law, a common right and not at all a *privilege*, is overwhelming in the eyes of all but the morally bankrupt, the criminally insane and the irretrievably corrupt. The law, state and municipal, foreign and domestic, is virtually replete with this framework which recognizes outright, and therefore <u>duly</u> protects, the <u>right</u> to engage in public vehicular travel and to <u>not</u> be subjected to any *privilege code* as we see in Washington's RCW 46. One needn't trek into distant enactments of 1961 to find this expression in WA Sessions Laws.

> "AN ACT Relating to the definition of "county engineer"; and amending RCW 36.75.010. BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:
> Sec. 1. RCW 36.75.010 and 1984 c 7 s 26 are each amended to read as follows:
> (4) "City street," ***every highway*** or part thereof, located ***within the limits*** of incorporated cities and towns, except alleys;
> (6) "County road," ***every highway*** or part thereof, ***outside the limits*** of incorporated cities and towns and which has not been designated as a state highway;
> (11) "***Highway***," ***every way, lane, road, street, boulevard, and every way or place in the state of Washington*** <u>***open as a matter of right***</u> ***to public vehicular travel*** <u>***both inside and outside the limits***</u> of incorporated cities and towns;"

See Chapter 161, Laws of Washington state 2005, House Bill 1599, passed by the House March 11, 2005, **Yeas 93 and Nays 0**, passed by the Senate April 12, 2005, **Yeas 44 and Nays 0**.

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 14 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

1  Approved April 22, 2005, C. Gregoire, Governor of the State of Washington; FILED April 22,

2  2005 - 4:12 p.m., Secretary of State, State of Washington. **Effective date July 24, 2005**.

3
4  WA Laws of 2003, Chapter 244 (S.Bill 5977):
       Sec. 2.  RCW 47.04.010 and 1975 c 62 s 50 are each amended to read as
   follows:
5       The following words and phrases, wherever used in this title, shall have the meaning
   as in this section ascribed to them, unless where used the context thereof shall clearly
6  indicate to the contrary or unless otherwise defined in the chapter of which they are a
   part:
7       (11) "**Highway**." Every way, lane, road, street, boulevard, and every way or
   place in the state of Washington *open as a matter of right to public vehicular travel*
8  *both inside and outside the limits of incorporated cities and towns*;

9       2.20 As late as July of 2005 the collective mind of the WA legislature unanimously

10  viewed and deemed public vehicular travel to be a right and <u>not</u> a privilege, and WA's former

11  AG now Governor approved of it; it's the law, still.

12
    **RCW** 46.04.020 Alley. "*Alley*" means a *public highway* not designed for general travel
13  and used primarily as a means of access to the rear of residences and business
    establishments.

14
    **RCW** 46.04.030 Arterial highway. "*Arterial highway*" means *every public highway*, or
15  portion thereof, designated as such by proper authority.

16
    **RCW** 46.04.110 Center of intersection. "*Center of intersection*" means the point of
17  *intersection of the center lines of the roadway of intersecting public highways*.

18  **RCW** 46.04.120 City street. "*City street*" means *every public highway*, or part thereof
    located <u>within the limits</u> of cities and towns, except alleys.

19
    **RCW** 46.04.150 County road. "*County road*" means *every public highway* or part
20  thereof, <u>outside the limits</u> of cities and towns and which has not been designated as a
    state highway.

21
    **RCW** 46.09.020 Definitions. As used in this chapter the following words and phrases
22  have the designated meanings unless a different meaning is expressly provided or the
    context otherwise clearly indicates:
23       "*Highway*," for the purpose of this chapter only, means the entire width between
24  the boundary lines of *every way publicly maintained* by the state department of

25
26

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 15 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

transportation or any county or city *when any part thereof is generally* _open to the use of the public for purposes of vehicular travel as a matter of right_. [32]

**RCW** 46.10.010 Definitions. As used in this chapter the words and phrases in this section shall have the designated meanings unless a different meaning is expressly provided or the context otherwise clearly indicated.

(6) "*Public roadway*" shall mean the entire width of the right of way of any road or street designed and ordinarily used for travel or parking of motor vehicles, which is controlled by a public authority other than the Washington state department of transportation, and *which is open as a matter of right to the general public for ordinary vehicular traffic*. [33]

("**WAC**") Washington Administrative Code 296-32-210 Definitions.

(46) "*Public highway*." Every way, land, road, street, boulevard, and every way or place in the state *open as matter of right to public vehicular travel*, both inside and outside the limit of cities and towns.

**WAC** 296-45-035  Definitions.  These definitions apply to chapter 296-45 WAC.

"Public highway" - Every way, land, road, street, boulevard, and every other way or place in the state *open as a matter of right to public vehicular travel*, both inside and outside the limits of cities and towns, regardless of ownership.

**RCW** 47.04.010 Definitions. The following words and phrases, wherever used in this title, shall have the meaning as in this section ascribed to them, unless where used the context thereof shall clearly indicate to the contrary or unless otherwise defined in the chapter of which they are a part:

(6) "City street." *Every highway* as herein defined, or part thereof located *within the limits* of incorporated cities and towns, except alleys;

(9) "County road." *Every highway* as herein defined, or part thereof, *outside the limits* of incorporated cities and towns and which has not been designated as a state highway, or branch thereof;

(11) "*Highway*." Every way, lane, road, street, boulevard, and every way or place in the state of Washington *open as a matter of right to public vehicular travel both inside and outside the limits* of incorporated cities and towns;

---

[32]  Amended in 2004 at [2004 c 105 § 1], to read "(5) "Highway," for the purpose of this chapter only, means the entire width between the boundary lines of every roadway publicly maintained by the state department of transportation or any county or city with funding from the motor vehicle fund. *A highway is generally capable of travel by a conventional two-wheel drive passenger automobile during most of the year and in use by such vehicles*."

[33]  April 28, 2005, amended by WA House Bill 1739 to be subsection "(7)" instead of subsection "(6)" as you see it here. No changes to language in H.B. 1739, Passed by the Senate April 15, 2005, House 4/20/05, Governor 4/28/05, Sec. Of State, WA, 4/28/05, effective 10/1/05.

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

**RCW** 46.30.010 Legislative intent. ***It is a privilege** granted by the state **to operate a motor vehicle** upon the highways of this state.* [34]

**RCW** 46.98.020 Provisions to be construed in pari materia. The provisions of this title shall be construed in para materia even though as a matter of prior legislative history they were not originally enacted in the same statute. ***The provisions of this title shall also be construed in para materia with the provisions of Title 47 RCW*** ["Transportation"], ***and with other laws relating to highways***, roads, streets, bridges, ferries ***and vehicles***. This section shall not operate retroactively.

"The state laws governing vehicles and public highways are set forth primarily in Titles 46 and 47 RCW.   The provisions of these two titles, together with other laws pertaining to highways and roads, are to be construed "in pari materia", or as a unified whole.  RCW 46.98.020.  RCW 46.08.020 further provides:

The provisions of this title relating to vehicles shall be applicable and uniform throughout this state and in all incorporated cities and towns and all political subdivisions therein and no local authority shall enact or enforce any law, ordinance, rule or regulation in conflict with the provisions of this title except and unless expressly authorized by law to do so and any laws, ordinances, rules or regulations in conflict with the provisions of this title are hereby declared to be invalid and of no effect.   Local authorities, may, however, adopt additional vehicle and traffic regulations which are not in conflict with the provisions of this title.

(Emphasis added.)
        Turning to the specific statutes, chapter 46.61 RCW sets forth the rules of the road ***for the operation of motor vehicles***, while chapter 47.36 RCW sets forth the responsibilities of local authorities regarding traffic control devices. With certain exceptions not relevant here, these laws apply "***exclusively to the operation of vehicles upon highways***".  RCW 46.61.005.  A "highway" is defined as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel."  RCW 46.04.431.  A "county road" is defined as "every public highway . . . outside the limits of cities and towns and which has not been designated as a state highway."  RCW 46.04.150.  [([35] AGO fn.[4])]"

---

[34] See *Black's Law Dictionary*, 6th Edition: "**Privilege. *A particular and peculiar benefit*** or advantage enjoyed by a person, company, or class, ***beyond the common advantages of other citizens. An exceptional or extraordinary power or exemption. A peculiar right, advantage, exemption, power, franchise, or immunity held by a person or class, not generally possessed by others.***"  "**License. *A personal privilege to do some particular act*** or series of acts on land without possessing any estate or interest therein, and is ordinarily revocable at the will of the licensor and is not assignable. (Cite omitted) ***The permission by competent authority to do an act which, without such permission, would be illegal, a trespass, a tort, or otherwise not allowable.***"

[35] AGO Report footnote [4] "RCW 47.04.010 (9) and (26) contain virtually identical statutory definitions.  Note also that these definitions closely parallel those set forth in RCW 36.75.010 (6) and (11), *supra*."

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

See **WA AGO Report 1996 - No.17**, dated 9/26/96. [36]
**Municipalities in Washington state - counties**:

**Franklin County Code, WA** - 2.25 Road, Public. "***Public road***" means a road, whether improved or unimproved, held in public ownership and intended to be ***open as a matter of right for public vehicular travel*** and to provide access now or in the future to adjacent properties.

**Jefferson County, WA** § 18.10.160 "P definitions." "Public road, or public street" means an approved road or street, whether improved or unimproved, held in public ownership or control (*i.e.*, either through deed or easement conveyance) and intended to be ***open as a matter of right to public vehicular travel***.

**Kittitas County Code, WA** - Title 10 Vehicles and Traffic. 10.37.020 Definitions. As used in this chapter the following words and phrases have the designated meanings unless a different meaning is expressly provided or the context otherwise clearly indicates:
"***Highway***" - For purpose of this chapter only, means the entire width between the boundary lines of every way publicly maintained by the state ***is generally open to the use of the public for the purposes of vehicular travel as a matter of right***.

**Pierce County Code, WA** - 11.02.030 Definitions. For the purposes of this Chapter, the words or phrases below shall have the following meanings:
K. "***Highway***" shall mean all impervious ways, lanes, roads, streets, boulevards, and/or places in the County ***open as a matter of right to public vehicular travel*** both inside and outside the limits of incorporated cities and towns.

**Snohomish County Code, WA** - 10.01.020 Definitions. All technical terminology used in chapter 10.01 SCC, and not defined in chapter 10.01 SCC, shall be interpreted in conformance with the American National Standards Institute Specifications, Section 1.1-1983 and Section 1.4-1983 as now in force or as later amended. As used in this chapter, the following terms shall have the meanings set forth below:
(26) "***Public highway***" means the entire width between the right-of-way lines of every roadway publicly maintained by the Washington State Department of Transportation, or any county or city, when any part of the right-of-way ***is generally open to the use of the public for purposes of vehicular travel as a matter of right***.

/ / /

/ / /

---

[36] See also *Black's Law Dictionary*, Sixth Edition, "In para materia. Upon the ***same matter or subject. Statutes "in para materia" are those relating to the same person or thing or having a common purpose.*** Undercofler v. L.C. Robinson & Sons, Inc., 111 Ga.App. 411, 141 S.E.2d 847, 849. This rule of statutory construction, that statutes that relate to the same subject matter should be read, construed and applied together so that the legislature's intention can be gathered from the whole of the enactments, applies only when the particular statute is ambiguous. *Kimes v. Bechtold*, W.Va., 324 S.E.2d 147, 150."

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 18 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

1  **Municipalities in Washington state - cities:**

2  **Blaine, WA** municipal code § 10.13.010 Definitions. The following words and phrases
   when used in this chapter shall, for the purpose of this chapter, have the meanings
3  respectively ascribed to them in this section:
   F. "*Street*" means that portion of any right-of-way including any highway,
4  avenue, lane, road, street, drive, place, boulevard, alley, and every way or place in the
   city of Blaine *open as a matter of right to public vehicular travel*.

5
   **Bremerton, WA**, municipal code - 10.11.005 Definitions. The following definitions are
6  applicable in this chapter unless the context otherwise requires:
   (b) "Right-of-way" or "*street*" means any highway, avenue, lane, road, drive,
7  place, boulevard, alley, right-of-way, way, sidewalk, planting or parking strip, shoulder
   and every way or place in the *City of Bremerton open as a matter of right to public*
8  *vehicular travel or parking or other similar public use*.

9
   **Cathlamet, WA** municipal code § 10.05.010 Definitions. The following terms used in
10 this chapter shall have the meanings herein set out:
   (1) "Public highway" includes every way, lane, road, street, boulevard, and
11 every way or place in the town *open as a matter of right to public vehicular travel*
   inside the limits of the town of Cathlamet.
12
   **Edgewood, WA** municipal code § 16.04.060 For the purposes of this title, certain
13 words and terms used in this title are defined as follows:
   "Street, public" means as approved street, whether improved or unimproved,
14 held in public ownership and intended to be *open as a matter of right to public*
   *vehicular travel*.
15
   **Everett, WA** - 8.56.030 Definitions. The following definitions are applicable in this
16 chapter unless the context otherwise requires:
   F. "Street" means any highway, lane, road, street, right-of-way, boulevard,
17 alley, and every way or place in Everett *open as a matter of right to public vehicular*
   *travel*. (Ord. 2129-96 § 3, 1996)
18
   **Kent, WA** - 8.09.030 Definitions. The following definitions are applicable in this
19 chapter unless the context otherwise requires:
   I. "*Street*" means any highway, avenue, lane, road, street, drive, place,
20 boulevard, alley, right-of-way, and *every way or place in the city of Kent open as a*
   *matter of right to public vehicular travel*. (Ord. No. 3516, § 1, 7-5-00).
21
   **Lakewood, WA** municipal code § 03.38.030- Definitions. For purposes of this
22 Ordinance, the words or phrases below shall have the following meanings:
   G. "Highway" shall mean all impervious ways, lanes, roads, streets, boulevards,
23 and/or places in the City *open as a matter of right to public vehicular travel* both inside
   and outside the limits of incorporated cities and towns.
24

25

26

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

**Langley, WA** municipal code - 17.08.020 Definitions. Where the following words and phrases appear in this chapter, they shall be given the meaning attributed to them by this section. When not inconsistent with the context, words used in the present tense shall include the future; the singular shall include the plural and the plural the singular; the word "shall" is always mandatory, and the word "may" indicates a use of discretion in making a decision.

N. Road, Public. "*Public road*" means a road dedicated to and maintained by the state, by Island County, or by the city, *and open as a matter of right to public vehicular travel and access*.

**Lynnwood, WA** municipal code § 10.17.030 Definitions. The following definitions are applicable in this chapter unless the context otherwise requires:

F. "Street" means any highway, lane, road, street, right-of-way, boulevard, alley and every way or place in Lynnwood *open as a matter of right to public vehicular travel*. (Ord. 2365 § 1, 2001)

**Marysville, WA** - 7.05.030(6) "*Street*" means any highway, lane, road, street, right-of-way, boulevard, alley and every way or place *in Marysville open as a matter of right to public vehicular travel*. (Ord. 2159 § 1, 1997).

**Monroe, WA** municipal code § 17.08.010. Certain words and terms used in this code are defined below to simplify wording, give the meaning of a technical term, or to eliminate ambiguity. Some definitions differ from definitions of the same words in standard dictionaries. Where this occurs, the definition in this code shall prevail. Words not defined shall be presumed to have common and universally accepted dictionary meanings. The word "person" includes a firm, association, organization, partnership, trust, company, or corporation as well as an individual. The present tense includes the future tense; and the plural number includes the singular. The word "shall" is mandatory; the word "may" is permissive. The word "city" means the city of Monroe.

R. "Public roads" means all lanes, roads, streets, and alleys which are *open as a matter of right to public vehicular traffic*.

**Pasco, WA** municipal code - 26.08.270 Street, Public. "*Public Street*" means a street, whether improved or unimproved, *held in public ownership and intended to be open as a matter of right for public vehicular travel* and to provide access now or in the future to adjacent properties. (Ord. 3398 Sec. 2, 1999.).

**Seattle, WA** municipal code - 25.08.270 Public highway. "*Public highway*" means the entire width between the boundary lines of every way publicly maintained by the Department of Highways or any county or city when any part thereof *is generally open to the use of the public for purposes of vehicular travel as a matter of right*. (Ord. 106360 § 222, 1977.).

**Seattle, WA** municipal code § 11.14.715 Way open to the public. "Way open to the public" means *any road, alley, lane, parking area, path, or any place, private or*

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.   Page 20 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

*otherwise, adapted to and __fitted for travel__, that is in common use by the public __with__* *__the consent__, expressed or implied, __of the owner__ or owners*, and further shall mean public playgrounds, school grounds, recreation grounds, parks, parkways, park drives, park paths and wharves, station grounds, and rights-of-way open to the use of the public.

**Seatac, WA** municipal code § 15.10.630 "Street, Public" All streets, highways, freeways, avenues, lanes, alleys, courts, places, or other public ways in the City, whether improved or unimproved, held in public ownership and intended to be ***open as*** ***a matter of right to public vehicular and pedestrian access***. (Ord. 92-1041 § 1)

**Spokane, WA** municipal code § 16.10.010 Definitions. As used in this chapter the words and phrases in this section shall have the designated meanings unless a different meaning is expressly provided or the context otherwise clearly indicates.
　　G. "***Public roadway***" shall mean the entire width of the right-of-way of any road or street designed and ordinarily used for travel or parking of motor vehicles, which is controlled by a public authority other than the Washington state department of transportation, and which is ***open as a matter of right to the general public for*** ***ordinary vehicular traffic***.

**Tukwila, WA** municipal code - 8.22.010 Policy - Findings of Special Conditions.
　　18. "***Public highway***" means the entire width between the boundary lines of every way publicly maintained by the Department of Highways or any county or city, when any part thereof ***is generally open to the use of the public for purposes of*** ***vehicular travel or a matter of right***.

2.21 We see that the laws of Washington's municipalities mirror with detail the right of public vehicular travel as is so pristinely and abundantly preserved in the RCWs, and Washington is no different from any other state. These are foreign laws of which the DOJ is hereby placed on mandatory constructive notice.

**FOREIGN LAW - States:**
　　**Arizona** - § 42 5062(A):
　　　　5. "***Public highway***" means any way or place in this state that is constructed or maintained with public monies and that is ***open to use by the public as a matter of right*** ***for the purpose of vehicular travel***, including a highway under construction.

　　**Colorado** - § 33-14-101. **Definitions.** As used in this article, unless the context otherwise requires:
　　　　(12) "***Street***", "road", "***freeway***", or "***highway***" means the entire right-of-way between boundary lines of any of such public ways when any part thereof is ***open to the*** ***use of the public as a matter of right for the purpose of motor vehicle travel***.

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.　　　　Page 21 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

**Colorado** - § 155-3. **Definitions**. [Amended 7-16-96, Ord. 96-12] As used in this Article, the following terms shall have the meanings indicated:

PUBLIC RIGHT-OF-WAY—All streets, roadways, sidewalks, alleys and *all other areas reserved for present or future use by the public as a matter of right for the purpose of vehicular or pedestrian travel*, utility installation and for snow storage by the Town of Frisco. [Amended 5-2-1989 by Ord. No. 89-16]

**Colorado** - § 17-5-30. **Definitions**. Unless specifically stated otherwise, the following words have the following definitions in this Article:

*Street, road, or highway* means the entire width between the boundary lines of every way publicly maintained when any part thereon is *open to the use of the public for purposes of vehicular travel*, or the entire width of every way declared to be to be a public street, road, or highway by any law of the State of Colorado, including, but not limited to, the area intended for pedestrian travel, such as a sidewalk.

**Delaware** - Title 21, Part I, Ch.1 General Provisions, § 101. Words and phrases. For the purposes of this title, unless the context otherwise clearly indicates:

(22) "*Highway*" means the entire width between boundary lines of every way or place of whatever nature *open to the use of the public as a matter of right for purposes of vehicular travel*, but does not include a road or driveway upon grounds owned by private persons, colleges, universities or other institutions.

**Florida** § 633.021  Definitions.--As used in this chapter:

(12) "*Highway*" means every way or place of whatever nature within the state *open to the use of the public, as a matter of right, for purposes of vehicular traffic and includes public streets, alleys, roadways*, or driveways upon grounds of colleges, universities, and institutions and other ways open to travel by the public, notwithstanding that the same have been temporarily closed for the purpose of construction, reconstruction, maintenance, or repair. The term does not include a roadway or driveway upon grounds owned by a private person.

**Iowa** § 321G.1 Definitions. As used in this chapter, unless the context otherwise requires:

20. "*Street*" or "*highway*" means the entire width between property lines of every way or place of whatever nature when any part thereof is *open to the use of the public, as a matter of right, for purposes of vehicular trave*l, except in public areas in which the boundary shall be thirty-three feet each side of the center line of the roadway. [C71, 73, 75, 77, 79, 81, § 321G.1; 81 Acts, ch 113, § 2]

**Idaho** - § 49.301(13) **Street or Highway** -- Street or Highway means the entire width between property lines of every way or place of whatever nature when any part thereof is *open to the use of the public, as a matter of right for purposes of vehicular traffic*.

/ / /

/ / /

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 22 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

**Idaho** - § 63-2401.  **Definitions**. In this chapter:
    (11) "*Highways*" means every place of whatever nature *open to the use of the public as a matter of right for the purpose of vehicular travel* which is maintained by the state of Idaho or an agency or taxing subdivision or unit thereof or the federal government or an agency or instrumentality thereof. Provided, however, if the cost of maintaining a roadway is primarily borne by a special fuels user who operates motor vehicles on that roadway pursuant to a written contract during any period of time that a special fuels tax liability accrues to the user, such a roadway shall not be considered a "highway" for any purpose related to calculating that user's special fuels' tax liability or refund.

**Minnesota** § 169.01 Definitions. Subd. 29.   Street or highway.   "*Street or highway*" means the entire width between boundary lines of any way or place when any part thereof *is open to the use of the public, as a matter of right, for the purposes of vehicular traffic*.

**New Mexico** - *State v. Roddy Brennan*, 1998-NMCA-176, filed 10/22/98 NM Ct. of Appeals: "Highways as defined in the Motor Vehicle Code include "*every way or place generally open to the use of the public as a matter of right for the purpose of vehicular travel*[.]"

**New York state** - Article 21 General Provisions:
§ 21.05 Definitions. As used in this article, unless the context requires otherwise:
    9. "Highway" shall mean the entire width between the boundary lines of any way or place when any part thereof is *open to the use of the public, as a matter of right, for the purpose of vehicular traffic*.

**North Carolina** § 20-4.01(13) "*Highway*" is defined as "the entire width between property or right-of-way lines of every way or place of whatever nature, when any part thereof *is open to the use of the public as a matter of right for the purposes of vehicular traffic*. The terms "highway" and "street" and their cognates are synonymous.

**Oregon Vehicle Code** § 801.305 "Highway." "*Highway*" means every public way, road, street, thoroughfare and place, including bridges, viaducts and other structures within the boundaries of this state, open, used or intended for *use of the general public for vehicles or vehicular traffic as a matter of right*. [1983 c.338 §51]

**Pennsylvania** § 75 Pa.C.S.A. §3101 and 75 Pa.C.S.A. §102. "*Trafficway*. The entire width between property lines or other boundary lines of every way or place of which any part *is open to the public for purposes of vehicular travel as a matter of right or custom*."

**Pennsylvania** - Penn. International Fuel Tax Agreement & Motor Carriers Road Tax Compliance Manual by Penn. Dept. of Revenue, Bureau of Motor Fuel Taxes, Harrisburg, Penn., "II Definitions. . . . "*Highway*", the Pennsylvania Turnpike and

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 23 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

every way or place, of whatever nature, *open to the use of the public as a matter of right for purposes of vehicular travel*.

**South Dakota** § 32-14-1. Terms used in chapters 32-14 to 32-19, inclusive, 32-12 and 32-22 to 32-34, inclusive, mean:
(11) "*Highway*," the entire width between the boundary lines of every way publicly maintained when any part thereof is *open to the use of the public as a matter of right for purposes of vehicular travel*;

**Texas** § 114.001. Definitions. In this chapter:
(5) "*Public highway*" means a way or place of whatever nature *open to the use of the public as a matter of right for the purpose of vehicular travel*, even if the way or place is temporarily closed for the purpose of construction, maintenance, or repair.

**Utah** § 41-6a-102.  Definitions. As used in this chapter:
(20) "*Highway*" means the entire width between property lines of every way or place of any nature when any part of it *is open to the use of the public as a matter of right for vehicular travel*.

**Utah** - § 53-3-207.   License certificates or driving privilege cards issued to drivers by class of motor vehicle -- Contents -- Release of anatomical gift information -- Temporary licenses or driving privilege cards -- Minors' licenses, cards, and permits -- Violation. (1) As used in this section:
(a) "*driving privilege*" means <u>*the privilege granted* under this chapter *to drive a motor vehicle*</u>;

**Utah** - § 23-13-2 & R657-5-2(6) "*Highway*" means the entire width between property lines of every way or place of any nature when any part of it is *open to the use of the public as a matter of right for vehicular travel*.

**Utah** - § 16-2-1. Definitions.
(1) "*Roadway*" or  "*Street*" means the entire width between property lines of every way or place of any nature when any part of it is *open to the use of the public as a matter of right for vehicular traffic*. Also, any portion of roadway or street improved, designed, or ordinarily used for vehicular travel, exclusive of the sidewalk.
(2) "*Vehicle*" means every device in, upon, or by which any person or property is or may be *transported or drawn* upon a roadway or street, whether operable or not, except devices used exclusively upon stationary rails or tracks. This includes but is not limited to cars, trucks, motorcycles, trailers, ATVs, boats, construction equipment, etc. History: 10/98.

**FOREIGN LAW - Municipal**:
**Santa Barbara County, CA** § 9.04.030 Definitions. For the purposes of this Chapter, the following words and phrases shall have the meaning respectively ascribed to them by this section.

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 24 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

F. "*Street*." A way or place, of whatever nature, *open to the use of the public as a matter of right for the purpose of vehicular travel or in the case of a sidewalk thereof for pedestrian travel.* The term "street" includes the legal right of way, including, but not limited to, the traffic lanes, curbs, sidewalk whether paved or unpaved, and any grass plots or other grounds found within the legal right of way of a street. The term "street" applies irrespective of what the legal right of way is formally called, whether alley, avenue, court, road, or otherwise. (Ord. 5019, 1997; Ord. 4973, 1996; Ord. 4949, 1996; Prior Code §32.8. and 32.9.).

**City of Glendale, CA** - Chapter 9.04 Curfew, § 9.04.030 Definitions. For purposes of this chapter, the following words and phrases shall have the meanings ascribed to them unless the context otherwise requires:

"*Street*" means a way or place, of whatever nature, *open to the use of the public as a matter of right for vehicular travel* or, in the case of a sidewalk, for pedestrian travel. "Street" includes, but is not limited to: traffic lanes, parking lanes, curb areas, sidewalks (whether paved or unpaved), parkways, or any other area found within the legal right-of-way, regardless of what it is formally called, whether alley, avenue, court, highway, road or otherwise. (Ord. 5253 § 2 (part), 2000).

**Park County, CO** - § 4-200B **Definitions**. Words and phases used in these Land Use Regulations shall have the following meanings unless a different meaning is contained in another applicable Article or Section or where the context clearly indicates a different meaning is intended. Words and phrases not defined in this Division shall be subject to the written interpretation of the Planning Director pursuant to Section 1-400, subject to appeal as provided by these Regulations.

Capitalization of a term or phrase denotes that the term or phrase is a specifically defined term for purposes of these Land Use Regulations.

**Right-of-way:** All streets, roadways, sidewalks, alleys, and all other areas *reserved for present or future use by the general public as a matter of right, for the purpose of vehicular or pedestrian travel*, and which are held, owned, or controlled by Park County, a incorporated municipality, or the Colorado Department of Transportation. Right of way is synonymous with public roadway, public street, and public way. For purposes of an application for the vacation (abandonment) of a right-of-way, such term shall only include rights-of-way held and owned by Park County, Colorado.

**Brighton, CO** - § IX, Subdivision Regulations, § VI Definitions. B.- "**Right-of-Way, Public**." All streets, roadways, bikeways, sidewalks, alleys, and all other areas *reserved for present or future use by the public, as matter of right, for the purpose of vehicular or pedestrian travel.*

**Blanca, CO** - Article I. In General, § 1-1. **Definitions**. The following words, terms and phrases, when used in this chapter, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 25 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

*Right-of-way, public* shall mean all street, roadways, sidewalks, alleys and *all other areas reserved for present or future use by the public, as a matter of right, for the purpose of vehicular or pedestrian travel*.

**Dillon, CO** - § 8-3-20. Definitions. For the purpose of this Article, the following words and phrases shall have the meanings respectively ascribed to them by this Section:

*Street, road* or *highway* means the entire right-of-way between boundary lines of any such public ways when any part thereof is *open to the use of the public as a matter of right for the purposes of motor vehicle travel*. (Ord. 2-92; prior code 18-32; Ord. 02-02).

**Pueblo, CO** - § 17.04.040 Definitions.

A. General. When not inconsistent with the content, words used in the present tense including the future; words in the singular number include the plural number; and the masculine includes the feminine.

B. Specific. For the purpose of this resolution certain words and terms are defined as follows:

"**Right-of-Way, Public**" means all streets, roadways, sidewalks, alleys, and all other areas reserved for present or future *use by the public, as a matter or right, for the purpose of vehicular or pedestrian travel*.

**Silver Bow, CO** - § 10.04.040 **Definitions**. In this title, unless otherwise provided or the context requires a technical or other interpretation, the following definitions apply:

32. "*Highway*" means the entire width between the boundary lines of every publicly maintained way when any part thereof is *open to the use of the public for purposes of vehicular travel*, and includes ways which have been or shall be dedicated to public use.

**Boise, ID** - § 10-01-01 **Definitions of words and phrases**: Whenever the following words or terms are have the meaning herein ascribed to them:

Street or Highway: The words "*Street or Highway*" shall be used interchangeably and shall mean the entire width between the boundary lines of every way or place *open to the public, as a matter of right for public vehicular travel* but not to include alleys.

**Haley, ID** - § 9.08.010 **Definitions**. A. "*Streets*" means a way or place, of whatsoever nature, *open to the use of the public as a matter of right for purposes of vehicular travel*. The term "street" includes the legal right-of-way, including, but not limited to, the cartway or traffic lanes, the curb, the sidewalks, whether paved or unpaved, and any grass plots or other grounds found within the legal right-of-way of a street. The term "street" applies irrespective of what it be called or formally named, whether alley, avenue, court, road or otherwise. The term "street" shall also include shopping centers, parking lots, parks, playgrounds, cemeteries, public buildings and similar areas that are open to the public.

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.        Page 26 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

**Haley, ID** - § 10.24.020 **Definitions**. For the purposes of this chapter, the following definitions shall apply:

"*Highway*" means any way or place of whatever nature *open to the use of the public as a matter of right for the purposes of vehicular travel* or parking of motor vehicles which is maintained by the state or some taxing subdivision or unit thereof, or the federal government or any agency thereof.

**Ramsey, MN** (Anoka County) - § 6.04.03 **Definitions**. For the purposes of this Section, the words and terms listed below shall be defined as follows:

"*Street or Highway*" – shall mean the entire width between boundary lines of any way or place when any part thereof is *open to the use of the public, as a matter of right, for the purpose of vehicular traffic* (includes the right-of-way or boulevard). For the purposes of this section, Streets or Highways not dedicated for public use and not maintained by the City are not included within this definition.

**Clark County, NV** - § 5.02.010 **Definitions**. (a) For the purposes of this chapter, the following terms, phrases, words, and abbreviations shall have the meanings given herein, unless otherwise expressly stated. When not inconsistent with the context, words used in the present tense include the future tense; words in the plural number include the singular number, and words in the singular number include the plural number; and the masculine gender includes the feminine gender. The words "shall" and "will" are mandatory, and "may" is permissive. Unless otherwise expressly stated, words not defined herein shall be given the meaning set forth in Title 47 of the United States Code, as amended, and, if not defined therein, their common and ordinary meaning.

(39) "*Street*" means the surface, the air space above the surface and the area below the surface of the full width of the right-of-way, including sidewalks and thoroughfares, places or ways of any kind *used by the public or open to the public as a matter of right for the purposes of vehicular traffic or vehicular and pedestrian traffic*.

**Bend, OR** - § 2.400 Definition of Terms.

(2) *Street*. A way or place *open as a matter of right to the use of the public, including sidewalks and alleys*.

**Lindon, UT** - § 9.22.020 Definitions. For the purpose of this Chapter, terms "child" and "children" mean any person under the age of eighteen (18) years.

4. "*Public places*" means any place open to the public, whether privately owned, including but not limited to parking lots and the interior and exterior of commercial establishments such as restaurants, stores, or places of entertainment. As a type of public place, a street is a way or place, of whatever nature, *open to the use of the public as a matter of right for purposes of vehicular travel or in the case of a sidewalk thereof for pedestrian travel*. "Street" includes that legal right of way, including but not limited to traffic lanes, the curb, the sidewalks whether paved or unpaved, and any grass plots or other grounds found within the legal right of way.

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

2.22 Historical notes to RCW 46.04.320 ("motor vehicle") show its origin to be consistent with both 1961 and 2005 Sessions Laws, that upon the birth of said RCW "public highways" were open to "public vehicular travel" as a matter of right and not as a matter of privilege. Since 1961 we note there has been only one other legislative session upon said definition (in .320), in 2002:

"[**2002 c 247 § 2; 1961 c 12 § 46.04.320**. Prior: 1959 c 49 § 33; 1955 c 384 § 10; prior: (i) 1943 c 153 § 1, part; 1937 c 188 § 1, part; Rem. Supp. 1943 § 6312-1, part; 1923 c 181 § 1, part; 1921 c 96 § 2, part; 1919 c 59 § 1, part; 1917 c 155 § 1, part; 1915 c 142 § 2, part; RRS § 6313, part. (ii) 1937 c 189 § 1, part; RRS § 6360-1, part; 1929 c 180 § 1, part; 1927 c 309 § 2, part; RRS § 6362-2, part.]"

2.23 A snapshot of the law, as it stood in 1961, and how it now stands in 2005's Sessions Laws and RCWs, placed beside all legislative amendments (none), virtually throughout the state, show that all "public highways" are still "open to public vehicular travel as a matter of right," that RCW 46 applies only to "transportation," which makes perfect sense when one considers that everything a transportation company, any company, does is a privilege (companies have no "rights"). A "public highway" is clearly a "public easement" open to the Complainant by permission of the owner, and not open only by grant of license or privilege by the State.

2.24 As recently as 2003, we see the legislature clearly views "automobiles" and "motor vehicles" to be entirely different subjects. When a thing is mentioned in one statute and not mentioned in another, legislative intent must be deemed to be that the thing shall be excluded from the latter provision.[37] RCW 46 fails to mention "automobile" throughout its entire text. FURTHER, it is a matter of right by which public vehicular travelers use any public easement or "public highway" for vehicular travel according to the legislature, and it is a matter of right "vested in the public generally" in the minds of the authors of *Black's*.

**Easement. *A right of use*** over the property of another."

"*Private or public easements*. A private easement is one in which the enjoyment is restricted to one or a few individuals, while a ***public easement is one the right to***

---

[37] See *U.S. v. Patzer*, Ninth Circuit Court of Appeals, No. 00-30360, Appeal from the United States District Court for the District of Idaho. Argued and Submitted on November 5, 2001, Seattle, Washington, Filed January 14, 2002.

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 28 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

*enjoyment of which is vested in the public generally* or in an entire community; *such as an easement of passage on the public streets and highways* or of navigation on a stream." [38]

2.25 Under the authorities cited, there is no basis for subjecting the common right of public vehicular travel to the provisions of *privilege code* RCW 46. As to the meaning of the term "public highway," statutory definitions are clear.

"*Definitions are integral* to statutory scheme and *of highest value* in determining legislative intent. . . . *To ignore definition section is to refuse to give legal effect to part of statutory law of state.*" [39]

"When legislative body provides definition for statutory terms, *it is that definition to which a person must conform his conduct.*" [40]

"With a range of meanings so diverse, and shades of meaning so abstruse, varying, indeed, with statutory purpose, as we range fields of law from the criminal to the commercial to the governmental, *not surprising is it that we find our statute "supplying its own glossary."* Fox v. Standard Oil Company of New Jersey* (W.Va), 294 US 87, 95, 55 S.Ct. 333, 79 L.Ed. 780 (1935). We are not left dependent upon dialect, colloquialism, the language of the arts and sciences, or even the common understanding of the man in the street. *We have the act itself. We need not, indeed we must not, search afield for meanings where the act supplies its own.*" [41]

"[W]e are to give statutory language its ordinary and generally accepted meaning. *Turner v. Auto Club Ins Ass'n*, 448 Mich. 22, 27; 528 N.W.2d 681 (1995). *However, when a statute specifically defines a given term, that definition alone controls.* Detroit v. Muzzin & Vincenti, Inc.*, 74 Mich.App. 634, 639; 254 N.W.2d 599 (1977); *Butterfield Theatres v. Revenue Dep't*, 353 Mich. 345; 91 N.W.2d 269 (1958)." [42]

"A related, consistent principle of statutory construction is that *the express mention in a statute of one thing implies the exclusion of other similar things* (*expressio unius est exclusio alterius*), *Stowers v. Wolodzko*, 386 Mich. 119, 133; 191 N.W.2d 355 (1971); *Sebewaing Ind v. Village of Sebewaing*, 337 Mich. 530, 545-546; 60 N.W.2d 444 (1953); *Ellis v. Wakefield Two School Dist*, 79 Mich.App 347, 350; 261 N.W.2d 320 (1977)." [43]

---

[38] See *Black's*, 6th Edition, "Easement."
[39] See *State v. Taylor*, 30 Wash.App. 89, 632 P.2d 892 (1981).
[40] See *City of Seattle v. Koh*, 26 Wash.App. 708, 614 P.2d 665 (1980).
[41] See *Butterfield Theatres v.Revenue Dep't*, 353 Mich. 345; 91 N.W.2d 269 (1958).
[42] See *Tryc v.Michigan Veterans' Facility*, 545 N.W.2d 642, 451 Mich. 129 (1996).
[43] See *People v. Jahner*, 446 N.W.2d 151, 433 Mich. 490, at fn.3 (1989).

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 29 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

2.26 Of the three reasons the highways are said to exist, the term "motor vehicle" clearly applies to only one of said reasons, that being *transportation* of goods, commodities, or persons.

> "An examination of the statutory context, the text of the relevant provisions, *and the legislative history convinces us that the construction that is "most harmonious with its scheme and with the general purposes that Congress manifested."* (Cite omitted) Moreover, because the application of [the provision] to these loans is ambiguous, *we follow the venerable rule that "[i]n the interpretation of statutes levying taxes ...[courts must not] enlarge their operation so as to embrace matters not specifically pointed out."* [44]

2.27 Complainant has proven that *privilege code* RCW 46 Motor Vehicles is not applicable to public vehicular travel upon the highways of Washington state, that indeed it is a matter of right, according to the WA legislature throughout its work; the law. Complainant has proven that the operation of a "motor vehicle" is a privilege and that public vehicular travel is a right, according to the WA legislature.

2.28 Enough evidence exists to support the Complainant's conclusions, and if he is mistaken a contrary explanation of the law is property to which he is entitled, and it is the only remedy that will cure this controversy.

2.29 Until it is proven with edict directly from the legislature that the term "motor vehicle" has been broadened in scope to embrace public vehicular travel, the Defendant must be recognized as having committed the federal crimes alleged.

**WA AG Report - AGO 1951-53 No. 062 <u>not</u> in its entirety -**
"Section 1, chapter 188, Laws of 1937, provides in part as follows:
[[Orig. Op. Page 3]]
    "The following words and phrases, wherever used in this act, shall have the meaning as in this section ascribed to them, unless where used the context thereof shall clearly indicate to the contrary:  * * *

    "'*Public Highway.*'  Every way, lane, road, street, boulevard, and every way or place in the State of Washington *open as a matter of right to public vehicular travel* both inside and outside the limits of incorporated cities and towns."

    "Section 14, chapter 269, Laws of 1951, requires payment on a vehicle-mile basis for auto stage operations "over the public highways of this state." The definition of public highways which we have held applicable to section 14 includes *every way in the state of*

---

[44] See *Security Bank of Minnesota v. C.I.R.*, 994 F.2d 432, 441 (CA8 1993).

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

*Washington open as a matter of right to public vehicular traffic.* The act of March 2, 1899, establishing Rainier National Park, recites that certain areas are "set aside as a public park to be known and designated as the Mount Rainier National Park for the benefit and enjoyment of the people." Where roads and highways have been established in national park territory they have been dedicated under the terms of the act of March 2, 1899, for the benefit and enjoyment of the people. An appropriate and proper enjoyment of roads and highways would, of course, include public vehicular traffic."

"Our court has held that the Fort Lewis military reservation is not "within the state of Washington." *Concessions Co. v. Morris*, 109 Wash. 46, 186 Pac. 655. Moreover, the establishment of the Fort Lewis military reservation, not being dedicated to the use and enjoyment of the people, cannot be said to contain any roads or highways which *are open as a matter of right to public vehicular travel*, even if such roads or highways might be considered to be within this state. Travel in such an area, therefore, should not be computed in determining payments due under section 14, chapter 269, Laws of 1951."

**\*End excerpt from WA AGO Report 1951-53 No. 062.**
**WA AG Report - AGO 59-60 No. 88 not in its entirety** - Motor Vehicles – Operator's License – Law Enforcement – Authority to Stop Motorist to See Operator's License:

"As stated in 16 C.J.S., Constitutional Law, § 202, p. 987:

"Personal liberty, or the right to the enjoyment of life and liberty, is one of the fundamental or natural rights, which has been protected by its inclusion as a guaranty in the various constitutions, which is not derived from, or dependent on, the federal Constitution, and which may not be submitted to a vote and may not depend on the outcome of an election. It is one of the most sacred and valuable rights; as sacred as the right of private property; or as occupying a preferred position as contrasted with property rights; and is regarded as inalienable."

This concept is further amplified in 11 Am.Jur., Constitutional Law, § 329, p. 1135 wherein it is said:

"Personal liberty largely consists of the right of locomotion--to go where and when one pleases-- only so far restrained as the rights of others may make it necessary for the welfare of all other citizens. *The right of a citizen to travel upon the public highways and to transport his property thereon, by horse-drawn carriage, wagon, or automobile, is not a mere privilege which may be permitted or prohibited at will, but a common right which he has under his right to life, liberty, and the pursuit of happiness.* Under this constitutional guaranty one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's rights, he will be protected, not only in his person, but in his safe conduct."

See also, *Teche Lines, Inc. v. Danforth*, 195 Miss. 226, 12 So.2d 784 (1943).

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.        Page 31 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

In *Barbour v. Walker*, 126 Okla. 227, 259 Pac. 552, 56 A.L.R. 1049, 1053, the distinction between *the right of a citizen to use the public highways for private, rather than commercial purposes* is recognized:

"In *Ex parte Dickey* (*Dickey v. Davis*) 76 W.Va. 576, L.R.A. 1915 F, 840, P.U.R. 1915 E, 93, 85 S.E. 781, we find this apt expression of the court: *'The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously* [[Orig. Op. Page 11]] *from that of one who makes the highway his place of business and uses it for private gain, in the running of a stagecoach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all*, while the latter is special, unusual and extraordinary. *As to the former, the extent of legislative power is that of regulation*; but, *as to the latter*, its power is broader, *the right may be wholly denied*, or *it may be permitted to some and denied to others*, because of its extraordinary nature. *This distinction, elementary and fundamental in character, is recognized by all the authorities . . .*"

(As to the power of the legislature to prohibit or condition *special or extraordinary uses* of the highway, *i.e.*, *commercial use*, as it sees fit, see: *Stephenson v. Binford*, 287 U.S. 251, 77 L.Ed. 288, 53 S.Ct. 181, 87 A.L.R. 721, 727; *Robertson v. Department of Public Works*, 180 Wash. 133, 135, 39 P.2d 596 (1934); *Pacific Inland Tariff Bureau v. Schaaf*, 1 Wn.2d 210, 216, 95 P.2d 781 (1939)).

Under its power to regulate private use of our highways, our legislature has required that motor vehicle operators be licensed. RCW 46.20.190. *Undoubtedly, the primary purpose of this requirement is to insure, in so far as possible, that all <u>motor vehicle operators will be competent and qualified, thereby reducing the potential hazard, or risk of harm, to</u> which <u>other users of the highway</u> might otherwise be subject.* But once having complied with this regulatory provision by obtaining the requisite operator's license, a motorist enjoys the privilege of traveling freely upon the public highways without unauthorized detention or restraint.

We cannot overlook the merit in, and forcefulness of, the argument that a broad delegation of authority is essential to the enforcement of the licensing requirement (See *People v. Utsman*, 166 N.Y.S. (2d) 358 (1957)). *However, a right as precious as the freedom of an individual who has not violated any law to travel wherever he pleases without interruption should not be denied by implication where an equally consistent construction not impairing such right is possible.*"

**\*End excerpt from WA AGO Report 59-60 No. 88.**
**WA AGO Report - AGO 1963-64 No. 025, <u>not</u> in its entirety -**
"For the purposes of the act, a public highway is defined in RCW 46.04.430 as:
"'Public highway' includes every way, lane, road, street, boulevard, and every way or place *in the state open as a matter of right to public vehicular travel* both inside and outside the limits of cities and towns."

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

And private road is defined as follows in RCW 46.04.420:

> "'Private road or driveway' includes every way or place in private ownership and used for travel of vehicles by the owner or those having express or implied permission from the owner, but not by other persons."

We first note what we deem to be the main contrasting feature, evidencing legislative purpose, in the above sections. The definition of public highway is written in terms of use, *i.e.*, whether any *"way or place is open as a matter of right to public vehicular travel"* is a factual inquiry answered by the extent of the public use without regard to the characteristic of property ownership. Footnote 2/

If the legislature had intended that a public highway exist only on publicly-owned land it would have so stated. Compare RCW 46.24.010, footnote 2, *supra*. Instead, we are provided with a guiding principle, *i.e.*, "every way or place in the state open as a matter of right to public vehicular travel" is a public highway for the purposes of the motor vehicle code. It therefore becomes necessary to determine *whether certain designated property is open as a matter of right to public vehicular travel in order to determine the extent of the geographical application of those sections of the code wherein the term public highway is employed*.

In view of the more restrictive definition of highway found in RCW 46.24.010, and of private road found in RCW 46.04.420, it can only be concluded that the legislature had the more broad concept of public place in mind when enacting the definition of public highway found in RCW 46.04.430. *"Every way or place open as a matter of right to public vehicular travel"* has reference to a way or place open to all the public without distinction, *Mullen v. Fayette*, 85 N.Y.S. (2d) 64, 67 (1948), rather than reference to an absolute right in the nature of [[Orig. Op. Page 7]] ownership. RCW 46.04.430 would have been couched in similar terms to RCW 46.04.420 had the legislature intended to include the concept of public ownership as a condition in its definition of public highway.

In view of the regulatory purpose of the motor vehicle code, *State ex rel. Ralston v. Dept. of Licenses, supra*, and the more restrictive definitions found elsewhere in Washington law, RCW 46.04.420; RCW 46.24.010, chapter 309, Laws of 1927, *we conclude that any section of the motor vehicle laws wherein the term "public highway" is employed should have application wherever people are accustomed to congregate in automobiles in numbers sufficient to constitute a use by the public.*

**Footnotes 2 and 3**:

**Footnote 2**: When the legislature intended the fact of public ownership to be taken into consideration, it was clearly so stated. An example is the more restrictive definition of highway found in RCW 46.24.010:

> "'*Street or highway*' means the entire width between boundary lines of every way or place, publicly maintained, when any part thereof *is open to the use of the public for purposes of vehicular travel*."

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 33 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

The present language of RCW 46.04.430 first appears in Washington law in § 1(X), chapter 188, *Laws of 1937*.  The prior statute § 2 (g), chapter 309, Laws of 1927, expressly excluded property owned by private persons.  That statute was as follows:

"(g) '*Public Highway*.'  Every way or place of whatever nature *open as a matter of right to the use of the public for the purposes of vehicular travel*.  The term 'highway' shall not be deemed to include a roadway or driveway upon grounds owned by private persons."

**Footnote 3**: The Nebraska court reached its conclusion notwithstanding the following restrictive definition of highway set forth at page 897 of the court's opinion:

"Section 39-741, R.S. 1943, provides in part as follows: '(5) The term "highway" includes *every way or place of whatever nature open to the public, as a matter of right, for the purposes of vehicular travel*, but shall not be deemed to include a roadway or driveway upon grounds owned by private persons, colleges, universities or other institutions.'"

Also, cf. *Nygaard v. Stull*, 146 Neb. 736, 21 N.W. (2d) 595 (1946)."
**\*End excerpt from WA AGO Report 1963-64 No. 025.**
**\*End excerpts from WA - AG Reports.**

2.30 The AG and the WA legislature concur on Complainant's claim of public vehicular travel as a common right thus requiring dismissal of this case.  And then there's Washington's Supreme Court:

"It will be observed that . . . a highway, within the contemplation of the act, is, "Every way or place of whatever nature *open as a matter of right to the use of the public for the purposes of vehicular travel*."  *There can be no question but that this definition is broad enough to include streets in incorporated cities, because they are open as a matter of right to the use of the public for the purposes of vehicular travel*." [45]

And there's the U.S. Supreme Court -

"*The right to travel interstate by auto vehicle upon the public highways may be a privilege or immunity of citizens of the United States.* Compare *Crandall v. Nevada*, 6 Wall. 35.  *A citizen may have, under the Fourteenth Amendment, the right to travel and transport his property upon them by auto vehicle.*  But he has no right to make the highways his place of business by using them as a common carrier for hire.  *Such use is a privilege which may be granted or withheld by the state in its discretion, without violating either the due process clause or the equal protection clause. Packard v. Banton*, 264 U.S. 140, 144[.]" [46]

[45] See *Neeley v. Bock*, 184 Wash. 135, 140, 50 P.2d 524 (1935).
[46] See *Buck v. Kuykendall*, 267 U.S. 307, 314 (1925).

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 34 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

2.31 While one activity (transportation) has always been a privilege, the other (public vehicular travel) has always been a common right. Complainant is one of the "other users of the highway," according to the Washington AG, one who exercises "the usual and ordinary right of a citizen, a common right, a right common to all," according to the Washington AG, who exercises "a right as precious as the freedom of an individual," according to the Washington AG, one whose activity "is not a mere privilege which may be permitted or prohibited at will, but a common right which he has under his right to life, liberty, and the pursuit of happiness," according to the Washington AG, an activity which IS NOT "special, unusual and extraordinary," according to the Washington AG.

RCW 46.30.010 Legislative intent. ***It is a privilege* granted by the state *to operate a motor vehicle* upon the highways of this state.** [47]

2.32 Currently the RCWs and municipal code provisions (the law) throughout Washington state are virtually replete with this mandate that public vehicular travel be afforded the respect naturally due a common right, while "motor vehicles" are operated as a matter of *privilege*. Only a repeat offender in office would reason that a common right can be a State granted privilege at the same time.

### III. QUESTIONS PRESENTED FOR REVIEW.

3.1 Defendants now must provide a Memorandum that duly disposes of the questions below. Having relied strictly upon statute and decisions of high authority, the Complainant perceives no cause for apprehension when asking the DOJ to commence criminal proceedings against the Defendant. Complainant perceives any decision stating that the RCW 46.04.320 prevails over the Statute Laws relied upon, or that said Statute Laws and the RCWs *do not*

---

[47] See *Black's Law Dictionary*, 6th Edition: "**Privilege. *A particular and peculiar benefit*** or advantage enjoyed by a person, company, or class, ***beyond the common advantages of other citizens. An exceptional or extraordinary power or exemption. A peculiar right, advantage, exemption, power, franchise, or immunity held by a person or class, not generally possessed by others.***" "**License. *A personal privilege to do some particular act*** or series of acts on land without possessing any estate or interest therein, and is ordinarily revocable at the will of the licensor and is not assignable. (Cite omitted) *The permission by competent authority to do an act which, without such permission, would be illegal, a trespass, a tort, or otherwise not allowable.*"

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.           Page 35 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033

1  provide for Complainant's public vehicular travel as a matter of right and <u>not</u> of privilege, as
2  one which naturally requires robust and cogent reasoning and discussion.

3    Q1. Why can't public vehicular travelers take the word of the WA legislature (the law)
     when it tells them that their public vehicular travel in their automobiles on the highways
4    is a right and <u>not</u> a privilege?

5    Q2. How have said Sessions Laws, through clear language, applied the term "motor
6    vehicle" to any vehicles <u>not</u> used in "transportation"?

7    Q3. <u>Without a Sessions Law or RCW applicable to public vehicular travelers,</u> do the
     Defendants have any RCW 46 authority over public vehicular travelers?
8
     Q4. When were WA's public highways removed from their classification as a surfaces
9    "open as a matter of right to public vehicular travel" in 1961, or July and October of
10   2005, or at any time in between?

11   Q5. When did the right of public vehicular travel become a privilege granted by the
     State? Can a common right be a state granted privilege at the same time, such as
12   between 1961 and 2005's enactments?

13   Q6. Do public vehicular travelers have the right to use deadly force to protect against
     traffic stops made without cause ("transportation" not manifest)? If not, why not?
14
15   3.2 This is a very simple issue of due process; "show me." Until such time as the
16   Defendants can point to laws which indeed seek to embrace within their scope <u>as a privilege</u>
17   granted by the State of Washington the activity of public vehicular travel on public highways in
     that state, the DOJ is duty bound to commence the criminal proceedings prayed for as relief by
18   Complainant.

19                              IV.  CONCLUSION.

20
21   4.1 Complainant's intrinsic evidence (law) is contrary and superior to those authorities
     drawn upon by the Defendants to regulate, fine, arrest and prosecute public vehicular travelers.
22   Defendants must fail in the absence of proof that Complainant's simple trip into and about
23   society (excursion) in an automobile is a privilege, or logical answers to questions arising out
     of this obvious conflict between the enforcement of a privilege code upon one engaged in an
24   activity categorized as a common right by law. Absent the production of clear and cogent
25   legislative intent to broaden the definition of the term "motor vehicle" to include *travel and*
26

*communication* or *public vehicular travel*, or proof that a matter of right can also be a matter of State granted privilege, Complainant sees the DOJ as duty bound to commence criminal proceedings for the prosecution of the crimes alleged herein.

4.2 Complainants and each of them are clearly huge fans of their legislators, fans of the law, state and federal. If the law, RCW 46, cannot be shown to be applicable to the Complainant when he is not engaged in "transportation," on a "public highway," when he is merely a public vehicular traveler and not contracting for hire upon the public highways, the Defendants must be recognized and prosecuted as the felons they've been proven them to be. Absent such cogent and sound rebuttal, this mode of conduct on the part of the Defendant <u>is</u> <u>over</u>, a thing of the past; We the People hereby reclaim this common and <u>statutory</u> right. Is America still a *nation of laws*? Prove it.

## V. <u>VERIFICATION</u>.

5.1 I, David R. Myrland, do hereby declare under penalties of perjury that the foregoing statements are true and correct to the best of my knowledge and belief. Executed this 8th day of March, 2006.

*[signature]*

David R. Myrland, Affiant/Complainant

5.2 The above affirmation was duly subscribed and sworn to before me, this 8th day of March, 2006, by David R. Myrland.

5.3 I, GERRARD A. TORIO, am a Notary under license from the State of Washington whose Commission expires on JUNE 15, 2008, and be it known by my Hand and my Seal as follows:

*[signature]*

Notary signature

```
Notary Public
State of Washington
GERRARD A TORIO
My Appointment Expires Jun 15, 2008
```

/ / /
/ / /
/ / /

MEMORANDUM IN SUPPORT of 18 U.S.C.
§ 4 Misprision of felony complaint.          Page 37 of 37

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

## - TABLE OF AUTHORITIES -

**Footnote Directory:**                          See page -

Footnote 1 to 4: . . . . . . . . . . . . . . . .          pg.3

Footnote 5 to 7: . . . . . . . . . . . . . . . . . .      pg.4

Footnote 8 to 10: . . . . . . . . . . . . . . . . . . .   pg.5

Footnote 11 to 13: . . . . . . . . . . . . . . . . .      pg.6

Footnote 14 to 17: . . . . . . . . . . . . . . . . .      pg.7

Footnote 18 to 22: . . . . . . . . . . . . . . . . .      pg.8

Footnote 23 to 24: . . . . . . . . . . . . . . . . .      pg.10

Footnote 25 to 28: . . . . . . . . . . . . . . . . .      pg.11

Footnote 29 to 30: . . . . . . . . . . . . . . . . .      pg.12

Footnote 31: . . . . . . . . . . . . . . . . . .          pg.13

Footnote 32 to 33: . . . . . . . . . . . . . . . . .      pg.16

Footnote 34 to 35: . . . . . . . . . . . . . . . . .      pg.17

Footnote 36: . . . . . . . . . . . . . . . . .            pg.18

Footnote 37: . . . . . . . . . . . . . . . . .            pg.28

Footnote 38 to 43: . . . . . . . . . . . . . . . . .      pg.29

Footnote 44: . . . . . . . . . . . . . . . . .            pg.30

Footnote 45 to 46: . . . . . . . . . . . . . . . . .      pg.34

Footnote 47: . . . . . . . . . . . . . . . . .            pg.35

**State cases:**

*Arends v. Grand Rapids R Co*, 172 Mich. 448, 138 NW 195 (1912); . . . . . Fn.17

*Bradley v. Saranac Community Schools Bd. of Educ.*, 455 Mich. 285, 565 N.W.2d 650 (1997); . . . . . . . . . . . . . . . . . . . . . Fn.16

*Butterfield Theatres v.Revenue Dep't*, 353 Mich. 345, 91 N.W.2d 269 (1958); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Fn.41

*City of Seattle v. Koh*, 26 Wash.App. 708, 614 P.2d 665 (1980); . . . . . Fn.15, 40

*Cook v. State*, 83 Wash.2d 725, 521 P.2d 725 (1974); . . . . . Fn.1, 12,

*Neeley v. Bock*, 184 Wash. 135, 50 P.2d 524 (1935); . . . . . . . . . . . . Fn.45

TABLE OF AUTHORITIES.     Page 1 of 7

1   *Northville Coach Line, Inc v. Detroit*, 379 Mich. 317,
2   150 N.W.2d 772 (1967); . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   Fn.17,

3   *People v. Jahner*, 446 N.W.2d 151, 433 Mich. 490 (1989); . . . . .   Fn.43,

4   *Rzepka v. Farms Estates, Inc*, 83 Mich. App 702,
5   269 N.W.2d 270 (1978); . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   Fn.17,

6   *State v. Edwards*, 104 Wn.2d 63, 701 P.2d 508; . . . . . . . . . . . .   Fn.11,

7   *State v. Roddy Brennan*, 1998-NMCA-176, filed 10/22/98 NM App.; . .   pg.23,

8   *State v. Taylor*,  30 Wash.App. 89,  632 P.2d 892 (1981); . . . . .   Fn.14, 39,

9   *Tryc v.Michigan Veterans' Facility*, 545 N.W.2d 642,
10   451 Mich. 129 (1996); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   Fn.42,

11   *Yelle v. Bishop*, 55 Wn.2d 286 (1959); . . . . . . . . . . . . . . . . . . .   Fn.12,

12   **Federal cases**:
13   *Brown & Williamson v. F.D.A.*, 153 F.3d 155
    (CA4 1998), aff'd. 529 US 120 (2000); . . . . . . . . . . . . . . . . . . .   Fn.4, 9,

14   *Browning-Ferris Industries of Vermont v.*
15   *Kelco Disposal, Inc.*, 492 U.S. 257 (1989); . . . . . . . . . . . . . . . .   Fn.28

16   *Buck v. Kuykendall*, 267 U.S. 307 (1925); . . . . . . . . . . . . . . . . .   Fn.46,

17   *Carminetti v. U.S.*, 242 U.S. 470 (1916); . . . . . . . . . . . . . . . . . .   Fn.3,

18   *City of Rome v. US*, 446 US 156 (1980); . . . . . . . . . . . . . . . . . . .   Fn.20,

19   *Duncan v. Walker*, 533 U.S. 167 (2001); . . . . . . . . . . . . . . . . . .   Fn.18,

20   *Evans v. Gore*, 253 U.S. 245, 249 (1920); . . . . . . . . . . . . . . . . .   Fn.2,

    *INS v. Stevic*, 467 US 407 (1984); . . . . . . . . . . . . . . . . . . . . . . .   Fn.19,

21   *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121; . . . . . . . . . . .   Fn.18,

22   *Miller v. Youakim*, 440 US 125 (1979); . . . . . . . . . . . . . . . . . . . .   Fn.21,

23   *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972); . . . . .   Fn.25,

24   *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 US 418 (1972); . . . . .   Fn.22,

25   *Security Bank of Minnesota v. C.I.R.*, 994 F.2d 432 (CA8 1993); . . . .   Fn.6-8, 44,

26   *Sewell v. Georgia*, 435 U.S. 982 (1978); . . . . . . . . . . . . . . . . . .   Fn.24,

    *Smith v. Gougen*, 415 U.S. 566 (1974); . . . . . . . . . . . . . . . . . . .   Fn.23,

    *United States v. Batchelder*, 442 U.S. 114 (1979); . . . . . . . . . . . .   Fn.26,

David R. Myrland / Kurt Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

TABLE OF AUTHORITIES.     Page 2 of 7

1  *United States v. National Dairy Corp.*, 372 U.S. 29 (1963); . . . . .          Fn.28,

2  *Walters v. Metropolitan Ent., Inc. et al.*, 519 U.S. 202 (1997); . . . . .     Fn.18,

3  *Williams v. Taylor*, 529 U.S. 420 (2000); . . . . . . . . . . . . . . . . . . . . .   Fn.18,

4  *Williams v. United States*, 341 U.S. 97 (1951); . . . . . . . . . . . . . . . .   Fn.27,

5  *U.S. v. Classic*, 313 U.S. 299 (1941); . . . . . . . . . . . . . . . . . . . . . .   Fn.28,

   *U.S. v. Lopez*, 514 U.S. 549 (1995); . . . . . . . . . . . . . . . . . . . . . . . .   Fn.29,

6  *U.S. v. Patzer*, 9th Cir., No. 00-30360; . . . . . . . . . . . . . . . . . . . .   Fn.5, 37,

**Washington State Sessions Laws**:

 WA Laws of 1915, Chapter 142 §§ 2(1) "Motor vehicle"
and 2(6) "Public highway" or public highways"; . . . . . . . . . . . . . .          12,

WA Laws of 1917, Chapter 155 §§ 1(1) "Motor vehicle"
and 1(6) "Public highway" or public highways"; . . . . . . . . . . . . . .          12,

WA Laws of 1919, Chapter 59 §§ 1(1) "Motor vehicle"
and 2(6) "Public highway" or public highways"; . . . . . . . . . . . . . .          12,

WA Laws of 1921, Chapter 96 §§ 2(1) "Motor vehicle"
and 2(7) "Public highway" or public highways"; . . . . . . . . . . . . . .          12,

Washington Sessions Laws of 1961, Highway
License Act, Chapter 1 § 1(x); . . . . . . . . . . . . . . . . . . . . . . . .          14, 34,

WA Laws of 2003, Chapter 244, S.Bill 5977; . . . . . . . . . . . . . . . .          15,

WA Laws of 2005, Chapter 161, House Bill 1599; . . . . . . . .          14,

**Revised Code of Washington**:
RCW 46.04.320; . . . . . . . . . . . . . . . . . . . . . .          12, 13 - 27, 28, 35,

RCW 9A.56.075; . . . . . . . . . . . . . . . . . . . . . . .          13,

RCW 46.04.020; . . . . . . . . . . . . . . . . . . . . . . .          15,

RCW 46.30.010; . . . . . . . . . . . . . . . . . . . . . . .          17, 35,

RCW 46.04.030; . . . . . . . . . . . . . . . . . . . . . . .          15,

RCW 46.04.110; . . . . . . . . . . . . . . . . . . . . . . .          15,

RCW 46.04.120; . . . . . . . . . . . . . . . . . . . . . . .          15,

TABLE OF AUTHORITIES.      Page 3 of 7

David R. Myrland / Kurt Riggin
6619 132nd Ave. NE  #100
Kirkland, WA  98033

1  RCW 46.04.150; . . . . . . . . . . . . . . . . . . . . . . . .          15,

2  RCW 46.09.020; . . . . . . . . . . . . . . . . . . . . . . .           15,

3  RCW 46.10.010; . . . . . . . . . . . . . . . . . . . . . . .           16,

4  RCW 47.04.010; . . . . . . . . . . . . . . . . . . . . . . .           16,
5
   RCW 46.98.020; . . . . . . . . . . . . . . . . . . . . . . .           17,
6

7  **Washington Administrative Code:**
   WAC 296-32-210(46); . . . . . . . . . . . . . . . . . . . . .          16,
8
   WAC 296-45-035; . . . . . . . . . . . . . . . . . . . . . . .          16,
9

10 **Washington Attorney General Opinions:**
   WA AGO Report 1996 - No.17, dated 9/26/96; . . . . . . . . . . . . .    18,
11
   WA AGO Report 1951-53 No. 062; . . . . . . . . . . . . . . .           31,
12
   WA AGO Report 59-60 No. 88; . . . . . . . . . . . . . . .             32,
13
14 WA AGO Report 1963-64 No. 025; . . . . . . . . . . . . . . .           34,

15 **Washington state counties:**
   Franklin County Code, WA - 2.25; . . . . . . . . . . . . . . . .       18,
16
17 Jefferson County, WA § 18.10.160; . . . . . . . . . . . . . . .        18,

18 Kittitas County Code, WA - 10.37.020; . . . . . . . . . . . . . .      18,

19 Pierce County Code, WA - 11.02.030; . . . . . . . . . . . . . . .      18,

20 Snohomish County Code, WA - 10.01.020; . . . . . . . . . . . . . . .   18,

21 **Washington cities:**
22 Blaine, WA municipal code § 10.13.010; . . . . . . . . . . . . . . .   19,

23 Bremerton, WA, municipal code - 10.11.005; . . . . . . . . . . . . .   19,

24 Cathlamet, WA municipal code § 10.05.010; . . . . . . . . . . . . . .  19,

25 Edgewood, WA municipal code § 16.04.060; . . . . . . . . . . . . . . . 19,
26
   Everett, WA - 8.56.030; . . . . . . . . . . . . . . . .               19,

TABLE OF AUTHORITIES.     Page 4 of 7

David R. Myrland / Kurt Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

1  Kent, WA - 8.09.030; . . . . . . . . . . . . . . .                          19,

2  Lakewood, WA municipal code § 03.38.030; . . . . . . . . . . . . . . .      19,

3  Langley, WA municipal code - 17.08.020; . . . . . . . . . . . . . . .       20,

4
   Lynnwood, WA municipal code § 10.17.030; . . . . . . . . . . . . . . .      20,
5
6  Marysville, WA - 7.05.030(6); . . . . . . . . . . . . . . .                 20,

7  Monroe, WA municipal code § 17.08.010; . . . . . . . . . . . . . . .        20,

8  Pasco, WA municipal code - 26.08.270; . . . . . . . . . . . . . . .         20,

9  Seattle, WA municipal code - 25.08.270; . . . . . . . . . . . . . . .       20,

10 Seattle, WA municipal code § 11.14.715; . . . . . . . . . . . . . . .       20,

11
   Seatac, WA municipal code § 15.10.630; . . . . . . . . . . . . . . .        21,
12
13 Spokane, WA municipal code § 16.10.010; . . . . . . . . . . . . . . .       21,

14 Tukwila, WA municipal code - 8.22.010; . . . . . . . . . . . . . . .        21,

15 **FOREIGN LAW - States:**
   Arizona - § 42 5062(A); . . . . . . . . . . . . . . .                       21,
16
17 Colorado - § 33-14-101; . . . . . . . . . . . . . . .                       21,

18 Colorado - § 155-3; . . . . . . . . . . . . . . .                           22,

19 Colorado - § 17-5-30; . . . . . . . . . . . . . . .                         22,

20 Delaware - Title 21, Part I, Ch.1, § 101; . . . . . . . . . . . . . . .     22,

21 Florida § 633.021; . . . . . . . . . . . . . . .                           22,

22 Iowa § 321G.1; . . . . . . . . . . . . . . .                               22,
23
24 Idaho - § 49.301(13); . . . . . . . . . . . . . . .                         22,

25 Idaho - § 63-2401; . . . . . . . . . . . . . . .                            23,

26 Minnesota § 169.01; . . . . . . . . . . . . . . .                           23,

   New York state - Article 21 General Provisions § 21.05; . . . . . . . . . . . . . . .   23,

TABLE OF AUTHORITIES.       Page 5 of 7

David R. Myrland / Kurt Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

North Carolina § 20-4.01(13); . . . . . . . . . . . . . . . .    23,

Oregon Vehicle Code § 801.305; . . . . . . . . . . . . . . . .    23,

Pennsylvania § 75 Pa.C.S.A. §3101 and 75 Pa.C.S.A. §102; . . . . . . . . .    23,

Pennsylvania - Penn. International Fuel Tax Agreement
& Motor Carriers Road Tax Compliance Manual by Penn.
Dept. of Revenue, Bureau of Motor Fuel Taxes, Harrisburg,
Penn., "II Definitions. . . . "Highway"; . . . . . . . . . . . . . . . . . . . . . . .    23,

South Dakota § 32-14-1; . . . . . . . . . . . . . . . .    24,

Texas § 114.001; . . . . . . . . . . . . . . . . . . . .    24,

Utah § 41-6a-102; . . . . . . . . . . . . . . . .    24,

Utah - § 53-3-207; . . . . . . . . . . . . . . . .    24,

Utah - § 23-13-2 & R657-5-2(6); . . . . . . . . . . . . . . . .    24,

Utah - § 16-2-1; . . . . . . . . . . . . . . . .    24,

**FOREIGN LAW - Municipal:**
Santa Barbara County, CA § 9.04.030; . . . . . . . . . . . . . . . .    24,

City of Glendale, CA - § 9.04.030; . . . . . . . . . . . . . . . .    25,

Park County, CO - § 4-200B; . . . . . . . . . . . . . . . .    25,

Brighton, CO - IX, Subdivision Regulations, § VI Definitions. B; . .    25,

Blanca, CO - Article I. In General, §  1-1; . . . . . . . . . . . . . . . .    25,

Dillon, CO - § 8-3-20; . . . . . . . . . . . . . . . .    26,

Pueblo, CO - § 17.04.040; . . . . . . . . . . . . . . . .    26,

Silver Bow, CO - § 10.04.040; . . . . . . . . . . . . . . . .    26,

Boise, ID - § 10-01-01; . . . . . . . . . . . . . . . .    26,

Haley, ID - § 9.08.010; . . . . . . . . . . . . . . . .    26,

Haley, ID - § 10.24.020; . . . . . . . . . . . . . . . .    26,

David R. Myrland / Kurt Riggin
6619 132nd Ave. NE  #100
Kirkland, WA  98033

TABLE OF AUTHORITIES.      Page 6 of 7

1

2     Ramsey, MN (Anoka County) - § 6.04.03; . . . . . . . . . . . . . . . .        27,

3     Clark County, NV - § 5.02.010; . . . . . . . . . . . . . . . .        27,

4     Lindon, UT - § 9.22.020; . . . . . . . . . . . . . . . .        27,

5     **Other authorities**:
      *Black's*, 6th Edition; . . . . . . . . . . . . . . . .        Fn.9, 12, 30, 32, 34, 43, 47
6

7     ***End Table of Authorities***.
      / / /

8     / / /

9     / / /

10    / / /

11    / / /

12    / / /

13    / / /

14    / / /

15    / / /

16    / / /

17    / / /

18    / / /

19    / / /

20    / / /

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

      / / /

David R. Myrland / Kurt Riggin
6619 132nd Ave. NE #100
Kirkland, WA  98033

TABLE OF AUTHORITIES.      Page 7 of 7

1

2

3

UNITED STATES DEPARTMENT OF JUSTICE

4

WASHINGTON, D.C.

5

6

David R. Myrland, Kurt R. Riggin, and We ) No. [ **please assign file number** ]

7    the People,                                                    )
                    Citizen Complainants,              )

8                                                                    ) CERTIFICATE OF SERVICE.
                              vs.                              )

9                                                                    )
                                                                     )

10  STATE OF WASHINGTON, CHRISTINE        )
     GREGOIRE, LIZ LUCE, KING COUNTY Wa., )

11  SNOHOMISH COUNTY, PIERCE COUNTY,  )
     DAVID REICHERT, SUSAN RAHR,               )

12  RICHARD BART, PAUL PASTOR, MICHAEL  )
     HURTADO, TEDDY CHOW, NORMAN          )

13  MALENG, T. McALLISTER, CITY OF               )

14  KIRKLAND, KENYON DORNAY MARSHALL)
     LAW FIRM, MARGITA DORNAY, and all        )

15  those similarly situated or involved,                )
                           DEFENDANTS.             )

16

17      I, _Brad Garrett_ , do hereby certify that I did place in U.S. First Class

18  Post and in adequate packaging the attached documents (18 USC § 4 Complaint with

19  Memorandum and Exhibit) addressed to the following parties:

20          Hon. Pete T. King                              U.S. Department of Justice
             Chairman, Homeland Sec. Committee     Albert Gonzales

21          436 Cannon House Office Building        957 Pennsylvania Ave. NW
             Washington, D.C. 20515                    Washington, D.C. 20530-0001

22

23      I am a Citizen of the United States over the age of 18 years, and I am not a party to this

     action.

24
     Dated: **March** 9th , **2006**.

25                                                              Signature

26

CERTIFICATE OF SERVICE.        Page 1 of 1

David R. Myrland / Kurt R. Riggin
6619 132nd Ave. NE #100
Kirkland, WA 98033