# EXHIBIT J

1    BRENDA LEE HELD TRUST
    c\o PO BOX 1074
2    Glendive Montana 59330
    406-941-2721
3    Bheld1206@gmail.com
    Plaintiff in propria persona

4

5

6

7

8

9             **IN THE CITY COURT, STATE OF MONTANA**

            **IN AND FOR THE CITY OF GLENDIVE**

10

| | |
|---|---|
| CITY OF GLENDIVE, | **CAUSE Case No. TK-350-2022-070 and TK-350-2022-81** |
| PLAINTIFF, | |
| vs. | **MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION** |
| Brenda Held, woman <br>       \<sic\>\<misnomer\> <br>       Aggrieved Defendant. | |

## I. INTRODUCTION.

     1.1 **COMES NOW,** Aggrieved Defendant above named, a living woman and of 𝔚𝔢 𝔱𝔥𝔢 𝔓𝔢𝔬𝔭𝔩𝔢 , appearing specially not generally, seeking specific relief in the form of dismissal of this case for lack of personam jurisdiction. Upon its review of the authorities cited and relied upon by the Aggrieved Defendant this Court will find that Aggrieved Defendant was not ***operating a motor vehicle*** on the days the subject notice of infractions was issued. This Court is hereby placed on mandatory judicial notice of all authorities cited herein, and in the attached **VERIFIED JOINDER OF SIMILARLY SITUATED PARTIES as Co-**

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION             1

**Complainant, EXHIBIT A, EXHIBIT B, EXHIBIT C, EXHIBIT D, ORIGINAL COMPLAINT 18 USC § 4, MEMORANDUM IN SUPPORT of 18 U.S.C** and supporting documents which are all incorporated by this reference as if fully restated herein in the aforementioned entirety. ***Any and all emphasis*** employed herein shall be construed to have been added.

1.2 This case is ripe for summary dismissal as a matter of law due to the easily proven inapplicability of charging provision(s) to the conduct complained of Defendant's claim is based solely on statute. While Washington laws, Revised Code of Washington, hereinafter reference as "RCW" referenced in the joinder complaint, is utterly replete with affirmation of public vehicular travel as a common right, Montana law contains only scant reference to such but does so in the same way; with statute.  Aggrieved Defendant hereby places this Court on mandatory judicial notice of foreign law as it is found in the aforementioned documents.

1.3 Aggrieved Defendant has already joined the issuer of the subject citation(s), this Court's presiding officer and the prosecutor against the Aggrieved Defendant to a criminal complaint (attached) filed with the United States Department of Justice and with the Homeland Security Committee on September 22, 2022 via USPS EXPRESS PRIORITY # EJ 851 629 018 US and EJ 851 629 021 US

///

## II. BASIS OF MOTION and AUTHORITIES.

2.1 Aggrieved Defendant challenges the judgment in this case on three grounds. First, the presiding judge in this case is required to have a valid oath of office on file before performing the duties of her office. Second, the conduct of the Aggrieved Defendant for which Aggrieved Defendant was originally cited in this case, is a common right recognized as such by all three branches of state

government across America. Third, absent proof that public vehicular travel does not exist as a common ***right*** distinguished from state granted ***privileges*** such as the operation of motor vehicles, the judgment against the Aggrieved Defendant must be dismissed to satisfy due process requirements under the void for vagueness doctrine.  Exhibits to this motion are as follows:

> **Exhibit A.** Defendant's joinder of judge KERRY BURMAN, attorney SCOTT HERRING, GLENDIVE POLICE DEPARTMENT OFFICERS and others to a RICO criminal complaint to the U.S. DOJ and to Homeland Security Committee.

> **Exhibit B.** Original RICO complaint filed March 9, 2006 accusing Washington state officials and others of extortion, racketeering, and other federal crimes committed through the application of motor vehicle code provisions to public vehicular travelers.

> **Exhibit C.** Documentation relevant to judge KERRY BURMAN's oath status

2.2 This Court is placed on mandatory judicial notice of foreign law which shows Aggrieved Defendant's challenge to be more broad and accepted as the Plaintiff might urge should be the case.  Federal Law and Supreme Court Cases apply to State Court Cases[1] as well as Word of God[2], Natural Rights[3], We The People[4], Constitution for the United States of America, and the Montana Constitution as defined in MCA 1-1-101 through 1-1-109, 2-1-402, 2-1-402, 2-1-404.

///

---

[1] Griffin v. Mathews, 310 Supp. 341, 423 F. 2d 272; Hagans v. Lavine, 415 U.S. 528; Howlett v. Rose, 496 U.S. 356 (1990)
[2] Preamble of Montana Constitution and Public Law 97-280
[3] MCA 1-2-104
[4] We the people... do ordain and establish the Constitution for the United States of America ." See: Preamble to U.S.A.Constitution. (1789).

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                    3

///

## A. Judge KERRY BURMAN lacked the required oath which renders the judgment in this case void or voidable.

2.3 Per Exhibit C, it is admitted that judge KERRY BURMAN, hereinafter referenced as "BURMAN" had no oath of office when acting as complained of.[5] "[W]ithout the taking of the oath prescribed by the constitution of this state, and the constitution for the United States of America, one cannot become either a de jure or de facto judge, and her acts as such are void."[6] Clearly, under Montana state law oaths of office are nothing to be taken lightly, to wit:

1. Oath of office *Members of the legislature and all executive, ministerial and judicial officers*, shall take and subscribe the following oath or affirmation, before they enter upon the duties of their offices: "I do solemnly swear (or affirm) that I will support, protect and defend the *constitution of the United States*, *and the constitution of the state of Montana*, and that I will discharge the duties of my office with fidelity (so help me God)." No other oath, declaration, or test shall be required as a qualification for any office or public trust[7]. [Emphasis added]

2. *(1) Every elected and appointed municipal officer shall take the oath of office prescribed in Article III, section 3, of the Montana constitution*. *Before the officer performs any official duties*, the oath of office, *certified by the official before whom the oath was taken, must be filed*. An elected officer shall file the oath *with the county election administrator*. Except as provided in subsection (2), an appointed officer shall file the oath with the city clerk.[8] (2)  A person appointed to fill a vacancy in an elected municipal office shall file the oath of office with the county election administrator

---

[5] See Exhibit C, affidavit no oath on file when requested at Dawson County Recorder office.
[6] See Prieto Bail Bonds v. State, 994 S.W.2d 316, 320-21 (1999). See also Ater, 845 S.W.2d at 337 (Actions taken by judge who failed to meet all requisites for qualification as judge held null and void))
[7] Montana Constitution Article III. Oath Of Office.  Section  3.
[8] MCA 7-1-4137.   Oath of office.

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                      4

3. An individual, except the President, elected or appointed to an office of honor or profit in the civil service or uniformed services, shall take the following oath: "I, AB, do solemnly swear (or affirm) that I will ***support and defend the Constitution of the United States*** against all enemies, foreign and domestic; that I ***will bear true faith and allegiance to the same***; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will ***well and faithfully discharge the duties*** of the office on which I am about to enter. ***So help me God***." This section does not affect other oaths required by law.[9]

4. Oath of Office form[10] states:

   I, _____, do solemnly swear (or affirm) that I will ***support, protect and defend the constitution of the United States and the constitution of the State of Montana***, and that I will discharge the duties of my office _____ with fidelity (so help me God)....[11]

5. Oath of office.[12]

   (1) Except when a comparable oath is subscribed to under federal law or regulation, every officer shall take and subscribe to the following oath of office:

   "I, ...., do solemnly swear that I will ***support and defend the constitution of the United States and the constitution of the state of Montana*** against all enemies, foreign and domestic; that I will ***bear true faith and allegiance to the same***; and that I will obey the orders of the president of the United States and the governor of the state of Montana; that I make this obligation freely, without any mental reservation or purpose of evasion; and that I will *well and faithfully discharge the duties of the office of* .... in the .... upon which I am about to enter, ***so help me God***."

---

[9] 5 USC § 3331 – Oath of office
[10] Montana Secretary of State
[11] See attached Exhibit Generic Oath of Office certificate from Montana Sec. of State. https://sosmt.gov/wp-content/uploads/Generic-Oath-of-Office-Fillable.pdf
[12] MCA 10-1-202.

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                    5

(2)   If an ***officer refuses or neglects to take the oath, the officer is considered to have resigned the office*** and a new appointment must be made.

2.4 Impersonation of public servant.

(1) A person commits the offense of impersonating a public servant if the person falsely pretends to hold a position in the public service with the purpose to induce another individual to submit to the pretended official authority or otherwise to act in reliance upon that pretense to the individual's prejudice.

(2)   A person convicted of impersonating a public servant shall be fined not to exceed $5,000 or be imprisoned in the state prison for any term not to exceed 5 years, or both.[13]

2.5 BURMAN's oath does not pass muster under the law and Montana law clearly makes it a crime for a judge to act without having fulfilled lawful requisites to such office, and this vitiates the designation of *de facto* officer, for such status does not relieve one from the fact that acting at all under such a status is a crime.

2.6 Clearly, if statute is to be honored at all, it can be said that acting as a judge in this state without having first duly executed and filed an Oath of Office is at least unauthorized conduct, and such conduct is without question to deprive a aggrieved defendant of rights to property, to liberty, or to life, *a fortiori*, such conduct is a crime under 18 USC § 241 - Conspiracy against rights[14].

_____

[13] Washington Code (RCW) § 42.20.030

[14] If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured— They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                    6

2.7 "We are also of the opinion the acts of Mr. Sieler were not valid upon the theory that he was a de facto judge pro tem. His acts being entirely void because of the failure of the parties litigant to consent to his appointment, we are of the opinion there is no theory upon which he may be considered *a de facto* officer."[15]   These excerpts and footnotes therein are from *Prieto*, *supra*:

> "[8] ***Because Judge Woodard was required to take the constitutional oaths, but did not do so, all judicial actions taken by him in the case below were without authority.[16]   The Judgment Nisi therefore is without effect."***

> "Because Prieto Bail Bonds raised its complaint about Judge Woodard's qualifications at the trial level, as required under Wilson, ***we need not reach the question of whether his actions in this case were done wholly without authority, and thus are void, or were simply procedurally infirm, and therefore merely voidable.*** Under either analysis, we must reverse. But we feel bound to observe that the Court of Criminal Appeals has held in a similar situation, involving an "alternative" ***municipal judge*** who had never taken the oaths of office, that: "***without the taking of the oath prescribed by the Constitution of this State, one cannot become either a de jure or de facto judge, and his acts as such are void.***"[17]

*End *Prieto* and its footnotes.

2.8 Inasmuch as the order of conviction in this case is evidence of crime, due process requires its vacation.


**B. Aggrieved Defendant's conduct is outside the scope of the charging statute and statutory scheme.**

---

commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.
[15] See National Bank of Washington v. McCrillis, 15 Wn.2d 345, 356, 130 P.2d 901 (1942).
[16] See Ater, 845 S.W.2d at 337 (actions taken by judge who filed to meet all requisites for qualification as retired judge subject to assignment held null and void).
[17] See French v. State, 572 S.W.2d 934, 939 (Tex.Crim.App.1978) (opin. On sec. reh'g): see also Davis v. State, 956 S.W.2d 555, 559 (Tex.Crim.App. 1997): Fain v. State, 986 S.W.2d 666, 675-76 (Tex.App. --Austin 1998).

2.9    Interpretation of this chapter in this state must be as consistent as possible with the interpretation of similar laws in other states.[18] Montana also promotes the adoption of the uniform vehicle laws.[19]

**Part 1:  Clarity of definitions and words**

2.10  What is a vehicle, truck, automobile and motor vehicle? In order to understand the intent of the law and the applications of the law, we must first look at the defining words that are used in the law.

2.11 **Commerce/Commercial purposes:**

"Used for commercial purposes" means the carriage of persons or property for any fare, fee, rate, charge or other considerations, or directly or indirectly in connection with any business, or other undertaking intended for profit.

"transport" or "transportation" means the movement of property and loading, unloading, or storage incidental to the movement. [20]

"commerce" means trade or transportation in the jurisdiction of the United States[21];

"commerce" means trade, traffic, and transportation;  Title 18 USC 31(10) infra[22]

2.12  Definitions. As used in this title, unless the context indicates otherwise, the following definitions apply: [23]

**Truck:**

**Truck**" or "motor truck" means a **_motor vehicle_** designed, used, or maintained **_primarily for _the transportation_ of property._**

--------------------------------

[18] 61-8-102.   Uniformity of interpretation -- definitions. (1)
[19] MCA 61-2-101.
[20] 49 U.S.C. 5102 - Definitions (13)
[21] 49 U.S.C. 5102 – Definitions (1)     49 U.S.C. 31301. Definitions (2) "*commerce*" means trade, traffic, and *transportation*;
[22] Title 18 USC 31(10) infra
[23] MCA 61-1-101

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION

2.13 Aggrieved Defendant was traveling in a trust asset at the time of both incidences which ***does not meet*** the legal definition of a "Truck" used in commerce for the purpose of transportation. [24]

2.14 Various definitions of motor vehicle include but not limited to:
**Motor Vehicle:**
Motor vehicle" means:[25]

(i)   a ***vehicle*** propelled by its own power ***and*** designed or ***used to transport persons or property***[26] on the highways of the state;

"**Motor vehicle**" means a ***vehicle***, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and ***used on a highway in "transportation,***" or a combination determined by the Commission, but does not include a vehicle, locomotive, or car operated only on a rail, or a trolley bus operated by electric power from a fixed overhead wire, and providing local passenger "***transportation***" similar to street-railway service. (Emphasis added).[27]

The term "**Motor Vehicle**" may be so used as to include only those self-propelled ***vehicles*** which are used on highways primarily for purposes of "***transporting***" persons and property from place to place. (Emphasis added). [28]
49 U.S. Code § 31301 - Definitions[29]
(12) "**motor vehicle**" means a ***vehicle***, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on public streets, roads, or highways,…

"**Motor vehicle**" means every description or other contrivance propelled or drawn by mechanical power and ***used for commercial***

---

[24] See also definitions of "motor vehicle" which is used in commerce.
[25] MCA 61-1-101 (43)  (a)
[26] A vehicle not used for commerce that is propelled by its own power ***OR*** a vehicle "used to transport persons or property" which is commercial.  See "Transport" or "Transportation" and "commerce" definitions Fn 15 & 16 supra
[27] See "Transport" or "Transportation" and "commerce" definitions Fn 15 & 16 supra
[28] See: 60 Corpus Juris Secundum § 1, Page 148; Ferrante Equipment Co. v. Foley Machinery Co., N.J., 231 A.2d 208, 211, 49 N.J. 432.
[29] 49 U.S. Code § 31301

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                         9

***purposes*** on the highways in the transportation of passengers, or passengers and property. [30]

2.15 Aggrieved Defendant was traveling in a trust asset at the time of both incidences which ***does not meet*** the legal definition of a "Motor Vehicle" used in commerce for the purpose of transportation.

2.16 Various definitions of vehicle include but not limited to:
**Vehicle:**

> **"Vehicle**" means a device in, on, or ***by which any person or property may be*** ***transported***[31] ***or drawn***[32] on a ***public highway***, except devices moved by animal power or used exclusively on stationary rails or tracks[33]

> "**Light vehicle**" means a ***motor vehicle*** commonly referred to as an ***automobile***, van, sport utility vehicle, ***or truck*** having a manufacturer's rated capacity of 1 ton or less. [34]

> Vehicle means[35] a device in, upon, or by which any person or property is or may be ***transported or drawn*** upon a public highway, excepting devices moved by human power or horse drawn or used exclusively upon stationary rails or tracks. [36]

2.17 The "motor vehicle" classifies "vehicle" as a motor vehicle used to "transport" which is commerce.  The trust asset is not, was not and never has been used to transport person or property for commercial purposes.[37] Therefore Aggrieved Defendant's trust asset non-passenger automobile does not meet the

---

[30] Title 18 USC 31(6)
[31] Commerce.  See Transport definition Fn15 supra.
[32] Void for vagueness.  MCA does not define "drawn".  Various legal dictionaries definition of drawn:  to aim a firearm.., to prepare any document…, to write a due form….to lawfully remove money… www.legal-dictionarythefreedictionary.com/drawn See also www.cekhukum.com/draw-blacks-law-dictionary
[33] MCA 61-1-101 (91)(a)
[34] MCA 61-1-101(32)
[35] MCA 61-1-101 (86)
[36] See: Idaho Code 49-301 (14)
[37] See "Transport" or "Transportation" and "commerce" definitions Fn 15 & 16 supra

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                    10

definition of "vehicle" or the definition of "light vehicle" because they are both classified as "motor vehicle" per above definitions.

2.18 Also note that automobile is also included into the "vehicle" definition for commercial purposes.

### Automobile:

2.19 Aggrieved Defendant cannot find a MCA definition of automobile even though MCA use the word "automobile" in its codes. Other sources referenced to define the word "automobile" include but not limited to the following:

TITLE 49 U.S.C. TRANSPORTATION[38]

   a. (1)**"automobile"** (3) except as provided in section 32908 of this title , "automobile" means a 4-wheeled ***vehicle***[39] that is propelled by fuel, or by alternative fuel, manufactured ***primarily for use*** [40]***on public streets, roads, and highways*** and rated at *less than **10,000 pounds*** gross vehicle weight, except— …. or (C) a work truck[41].

   b. (17) "non-passenger automobile"[42] means an automobile that ***is not a passenger automobile or a work truck***

   c. (18)**"passenger automobile"** means an automobile that the Secretary decides by regulation is manufactured primarily for ***transporting not more than 10 individuals*** [43], but does not include an automobile capable of off-highway operation that the Secretary decides by regulation—

   d. (19)**"work truck"** means a vehicle that—
       (A)is rated at between 8,500 and 10,000 pounds gross vehicle weight; and

2.20 **Non-passenger Automobile** A non-passenger automobile means an automobile that is not a passenger automobile or a work truck and includes

---

[38] 49 U.S. Code § 30501 – Definitions
[39] See "vehicle" and "motor vehicle" definitions supra. By definition trust asset is not an Automobile
[40] Use - commercially taxed use of something.
[41] See "Work Truck" definition supra. Trust asset does not meet this definition.
[42] U.S.C. Title 49 32901 (17)
[43] Transporting is commerce

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                    11

vehicles described in paragraphs (a) and (b) of this section: (a) An automobile designed to perform at least one of the following functions: (1) Transport more than 10 persons;[44]

2.21 Additional terms defined the following terms:

**Drivers License:**

"**Driver's license**" means a license or permit to ***operate a motor vehicle issued under or granted by*** the laws of this state, including[45]:

    (a)   any temporary license or learner license;

    (b)   the ***privilege*** of any person to drive a ***motor vehicle***, whether or not the person holds a valid license;

    (c)   any nonresident's driving ***privilege***;

    (d)   a motorcycle endorsement; or

    (e)   a commercial driver's license.

"**driver's license**" means a license ***issued by a State*** to an individual authorizing the individual to ***operate a motor vehicle*** on highways.[46]

"**Operator**" means a person who is in actual physical control of a ***motor vehicle***.[47]

"**Certificate of title**" means the paper record issued ***by the department or by the appropriate agency of another jurisdiction*** that establishes a verifiable record of ownership between an identified person or persons and ***the motor vehicle*** specifically described in the record and that provides notice of a perfected security interest in the ***motor vehicle***.[48]

"**Registration**" – license plate required –displayed. (3)It is unlawful to: (a) display license plates issued to one ***motor vehicle***, trailer….. on any other ***motor vehicle***, trailer….. unless legally transferred as provided by statutes.[49]

---

[44] MCA CFR 523.5
[45] MCA 61-1-101(22)
[46] Title 49 § 31301. Definitions (6)
[47] MCA 61-101(52)
[48] MCA 61-1-101(8)
[49] MCA 61-1-101 (62)

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                              12

**Registration** -- **license plate required** -- display. (1) (a) A person may not **operate a motor vehicle**, trailer, … **upon the public highways of Montana** unless the motor vehicle, trailer, … is properly registered and has the proper license plates conspicuously displayed on the **motor vehicle**, trailer, ... A license plate must be securely fastened to prevent it from swinging and may not be obstructed from plain view.[50]

**"Original registration"** -- process -- fees. (1) Except as provided in 61-3-324, a Montana resident who is an **owner of a motor vehicle**, trailer, … **operated or driven upon the public highways of this state** shall register the **motor vehicle**, trailer, … in the county where the registering owner is domiciled. A nonresident who has an interest in real property in Montana may register in the county where the real property is located a **motor vehicle**, trailer, …**operated or driven upon the public highways of this state**.[51]

"**Revocation**" means the termination **by action of the department** of a person's **driver's license**, **privilege to drive a motor vehicle on the public highways**, and **privilege to apply for** and be issued a driver's license for a period of time designated by law, during which the license or **privilege** may not be renewed, restored, or exercised.[52]

"**Registration decal**" means an adhesive sticker produced by the department and issued by the department, its authorized agent, or a county treasurer to the owner of a **motor vehicle**, trailer…[53]

**Personalized license plates authorized**. A person who is the registered owner of a **motor vehicle**, truck, motor home, trailer, motorcycle, quadricycle, or **other vehicle for the owner's personal use**[54] may upon payment of the fee prescribed in 61-3-406 apply to the department for personalized license plates in the manner prescribed in 61-3-405. The plates must be affixed to the **vehicle** for

---

[50] MCA 61-3-301.
[51] MCA 61-3-303.
[52] MCA 61-1-101(66)
[53] MCA 61-1-101(63)
[54] What are "other vehicles for owner's personal use"?

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                    13

which registration is sought in lieu of the license plates numbered as provided in 61-3-332.[55]

Unauthorized use of *motor vehicles*.[56]

(1) A person commits the offense of *unauthorized use of motor vehicles* if the person knowingly *operates* the *automobile*, airplane, motorcycle, quadricycle, motorboat, *or other motor-propelled vehicle*[57] of another without the other's consent.

Taking motor vehicle without permission in the second degree.[58]

(1) A person is guilty of taking a *motor vehicle* without permission in the second degree if he or she, without the permission of the owner or person entitled to possession, intentionally takes or drives away any *automobile or motor vehicle*[59], whether propelled by steam, electricity, or internal combustion engine, that is the property of another, or he or she voluntarily rides in or upon the *automobile or motor vehicle* with knowledge of the fact that the *automobile or motor vehicle* was unlawfully taken.

2.22 MCA 61 does not include the term "non-passenger automobile"; therefore MCA 61 does not pertain to the Aggrieved Defendant. Further, MCA 61-1-101 are definitions pertaining to "vehicles as show below:[60]



Montana Code Annotated 2021

TITLE 61. MOTOR VEHICLES
CHAPTER 1. DEFINITIONS
Part 1. Vehicles

Definitions

61-1-101. Definitions. As used in this title, unless the context indicates otherwise, the following definitions apply:

2.23 In summary, Aggrieved Defendant was traveling in a trust non-passenger automobile which **is not** a truck, work truck, motor vehicle, vehicle,

---

[55] MCA 61-3-402.
[56] MCA 45-6-308.
[57] Automobile and motor-propelled vehicle are clearly two distinctly different conveyances.
[58] RCW 9A.56.075
[59] Automobile and motor vehicle are clearly two distinctly different conveyances and was referenced three (3) times as separate types of conveyances in this statute.
[60] www.leg.mt.gov/bills/mca/title_0610/chapter_0010/part_0010/sections_index.html

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                    14

light vehicle, automobile or passenger automobile as defined above. Aggrieved Defendant was traveling in a trust non-passenger automobile specifically classified as a non-passenger automobile and explicitly stated to this court, the attorney and all officers during incident that the Aggrieved Defendant was not engaged in commerce and/or any form of commercial purpose.

2.24 It seems obvious that the entire Motor Transportation Code and the definition of ***motor vehicle*** are not intended to be applicable to all motor vehicles but only to those having a connection with the "***transportation***" of persons or property. (Emphasis added). [61]   This would include but not limited to MCA TITLE 61:

    1. 61-3-301(1)(a)[62]

       i.   citation 050A 55266 issued February 28, 2022

       ii.   citation 050A 55304 issued March 9, 2022

    2. 61-3-301(3)(a)[63]   citation 050A 55301 issued March 9, 2022 – Fictitious plates

    3. 61-3-301(3)(b)[64]   citation 050A 55265 issued February 28, 2022

    4. 61-5-116[65]

       i.   citation 050A 55267 issued February 28, 2022

---

[61] MCA 61-3-301(3)(a)

[62] MCA 61-3-301(1)(a) – Registration – license plate required –displayed. (1)(a) A person may not operate a motor vehicle, trailer….. upon the public highways of Montana unless the motor vehicle, trailer….. is properly registered and has the proper license plates conspicuously displayed on the motor vehicle, trailer…..

[63] MCA 61-3-301(3)(a) supra

[64] MCA 61-3-301(3)(b) – Registration – license plate required –displayed.  (3)It is unlawful to (b) repaint old license plates to resemble current license plates.

[65] MCA 61-5-116 – License to be carried and exhibited on demand.  A licensee must have a licensee's driver's licensee in the licensee's immediate possession at all times when operating a motor vehicle and shall display the license upon demand of tat justice of the peace, a city or municipal judge, a peace officer, a highway patrol officer, or a field deputy or inspector of the department.  However, a person charged with violating this section may not be convicted if the person produces in court or the office of the arresting officer a driver's license issued to the person and valid at the time of the person's arrest.

ii.  citation 050A 55302 issued March 9, 2022

5.  61-6-301[66]  citation 050A 55303 issued March 9, 2022

6.  61-8-328[67]  citation 050A 55268 issued February 28, 2022

2.25  Under the authorities cited, here and in the memorandum at EXHIBIT B hereto, there is no room to deem the term "motor vehicle" as applicable to anything but "transportation"; commercial enterprise upon the public highways. As to the meaning of the term "motor vehicle," statutory definitions are clear, [t]he word automobile not being synonymous with the term motor vehicle.[68]  The term motor vehicle is different and broader than the word automobile[69] and the term non-passenger automobile is even more specific[70]

---

[66] MCA 61-6-301 –Required Motor Vehicle Insurance –Family Member Exclusion. (1)Except as provided in subsection (1)(b), an owner of a motor vehicle that is registered and operated in Montana by the owner or with the owner's permission shall continuously provide insurance against loss resulting from liability imposed by law or bodily injury or death or damage to property suffered by an y person caused by maintenance or use of a motor vehicle in an amount not less than that required by 61-6-13, or certificate of self-insurance issued in accordance with 61-6-143.

[67] MCA 61-8-328.  Driving on roadways laned for traffic. Whenever a roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all other consistent rules, apply: (1)  A vehicle must be operated as nearly as practicable entirely within a single lane and may not be moved from the lane until the operator has first ascertained that the movement can be made with safety. (2)  Upon a roadway that is divided into three lanes and that provides for two-way movement of traffic, a vehicle may not be operated in the center lane except: (a)  when overtaking and passing another vehicle traveling in the same direction where passing is allowed and where the center lane is clear of traffic within a safe distance; or (b)  when the center lane is at the time allocated exclusively to traffic moving in the direction that the vehicle is proceeding and the allocation is designated by official traffic control devices. (3)  Official traffic control devices may be erected directing specified traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction regardless of the center of the roadway. Operators of vehicles shall obey the directions of every official traffic control device that designates use of specific lanes. (4)  A person may turn a vehicle left across a lane marked with two yellow lines into a public or private parking lot, private road, private driveway, or roadway if the turn can be made safely and if the person does not hinder the flow of oncoming traffic. (5)  Official traffic control devices may be installed that prohibit the changing of lanes on sections of a roadway, and operators of vehicles shall obey the directions of those devices. (6)  A motor vehicle may not be driven or parked in a bicycle lane that is signed and delineated as a bicycle lane by official traffic control devices.

[68] Brown v. State, 20 Ohio Dec. 348, 10 Ohio N.P., N.S., 328; Also see Fn 41-44 supra

[69] City of Dayton v. De Brosse, 23 N.E. 2d 647, 650 62 Ohio App. 232

[70] MCA 1-2-102. .  Intention of the legislature -- particular and general provisions. In the construction of a statute, the intention of the legislature is to be pursued if possible. When a general and particular provision are

2.26 Clearly, a non-passenger automobile is private property in use for private purposes, while a motor vehicle is a machine which may be used upon the highways for trade, commerce, or hire and the terms "driver license", "motor vehicle", vehicle, work truck, License plate", and "vehicle registration" are all COMMERCIAL terms found under MCA TITLE 61 which does not pertain to the Aggrieved Defendant since she was traveling in a trust asset defined as a non-passenger automobile and was not engaged in commerce or transportation.

## Part 2:  Open as a matter of right to public vehicular travel

2.27 On the dates of the issuance of the subject notice of infractions to the Aggrieved Defendant, she was traveling in a non-passenger automobile on a surface the law deems to be a "public highway." Not every automobile is a "motor vehicle," which operates by ***state granted privilege***,[71] at least not in the collective reasoning of the Montana and foreign states legislature.

2.28 <u>While it is a privilege</u> to operate a "motor vehicle" -

Legislative intent. ***It is a privilege*** granted by the state <u>***to operate a motor vehicle***</u> upon the highways of this state. [72]

---

inconsistent, the latter is paramount to the former, so a particular intent will control a general one that is inconsistent with it.

[71] See Black's Law Dictionary, 6th Edition: "**Privilege.** *A particular and peculiar benefit* or advantage enjoyed by a person, company, or class, ***beyond the common advantages of other citizens***. *An exceptional or extraordinary power or exemption. A peculiar right, advantage, exemption, power, franchise, or immunity held by a person or class, not generally possessed by others.*" Also - "**License**. *A personal privilege to do some particular act* or series of acts on land without possessing any estate or interest therein, and is ordinarily revocable at the will of the licensor and is not assignable. (Cite omitted) **The** ***permission by competent authority*** **to do an act which, without such permission, would be illegal, a trespass,  a tort, or otherwise not allowable**."

[72] RCW 46.30.010

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                    17

Section 1. Requirements for probationary license. (1) A probationary license

Line 19 (3) A person whose driver's license or ***privilege to drive*** is revoked by the department pursuant to 61-5-205(1) or 61-5-211 is eligible…..

Line 22 (4) A person whose driver's license or ***privilege to drive*** is suspended under 61-5-205(2)(a) is eligible….[73]

Legislative intent[74]. It is the legislative intent of this part to:

(2)   ***impose increased deprivation of the privilege to operate a motor vehicle upon these persons***.

Driver's license"[75] means a license ***or permit*** to ***operate a motor vehicle issued under or granted by the laws of this state***, including:[76]

(b)   the ***privilege*** of any person ***to drive a motor vehicle***, whether or not the person holds a valid license;

2.29 <u>Public vehicular travel is a right</u>. Washington (Sessions) Laws of <u>1961</u>, Chapter 1 § 1(x) of the Highway License act defines a "Public highway" as:

"Every way, lane, road, street, boulevard, and every way or place in the State of Washington ***open <u>as a matter of right to public vehicular travel</u>*** both inside and outside the limits of incorporated cities and towns."

"AN ACT Relating to the definition of "county engineer"; and amending RCW 36.75.010. BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

Sec. 1. RCW 36.75.010 and 1984 c 7 s 26 are each amended to read as follows:

(4) "City street," ***every highway*** or part thereof, located ***within the limits*** of incorporated cities and towns, except alleys;

---

[73] Montana 67th Legislature HB 84.01 page 1 line 15-23, See additional references to privilege on page 23 line 13, 20, 22, page 24  line 5, 19, page 25 line 18, page 26 line 12, page 27 line 25, page 30 line 12, 21,
[74] MCA 61-11-202.
[75] "Driver's license is only linked to "transport of persons or property", therefore commercial and has no association to "drawn" which would be non-commercial.
[76] MCA 61-1-101(22) "

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                    18

(6) "County road," *every highway* or part thereof, *outside the limits* of incorporated cities and towns and which has not been designated as a state highway;

(11) "*Highway*," *every way, lane, road, street, boulevard, and every way or place in the state of Washington <u>open as a matter of right</u> to public vehicular travel <u>both inside and outside the limits</u>* of incorporated cities and towns;"

Similarly situated MCA definitions are as follows:

*Highway*" or "*public highway*" means the entire width between the boundary lines of every publicly maintained way when any part of the *<u>publicly maintained way is open to the use of the public for purposes of vehicular travel</u>*.[77]

"Roadway" means that portion of a highway improved, designed, or ordinarily *used for vehicular travel*…[78]

"Street" means the entire width between the boundary lines of every publicly maintained way when any part of the *publicly maintained way is open to the use of the public for purposes of vehicular travel*.[79]

Traffic" means pedestrians, ridden or herded animals, vehicles, streetcars, and other conveyances either singly or together *while using any highways for purposes of travel*.

Application -- exceptions. (1) As used in this chapter, "*ways of this state open to the public*" *<u>means any highway, road, alley, lane, parking area, or other public or private place adapted and fitted for public travel that is in common use by the public</u>*.[80]

"Local authorities" means every county, municipal, and other local board or body *having <u>authority</u> to enact laws relating to traffic <u>under the constitution</u>[81] and laws of this state*.[82]

"Private road" or "driveway" means a way or *<u>place in private ownership</u>* and *<u>used for vehicular travel by the owner</u>[83]* and those having express or implied permission from the owner, but not by other persons

_____

[77] MCA 61-1-101(28)
[78] MCA 61-1-101 (67)
[79] MCA 61-1-101 (78)
[80] MCA 61-8-101.
[81] By what authority under the constitution for the United States of America does this state, county, municipality have to enact the laws and enforce these laws on the private man/woman.
[82] MCA 61-8-102 (m)
[83] Specifically "private owner" and excludes the public.

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                    19

City of Glendive Ordinance definitions:  STREET:  Includes alleys, lanes, courts, boulevards, ***public ways, public squares, public places*** and sidewalks within the city.[84] [Emphasis added]

And there's the U.S. Supreme Court -

"***The <u>right to travel interstate</u> by auto vehicle upon the public highways may be a <u>privilege or immunity</u> of citizens of the United States***. Compare *Crandall v. Nevada*, 6 Wall. 35. ***A citizen may have, under the <u>Fourteenth Amendment</u>, <u>the right to travel and transport his property</u> upon them by auto vehicle***. <u>But he has no right to make the highways his place of business by using them as a common carrier for hire</u>. ***Such use is a <u>privilege</u> which may be granted or withheld by the state in its discretion, without violating either the due process clause or the equal protection clause***. *Packard v. Banton*, 264 U.S. 140, 144[.]" [85]

2.30 The Washington State Attorney General's Office is in full agreement on this separation of the privilege of operating a motor vehicle upon the highways and the right of public vehicular travel.

*__Begin excerpt from WA AGO Report__* 59-60 No. 88:

"This concept is further amplified in 11 Am.Jur., Constitutional Law, § 329, p. 1135 wherein it is said:

"Personal liberty largely consists of the right of locomotion--to go where and when one pleases-- only so far restrained as the rights of others may make it necessary for the welfare of all other citizens. ***<u>The right of a citizen to travel upon the public highways and to transport his property thereon, by horse-drawn carriage, wagon, or automobile, is not a mere privilege</u> which may be permitted or prohibited at will, <u>but a common right which he has under his right to life, liberty, and the pursuit of happiness</u>***. Under this constitutional guaranty one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's rights, he will be protected, not only in his person, but in his safe conduct." [86]

---

[84] MCA 61-8-102(s)
[85]  See *Buck v. Kuykendall*, 267 U.S. 307, 314 (1925).
[86] See also, *Teche Lines, Inc. v. Danforth*, 195 Miss. 226, 12 So.2d 784 (1943).

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                    20

The distinction between ***the right of a citizen to use the public highways for private, rather than commercial purposes*** is recognized:

> "…we find this apt expression of the court: '***The <u>right of a citizen to travel upon the highway and transport his property thereon</u>, in the ordinary course of life and business, <u>differs radically and obviously</u>*** [[Orig. Op. Page 11]] ***<u>from that of one who makes the highway his place of business and uses it for private gain</u>, in the running of a stagecoach or omnibus. <u>The former is the usual and ordinary right of a citizen, a common right, a right common to all</u>***, while the latter is special, unusual and extraordinary. ***As to the former, the extent of legislative power is that of regulation***; but, ***as to the latter***, its power is broader, ***the right may be wholly denied***, or ***it may be permitted to some and denied to others***, because of its extraordinary nature. ***<u>This distinction, elementary and fundamental in character, is recognized by all the authorities</u>*** . . ."[87]

*\*End excerpt from WA AGO Report* 59-60 No. 88.

2.31 We see the legislature clearly views "automobiles" and "motor vehicles" to be entirely different subjects.[88] When a thing is mentioned in one statute and not mentioned in another, legislative intent must be deemed to be that the thing shall be excluded from the latter provision.[89]See definition section above. MCA 61 fails to mention "non-passenger automobile" throughout its entire text. FURTHER, it is a matter of right by which the Defendant uses any public easement or "public highway" for public vehicular travel, and it is a matter of right "vested in the public generally" to use the highways as *public easements*.

> Highway" or "***public highway***" means the entire width between the boundary lines ***of every publicly*** maintained way when any part of the ***publicly maintained way is <u>open to the use of the public for purposes of vehicular travel</u>***.[90]

---

[87] *Barbour v. Walker*, 126 Okla. 227, 259 Pac. 552, 56 A.L.R. 1049, 1053, quoting *Ex parte Dickey* (Dickey v. Davis) 76 W.Va. 576, L.R.A. 1915 F, 840, P.U.R. 1915 E, 93, 85 S.E. 781,

[88] See RCW 9A.56.075, supra)

[89] See *U.S. v. Patzer*, Ninth Circuit Court of Appeals, No. 00-30360, Appeal from the United States District Court for the District of Idaho. Argued and Submitted on November 5, 2001, Seattle, Washington, Filed January 14, 2002.

[90] MCA 61-1-101 (28)

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                      21

## C. Void for vagueness.

2.32 Defendant has provided proof from throughout America that public vehicular travel is secured through the codification of statutes and municipal code, through state attorney general reports, and through state supreme court and appellate court decisions. Defendant insists that the Plaintiff provide proof to the contrary or that the charging statutes and codes be declared void for vagueness, as it relates to Defendant's conviction.

2.33 There are certain constraints on the parameters of enforcement of legislative mandate, certain things that cannot be accomplished if a statute is determined to be written in a way so as to prevent the individual of average intelligence from understanding its terms. If a statute is unreasonably vague, if its language is not sufficient to explain its intent or application, it may be held to be *void for vagueness*. Below are several expressions of this standard of due process, all of which are from the U.S. Supreme Court.

> "We agree with the holdings of the District Court and the Court of Appeals on the due process doctrine of vagueness. The settled principles of that doctrine require no extensive restatement here. (fn.7) ***The doctrine incorporates notions of fair notice or warning***. (fn.8) ***Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement***." (fn.9) Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts. (fn.10) The statutory language at issue here, "publicly... treats contemptuously the flag of the United States...," has such scope, *e.g.*, *Street v. New York*, 394 U.S. 576 (1969) (verbal flag contempt), and at the relevant time was without the benefit of judicial clarification. (fn.11)" [91]

---

[91] See *Smith v. Gougen*, 415 U.S. 566, 572 (1974). Footnotes for this paragraph are as follows:

"Appellant's second argument, that 26-2101(c) is void for vagueness, also raises a substantial federal question-one of first impression in this Court-even though appellant fundamentally misapprehends the reach of the First Amendment in his argument that the protections of that Amendment extend to the sexual devices involved in this case. As we said in Grayned v. City of Rockford, 408 U.S. 104, 108 (1972):

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, *we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning*. Second, if arbitrary and discriminatory enforcement is to be prevented, *laws must provide explicit standards* for those who apply them. *A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the*

---

6. Appellant correctly conceded at oral argument that Goguen's case is the first recorded Massachusetts court reading of this language. Tr. of Oral Arg. 17-18. Indeed, with the exception of one case at the turn of the century involving one of the statute's commercial misuse provisions, *Commonwealth v. R. I. Sherman Mfg. Co.*, 189 Mass. 76, 75 N.E. 71 (1905), the entire statute has been essentially devoid of state court interpretation.

7. The elements of the "void for vagueness" doctrine have been developed in a large body of precedent from this Court. The cases are categorized in, e.g., *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972). See Note, *The Void for Vagueness Doctrine in the Supreme Court*, 109 U.Pa.L.Rev. 67 (1960).

8. E.g., *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972); *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939) ("*No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids*") (citations omitted); *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926) ("*[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law*") (citations omitted).

9. E.g., *Grayned*, *supra* at 108; *United States v. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921) ("[T]o attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury"); *United States v. Reese*, 92 U.S. 214, 221 (1876) ("*It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large*"). 10. E.g., *Grayned*, *supra*, at 109; *Smith v. California*, 361 U.S. 147, 151 (1959). Compare the less stringent requirements of the modern vagueness cases dealing with purely economic regulation. E.g., *United States v. National Dairy Products Corp.*, 372 U.S. 29 (1963) (Robinson-Patman Act). 11. See fn. 6, *supra*.

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                          23

*attendant dangers of arbitrary and discriminatory application*."
(Footnotes omitted.) [92]


"This ordinance is void for vagueness, both in the sense that it "*fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute*," *United States v. Harriss*, 347 U.S. 612, 617, *and because it encourages arbitrary and erratic arrests and convictions*. *Thornhill v. Alabama*, 310 U.S. 88; *Herndon v. Lowry*, 301 U.S. 242."

"*Living under a rule of law entails various suppositions, one of which is that "[all persons] are entitled to be informed as to what the State commands or forbids*." *Lanzetta v. New Jersey*, 306 U.S. 451, 453."

"*Lanzetta* is one of a well-recognized group of cases *insisting that the law give fair notice of the offending conduct*. See *Connally v. General Construction Co.*, 269 U.S. 385, 391; *Cline v. Frink Dairy Co.*, 274 U.S. 445; *United States v. Cohen Grocery Co.*, 255 U.S. 81. In the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed. *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337; *United States v. National Dairy Products Corp.*, 372 U.S. 29; *United States v. Petrillo*, 332 U.S. 1." [93]


2.34 Directly above we find no distinction made between civil and criminal statutes and prohibitions, and Aggrieved Defendant therefore feel that this standard is applicable equally to both. [94] In some states, a civil action is

---

[92] See *Sewell v. Georgia*, 435 U.S. 982, 985 (1978). "See also *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972); *Cline v. Frink Dairy Co*., 274 U.S. 445, 47 S.Ct. 681 (1927); *Connally v. General Construction Co*., 269 U.S. 385 (1926)."

[93] Excerpts from *Papachristou v. City of Jacksonville*, 405 U.S. 156, 172 (1972).

[94] See *Commonwealth of Pennsylvania v. Monumental Properties, Inc.*, 314 A.2d 333, at 336 (1973), aff'd in part, revs'd. in part, 329 A.2d 812: "Section 1928 of the Statutory Construction Act is significant because *the Act in question permits* the Commonwealth to petition for *civil penalties up to $5,000* (if an injunction is issued by this Court as a result of the present action); *thus the Act contains a penal provision*, and therefore must be strictly construed." See also *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994).

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                    24

commenced or civil penalties imposed for violations of some *pyramid scheme* law, and in other states such activities are criminalized. [95]

> "***It is a fundamental tenet of due process that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes***." Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). *A criminal statute is therefore invalid if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden*." [96]
>
> So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute. See *United States v. Evans*, 333 U.S. 483 (1948); *United States v. Brown*, 333 U.S. 18 (1948); cf. *Giaccio v. Pennsylvania*, 382 U.S. 399 (1966)." [97]

> "***Criminal statutes must have an ascertainable standard of guilt or they fall for vagueness***. See *United States v. Cohen Grocery Co.*, 255 U.S. 81; *Winters v. New York*, 333 U.S. 507." [98]

> "***Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed***. *United States v. Harriss*, 347 U.S. 612, 617 (1954). In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged. *Robinson v. United States*, 324 U.S. 282 (1945)." [99]

> "In the present case, ***the government has not even responded to Patzer's argument*** that if his initial arrest was unlawful, all of the statements ( [100] )

---

[95] See, *e.g.*, Illinois Compiled Statutes 720 ILCS 5/17-7, Class A Misdemeanor, and Texas Code 17.461, "a state jail felony."

[96] United States v. Harriss, 347 U.S. 612, 617 (1954). See Connally v. General Construction Co., 269 U.S. 385, 391-393 (1926); Papachristou v. Jacksonville, 405 U.S. 156, 162 (1972); Dunn v. United States, ante, at 112-113.

[97] See *United States v. Batchelder*, 442 U.S. 114, 123 (1979).

[98] See *Williams v. United States*, 341 U.S. 97, 100 (1951).

[99] See *United States v. National Dairy Corp.*, 372 U.S. 29, 32 (1963). See also *Browning-Ferris Industries of Vermont v. Kelco Disposal, Inc.*, 492 U.S. 257, 297, 300-301 (1989); *U.S. v. Classic*, 313 U.S. 299, 331 (1941).

[100] Footnote 21 from *Patzer*: The government has not argued that any statements obtained from Patzer's passenger should be any less subject to exclusion than physical evidence obtained as a result of the unlawful arrest. See *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1395 (CA9 1989) ("***Verbal evidence***, including live-witness testimony, ***may be no less the `fruit' of official illegality than is tangible, documentary evidence***." (citing *United States v. Ceccolini*, 435 U.S. 268 (1978))).

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                      25

and evidence obtained thereafter were sufficiently linked to the unlawful arrest that they must be excluded as an exploitation of that arrest."

See *U.S. v. Patzer*, 277 F.3d 1080, 1084 (CA9 2002), marijuana not mentioned in Idaho DUI statute § 37-2701(s), unlawful arrest.

2.35 Only proof that public vehicular travel does not exist as a common right distinguished from state granted privileges will complete this Court under the 5th Amendment to the U.S. Constitution. In the absence of such proof jurisdiction is lost and the subject judgment is void. If being joined to a federal RICO complaint is not enough to cause proof to the contrary, nothing is. (See **EXHIBIT A** hereto, joinder of participants in this case to RICO complaint affidavit filed with DOJ and Congress on March 9, 2006, FOIA them for their replies).

2.36 A court can lose jurisdiction for failure to complete itself under the 5th Amendment, that the Court is not complete without a record which contains proof to the contrary of the primary authorities replied upon herein. A ruling of void for vagueness is the least of remedies to which the Defendant is entitled. Due process requires vacation of case and judgment.

## III. ESSENTIAL ELEMENTS & DUE PROCESS.

3.1 Defendant has been charged under an inapplicable *privilege* code or scheme when she in fact was exercising a common right which is recognized by legislatures across America, not just in Montana. No activity can be a privilege granted by the state and be a common right at the same time, as those terms are

used in the authorities cited herein; "[t]his distinction, elementary and fundamental in character, is recognized by all the authorities." [101]

3.2 In order to be charged and convicted of a crime, the prosecution must prove every element of the crime as charged. [102]

> "[2] The federal Constitution's ***Fifth Amendment right to due process and Sixth Amendment right to jury trial***, made applicable to the states through the Fourteenth Amendment, ***require the prosecution to prove to a jury beyond a reasonable doubt every element of a crime***. (See *Sullivan v. Louisiana*, 508 U.S. 275, 277-278 (1993))." [103]

> "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, ***any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt***." [104] Because Orduno-Aguilera ***properly preserved this issue by making a motion for an acquittal after the close of all evidence***, this court's standard of review is the same as that of the district court's denial of that motion.[105]."

> "[4] . . . ***Because this fact is a necessary element of the statutory definition*** of anabolic steroids, which is in turn ***a necessary element of the offense, failure to offer this evidence resulted in insufficient evidence to sustain the jury's verdict***."

See *U.S. v. Orduno Aguilera*, No.98-50346 (CA9 filed 7/19/99). <u>See also</u>:

---

[101] (See Barbour v. Walker, 126 Okla. 227, 259 Pac. 552, 56 A.L.R. 1049, 1053).

**[102] See *Sullivan v. Louisiana*, 508 U.S. 275 (1993); *People v. Lobato*, 109 Cal.App.4th 762 (2003); *People v. Sengpadychith*, 26 Cal.4th 316 (2001); *People v. Flood*, 18 Cal.4th 470, 76 Cal.Rptr.2d 180, 957 P.2d 869 (1998); *People v. Magee*, 107 Cal.App.4th 188, 131 Cal.Rptr.2d 834 (2003); *People v. Marshall*, 83 Cal.App.4th 186, No. B137038 (2003); *People v. Kobrin*, 11 Cal.4th 416, 45 Cal.Rptr.2d 895, 903 P.2d 102 (1995); *People v. Avila*, 35 Cal.App.4th 642, 43 Cal.Rptr.2d 853 (1995); *In Re Winship*, 397 U.S. 358 (1970).**

[103] See *People v. Sengpadychith*, 26 Cal.4th 316 (2001).

[104] United States v. Nelson, 137 F.3d 1094, 1103 (9th Cir. 1998) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

[105] United States v. Bahena-Cardenas, 70 F.3d 1071, 1072-73 (9th Cir. 1995)

"No rational trier of fact (a judge) could have found that this standard was met for Estrada. ***The record was barren of evidence that he participated*** in the conspiracy."

"[2] Even though Estrada initially denied living in the trailer, his denial was as consistent with non-participating knowledge of the crime as it was with complicity in the crime. ***<u>When there is an innocent explanation for a defendant's conduct</u> as well as one that suggests that the defendant was engaged in wrongdoing, <u>the government must produce evidence</u> that would allow a rational jury to conclude beyond a reasonable doubt <u>that the latter explanation is the correct one</u>***. In Estrada's case, the government produced no such evidence."

See *U.S. v. Estrada-Macias*, No.97-10115 (CA9 filed 7/12/2000). <u>See also</u>:

"[12] Unlike *Herrera-Gonzalez*, ***the government has presented no evidence whatsoever*** that contradicts Esquivel's story or that indicates his "intentional participation" in the conspiracy. The government has emphasized that Esquivel must have known about the conspiracy, but ***it has failed to point to any evidence that supports the conviction***. Our criminal justice system is not based solely on inferences and assumptions. ***There must be evidence sufficient to sustain a conviction***, and, here, "***[t]he record is barren of evidence***" that Esquivel participated in the conspiracy.[106].

[13] ***The government has presented no evidence*** that establishes Esquivel's knowledge or possession of the cocaine and ***no evidence of his participation*** in the conspiracy. Esquivel's convictions for possession with intent to distribute and for conspiracy to distribute drugs accordingly are REVERSED." [107]

3.3 The Defendant knows and understands that the officers of this court are bound to honor precedent.

"But precedent also serves a very different function in the federal courts today, one related to the horizontal and vertical organization of those

---

[106] Estrada-Macias, 218 F.3d at 1066-67
[107] See United States v. Esquivel-Ortega, #05-30355 (CA9 5/8/07).

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                    28

courts.[108] *A district judge may not respectfully* (or disrespectfully) *disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue, or with Supreme Court Justices writing for a majority of the Court*. ([109] /fn.24) *Binding authority within this regime cannot be considered and cast aside; it is not merely evidence of what the law is*. Rather, caselaw on point *is* the law. *If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect. Binding authority must be followed unless and until overruled by a body competent to do so*.

In determining whether it is bound by an earlier decision, a court considers not merely the "reason and spirit of cases" but also "the letter of particular precedents."[110] *This includes not only the rule announced, but also the facts giving rise to the dispute, other rules considered and rejected and the views expressed in response to any dissent or concurrence*. ([111] /fn.25) Thus, when crafting binding authority, the precise language employed is often crucial to the contours and scope of the rule announced. ([112] /fn.26)

Obviously, binding authority is very powerful medicine. A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it. Judges of the inferior courts

---

[108] See John Harrison, The Power of Congress Over The Rules of Precedent, 50 Duke L.J. 503 (2000).

[109] The same practice is followed in the state courts as well. See, *e.g., Auto Equity Sales, Inc. v. Superior Court of Santa Clara County*, 369 P.2d 937, 940 (Cal. 1962) ("Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court." ).

[110] Fisher v. Prince, 97 Eng. Rep. 876, 876 (K.B. 1762).

[111] For example, in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985), a majority held that the rule announced in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) (plaintiff must show "actual malice" to obtain punitive damages for false and defamatory statements), applies only to statements involving matters of public concern. Relying on the language and context of *Gertz*, the Court rejected the dissenters' claim that the *Gertz* rule applied to all defamatory statements, and instead concluded that *Gertz* left it an open question whether the rule applied to statements not of public concern. *Compare Dun & Bradstreet*, 472 U.S. at 757 n.4 ("The dissent states that ' [a]t several points the Court in *Gertz* makes perfectly clear [that] the restrictions of presumed and punitive damages were to apply in all cases.' Given the context of *Gertz*, however, the Court could have made ' perfectly clear' only that these restrictions applied in cases involving *public speech."* (citations omitted)), *with* id. at 785 n.11 ("Distrust of placing in the courts the power to decide what speech was of public concern was precisely the rationale *Gertz* offered for rejecting [an alternative] approach. It would have been incongruous for the Court to go on to circumscribe the protection against presumed and punitive damages by reference to a judicial judgment as to whether the speech at issue involved matters of public concern." (citation omitted)).

[112] This is consistent with the practice in our court--and all other collegial courts of which we are aware--in which the judges who join an opinion authored by another judge make substantive suggestions, often conditioning their votes on reaching agreement on mutually acceptable language.

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                        29

may voice their criticisms, but follow it they must.[113] ("***This case is squarely controlled by the Supreme Court's recent decision*** . . . . [We] agree[ ] with the dissent that [appellant] deserves better treatment from our Government. *Unfortunately, legal precedent deprives us of discretion to do equity*.")*. The same is true as to circuit authority, although it usually covers a much smaller geographic area*. ([114] /fn.27) Circuit law, a concept wholly unknown at the time of the Framing[115], ***binds all courts within a particular circuit, including the court of appeals itself. Thus, the first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals***.

***Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court***. ([116] /fn.28) As *Anastasoff* itself states, ***a later three-judge panel considering a case that is controlled by the rule announced in an earlier panel's opinion has no choice but to apply the earlier-adopted rule; it may not any more disregard the earlier panel's opinion than it may disregard a ruling of the Supreme Court***.[117] ("***It is settled law that one three-judge panel of this court cannot ordinarily reconsider or overrule the decision of a prior panel***."), rev'd, 133 F.2d 1242 (9th Cir.) (en banc), amended by 138 F.3d 1280 (9th Cir.), cert. denied, 525 U.S. 823-24 (1998); *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 425-26 (5th Cir. 1987) (A "purpose of institutional orderliness [is served] by ***our insistence that, in the absence of intervening Supreme Court precedent, one panel cannot overturn another panel, regardless of how wrong the earlier panel decision may seem to be***."). ***Designating an opinion as binding circuit authority is a weighty decision that cannot be taken lightly***, because its effects are not easily reversed. Whether done by the Supreme Court or the court of appeals through its "unwieldy" and time-consuming en banc procedures, Richard A. Posner, *The Federal Courts:*

---

[113] See, e.g., Ortega v. United States, 861 F.2d 600, 603 & n.4 (9th Cir. 1988)

[114]   The exception is the Federal Circuit, which has a geographic area precisely the same as the Supreme Court, but much narrower subject-matter jurisdiction. See 28 U.S.C. § 1295(a).

[115]   see Danny J. Boggs & Brian P. Brooks, Unpublished Opinions & the Nature of Precedent, 4 Green Bag 2d 17, 22 (2000)

[116]   Or, unless Congress changes the law. See, *e.g., Van Tran v. Lindsey*, 212 F.3d 1143, 1149 (9th Cir.) (earlier caselaw established that mixed questions in habeas petitions were reviewed de novo, but under the Anti-Terrorism and Effective Death Penalty Act of 1996, the standard of review is governed by 28 U.S.C. § 2254(d)), *cert. denied*, 531 U.S. 944 (2000).

[117]   Anastasoff, 223 F.3d at 904; see also Santamaria v. Horsley, 110 F.3d 1352, 1355 (9th Cir. 1997)

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                                          30

*Crisis and Reform* 101 (1985), ( [118] /fn.29) overruling such authority requires a substantial amount of courts' time and attention--two commodities already in very short supply.

Controlling authority has much in common with persuasive authority. ***Using the techniques developed at common law, a court confronted with apparently controlling authority must parse the precedent in light of the facts presented and the rule announced***. Insofar as there may be factual differences between the current case and the earlier one, ***the court must determine whether those differences are material to the application of the rule or allow the precedent to be distinguished on a principled basis***. Courts occasionally must reconcile seemingly inconsistent precedents and determine whether the current case is closer to one or the other of the earlier opinions.[119]"

See *Hart v. Massanari*, 266 F.3d 1155, 1171 (CA9 2001).

3.4 The *roadway* upon which the Defendant was traveling when cited under MCA 61 is, by law, a "public highway." The criminal complaint at EXHIBIT B

---

[118]  An impressive array of judges and academics have noted the rigors of en banc procedures. *See Richard S. Arnold,* Why Judges Don' t Like Petitions for Rehearing, 3 J. App. Prac. & Process 29, 37 (2001) ("[O]n many days, I confess, I find myself wishing that there were no such thing [as en banc rehearing]." ); Pamela Ann Rymer, *How Big Is Too Big?*, 15 J.L. & Pol. 383, 392 (1999) ("expensive and time consuming" ); Joseph T. Sneed, *The Judging Cycle: Federal Circuit Court Style*, 57 Ohio St. L.J. 939, 942 (1996) ("time consuming and complex" ); James Oakes, Personal Reflections on Learned Hand and the Second Circuit, 47 Stan. L. Rev. 387, 393 (1995) ("enormously time-consuming and expensive" ); Deanell Reece Tacha, *The "C" Word: On Collegiality*, 56 Ohio St. L.J. 585, 590 (1995) ("time-consuming and expensive" ); Irving R. Kaufman, Do the Costs of the En Banc Proceeding Outweigh Its Advantages?, 69 Judicature 7, 7 (1985) ("the most time consuming and inefficient device in the appellate judiciary' s repertoire" ); J. Woodford Howard, Jr., Courts of Appeals in the Federal Judicial System: A Study of the Second, Fifth, and District of Columbia Circuits 217 (1981) ("most circuit judges regard en bancs as a ' damned nuisance' "). Because they are so cumbersome, en banc procedures are seldom used merely to correct the errors of individual panels: "[W]e do not take cases en banc merely because of disagreement with a panel' s decision, or rather a piece of a decision . . . . We take cases en banc to answer questions of general importance likely to recur, or to resolve intracircuit conflicts, or to address issues of transcendent public significance--perhaps even to curb a ' runaway' panel--but not just to review a panel opinion for error, even in cases that particularly agitate judges . . . ." *EEOC v. Ind. Bell Tel. Co.*, 86 Fair Empl. Prac. Cas. (BNA) 1, 2001 WL 717685, at *11 (7th Cir. 2001) (en banc) (Posner, J., concurring). *See also* Fed. R. App. P. 35(a) ("An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court' s decisions; or (2) the proceeding involves a question of exceptional importance."); Arnold, *supra*, at 36 ("Petitions for rehearing are generally denied unless something of unusual importance--such as a life--is at stake, or a real and significant error was made by the original panel, or there is conflict within the circuit on a point of law." ) It is therefore very important that three-judge panel opinions are decided correctly and that they state their holdings in a way that is easily understood and applied in future cases.

[119] See, e.g., Mont. Chamber of Commerce v. Argenbright, 226 F.3d 1049, 1057 (9th Cir. 2000)

MOTION TO DISMISS; LACK OF PERSONAM JURISDICTION                                    31

shows that this mode of enforcement directed at obtaining money from those who can be deprived of a common right is prohibited. Defendant is entitled to proof that the common right of public vehicular travel does not exist, however unlikely the proposition may be, or he can feel free to view a denial of this motion as an overt act in a conspiracy against him and his property. To allow Defendant to believe she's been criminally victimized by a finding of guilt violates Aggrieved Defendant rights to due process under Montana Const. Art. 2, § 3 and 17 Aggrieved Defendant traffic stop a violation of Art. II, § 27. Absent such proof, the Defendant is entitled to vacation of the subject case and/or conviction as a matter of law, for the charging provisions do not extend to the exercise of any common rights, such as public vehicular travel.

## IV. RELIEF REQUESTED.

4.1 WHEREFORE, Defendant moves this Court to vacate this case for 1) judge BURMAN's lack of an official oath as required by law, 2) lack of in personam jurisdiction due to Defendant's having engaged in conduct not deemed to be the privilege of "operating a motor vehicle" as intended by the provisions and legislative history of MCA 61 Motor Vehicle Code, but rather is rightfully deemed to be the act of public vehicular travel which is a common right by law, and 3) charging statutes are void for vagueness as applied to public vehicular travelers.

4.2 About Issue B argued, *supra*, Defendant demands proof either that **1)** under the law his public vehicular travel is both a privilege granted by the State and the common right the Legislature has abundantly proclaimed it to be, or **2)** that the right of public vehicular travel does not exist despite the abundance of statutory references to it, or **3)** that the surface Aggrieved Defendant was traveling upon when cited is open to Aggrieved Defendant only as a matter of privilege.

4.3 I, Brenda, do hereby declare that the attachments hereto are authentic and have not been misrepresented in any way to the best of my knowledge and belief.

4.4 With full knowledge that Brenda was acting as a matter of right, engaged in the conduct of public vehicular travel to which their motor vehicle code (a privilege code) does not apply, these Defendants and each of them has made collective and individual decisions, choices, to violate the Complainant as described in the original Complaint.

4.5 Reimbursement of fees and costs assessed for this case.

## VII.  Verification

I, Brenda-Lee, Family of Held, view the language of Montana law to preserve as a common right the activity of public vehicular travel.  I do hereby declare under penalties of bearing false witness that my Yes is yes and my No is no in accordance with the Holy Scriptures that the statements and allegations made herein are true and correct to the very best of my knowledge, and that no material falsity is believed to exist, nor has any been made or uttered in relation to any exhibit filed in support of this Complaint.

Executed this 4th day of October 2022

Respectfully submitted,


By:

_____

Brenda Held Affiant/Complainant
c/o PO BOX 1074 Glendive Mont 59330
406-941-2721   bheld1206@gmail.com

Using a notary for this document does not constitution any adhesion, nor does it alter the status of Brenda-Lee, Family of Held.  The purpose for notary is verification and identification only and not for entrance into a foreign jurisdiction.

STATE OF MONTANA                    )
                                                       ) ss.:
COUNTY OF DAWSON                 )

On October 4, 2022, before me, Brenda-Lee Family of Held personally appeared with satisfactory identification evidence to be the woman whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity and that by his signature on the instrument executed the instruments.

Sworn to me this 4th day of October 2022


_____

Notary Public



**Tracking Number:**

**70220410000169753629**

 Copy    Add to Informed Delivery

**Latest Update**

Your item was picked up at the post office at 1:09 pm on
October 5, 2022 in GLENDIVE, MT 59330.

**Delivered**

**Delivered, Individual Picked Up at Post Office**
GLENDIVE, MT 59330
October 5, 2022, 1:09 pm

**Available for Pickup**
GLENDIVE, MT 59330
October 4, 2022, 3:56 pm

**Arrived at Post Office**
GLENDIVE, MT 59330
October 4, 2022, 3:08 pm

**Arrived at USPS Facility**
GLENDIVE, MT 59330
October 4, 2022, 1:56 pm

**USPS in possession of item**
GLENDIVE, MT 59330
October 4, 2022, 1:53 pm

Hide Tracking History